Michael N. Feuer (State Bar No. 111529)
City Attorney
mike.feuer@lacity.org
Kathleen A. Kenealy (State Bar No. 212289)
Chief Deputy City Attorney
kathleen.kenealy@lacity.org
**LOS ANGELES CITY ATTORNEY'S OFFICE**
221 N. Figueroa Street, Suite 1000
Los Angeles, California 90012
*Attorneys for Plaintiff City of Los Angeles*

Michael A. Jones, State Bar #27311
Cody D. Vandewerker, State Bar #33385
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Telephone: (602) 256-6000
Facsimile: (602) 252-4712
mjones@allenbarneslaw.com
cvandewerker@allenbarneslaw.com
*Attorneys for Plaintiff City of Los Angeles*

Guy C. Nicholson (State Bar No. 106133)
gnicholson@bgrfirm.com
**BROWNE GEORGE ROSS O'BRIEN ANNAGUEY & ELLIS LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
*Attorneys for Plaintiff City of Los Angeles*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| PAUL OLIVA PARADIS, | Case No. 2:20-bk-06724-PS |
| Debtor. | |
| CITY OF LOS ANGELES, | **Adv No. 2:21-ap-_____-PS** |
| Plaintiff, | |
| v. | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6)** |
| PAUL OLIVA PARADIS, | |
| Defendant/Debtor. | |

Plaintiff, the City of Los Angeles, alleges:

## PARTIES, JURISDICTION AND VENUE

1.      This Complaint is brought pursuant to Rules 4007 and 7001 of the Federal

Rules of Bankruptcy Procedure.  As alleged herein below, by this action Plaintiff seeks a

1  judgment that the Debtor's indebtedness to Plaintiff is non-dischargeable under 11

2  U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).

3      2.    Plaintiff the City of Los Angeles (the "City") is, and at all times mentioned

4  herein was, a municipal corporation acting by and through its Department of Water and

5  Power (the "LADWP").

6      3.    Debtor Paul O. Paradis (hereinafter "Paradis" or "Defendant") is an

7  individual who, on information and belief, now resides in Maricopa County, Arizona.

8      4.    Paradis is the debtor in Chapter 7 bankruptcy case no. 2:20-bk-06724-PS

9  (the "Paradis Case"), initiated on June 3, 2020 and pending before this Court.

10     5.    Paradis is also the sole owner and managing member and owner of Ardent

11 Cyber Solutions LLC ("Ardent") fka Aventador Utility Solutions, LLC.  Ardent is the

12 debtor in Chapter 7 bankruptcy case no. 2:20-bk-06722-PS (the "Ardent Case"), initiated

13 on June 3, 2020 and pending before this Court.

14     6.    This is a core proceeding and this Court has jurisdiction over this action

15 pursuant to 28 U.S.C. § 157(b)(2).

16     7.    Venue is proper pursuant to 28 U.S.C. § 1409.

17                    **FACTS COMMON TO ALL COUNTS**

18     8.    The focus of this lawsuit is the manner in which a consulting contract was

19 awarded to a Paradis controlled entity, known as Aventador Utility Solutions, LLC

20 ("Aventador"). More specifically, while purporting to act in the City's best interests,

21 Paradis defrauded and improperly influenced the City to award a no-bid $30 million

22 consulting contract to Aventador (the "Aventador Contract") and therefore, violated

23 California Government Code section 1090 (conflicts of interest in government

24 contracting), which independently also constituted a violation of California Government

25 Code sections 12650 *et seq.*, as a matter of law.

26 / / /

9. Section 1090 of the California Government Code strictly prohibits certain individuals from participating in the award of a government contract in favor of any entity in which that individual has a financial interest. Contracts violating Section 1090 are void.

10. In 2010, the City, through its Department of Water and Power retained PricewaterhouseCoopers, LLP ("PwC") to modernize and implement its Customer Care and Billing System (the "CC&B System"). The new CC&B System went "live" in September 2013. Unfortunately, the new CC&B System had a number of defects resulting in, among other things, inaccurate and untimely bills.

11. At all times relevant to the events alleged herein, Paradis was an attorney at law licensed to practice in the State of New York and, on information and belief, the sole owner of Paradis Law Group, PLLC (hereinafter "PLG"). The City retained PLG as special counsel, to investigate and, if warranted, commence litigation against PwC. Litigation was filed against PwC in the lawsuit known as *The City of Los Angeles v. PricewaterhouseCoopers, LLP*, Los Angeles Superior Court Case No. BC574690 (the "PwC Action").

12. The CC&B System deficiencies resulted in the filing of multiple class action lawsuits against the City by ratepayers alleging, *inter alia*, that they had been overbilled for utility services. One of those lawsuits, filed in April 2015, was known as *Antwon Jones v. The City of Los Angeles*, Los Angeles Superior Court Case No. BC577267 (the "Jones Action").

13. The Jones Action was settled in or about August 2015. Among other settlement terms, the City voluntarily agreed to take the actions necessary to remediate defects in the CC&B System to ensure ratepayers would receive accurate invoices for water and power.

/ / /

## Self-Dealing And Violation Of Cal. Gov't Code 1090

14. Per the settlement agreement in the Jones Action, the City willingly agreed, among other terms, to correct system defects within 18 months and to the appointment of a billing system monitor to, among other tasks, validate the queries developed to identify potential class members and the amounts owed to each. The Court in the Jones Action appointed Paul Bender of Bender Consulting, Inc. as the Independent CC&B System Monitor (the "Monitor").

15. On or about October 20, 2015, the City through the LADWP Board of Water and Power Commissioners (the "Board") approved a contract with PLG (the "PLG Management Contract") pursuant to which PLG would be paid up to $1.3 million to provide certain "project management services" relating to the CC&B System such as, among other services:

> (a) oversight of the "CC&B System and software contracts to remediate the current billing system, and recommend" continuous system improvements,

> (b) "[d]evelopment of internal guidelines and procedures to identify, escalate, and manage future complex customer billing increases", and

> (c) "assist in the development of requirements for a Chief Project Manager to direct the Project Management Organization (PMO), support with selection from a nationwide recruiting campaign, and arrange the transition of project management duties to the new Chief Project Manager."

16. Under the PLG Management Contract, Paradis appointed himself as lead Project Manager.

17.     After obtaining approval for an extension of the PLG Management Contract, Paradis advised management at the LADWP that the department lacked internal resources to provide adequate project management and oversee IT changes necessary for the project's success, which could jeopardize the City's ability to comply with the terms of the settlement of the Jones Action.

18.     Unbeknownst to the Board, Paradis also drafted, some or all of, a declaration for the Monitor to be submitted to the Court in the Jones Action with respect to the foregoing. The Monitor's declaration, filed with the Court in the Jones Action, included his assessment of "certain risks that could impact upon [the department's] ability to timely [comply with the certain court ordered time constraints]." According to the Monitor's declaration:

> "Further compounding the already formidable challenges facing the LADWP . . . is the loss of very senior management personnel in the IT Department and Customer Billing Unit due to numerous recent retirements. The loss of numerous senior managers, combined with an inability to rapidly replace these managers has resulted in a drastic loss of institutional knowledge that has only intensified the challenges the LADWP is facing."

19.     Paradis then proceeded to personally draft, revise, and otherwise participate in the preparation of materials provided to the Board concerning whether to approve a no-bid, sole source, three-year contract respecting the aforementioned expanded consulting contract to Aventador. With the exception of a brief period from March 2019 – November 2019 during which Aventador was purportedly owned by Ryan Clarke, Aventador was, and to this day is, wholly owned by Paradis. In other words, at all times relevant to the events alleged herein, Paradis was representing and promoting Aventador's, and his own, economic interests while purporting to provide independent

advice to the City concerning, *inter alia*, whether the City should forgo the competitive bidding process for expediency in favor of a sole source, no-bid, contract to his own company.

20.     Relying on the Monitor's declaration and the written materials prepared jointly by the LADWP and Paradis, in or about June 2017, the Board approved entering into the aforementioned sole-source agreement with Aventador.  The Board materials stated, among other things, that:

> Significantly, the Monitor informed the Court of the Monitor's belief that "LADWP lacks well-qualified IT project management personnel and the Department therefore lacks the capability required to successfully manage very large scale IT implementation projects."  The Monitor further informed the Court that, "because the Department lacks these internal resources, it must procure such services on a contracted basis and, in the past, has often failed to do so."

> . . . This proposed contract is also intended to ameliorate any concerns the Monitor may have concerning "LADWP's (i) lack of well-qualified IT project management personnel and (ii) prior failures to procure such services on a contracted basis.

21.     By reason of his advice and participation, on the LADWP's behalf, in the process by which the Board ultimately decided to award the aforementioned contract to Aventador, Paradis was temporarily performing a public function and therefore, violated section 1090 of the California Government Code strictly prohibiting such individuals from participating in the award of a government contract in favor of any entity in which that individual has a financial interest.  The City is informed and believes, and thereon alleges, that Paradis' conduct was designed to exploit and enhance the City's sense of urgency in awarding a new contract in the hope that he, through Aventador, would be able to secure the new and expanded contract without participating in the normally-required competitive bidding process.

/ / /

## Termination Of The Aventador Contract

22.     During a public hearing in the PwC and Jones Actions on March 4, 2019, the California State Court (the "State Court") inquired of Jack Landskroner, counsel for the Jones class, whether he had shared any portion of the attorneys' fees (in excess of $10 million) paid by the City to his law firm as part of the Jones settlement with any attorney representing the City.  Landskroner asserted his Fifth Amendment rights and refused to respond to the State Court's inquiry.  Consequently, the State Court entered an Order, without objection from the City, prohibiting the City from making any further payments to Paradis or to any entity in which he held an interest (which included Aventador) (the "State Court Order").  See Exhibit A at p.2.

23.     Also on March 4, 2019, the State Court ordered that Paradis immediately appear for deposition at the courthouse.  Exhibit A at p.2. As Landskroner did, Paradis also asserted his rights against self-incrimination and did not provide any substantive testimony respecting the aforementioned subject matter generally and, specifically, whether he illegally received a portion of the attorneys' fees paid by the City to Landskroner upon settlement of the Jones Action.

24.     Shortly thereafter, Paradis withdrew as the City's special counsel in the PwC Action.  Paradis also purported to divest himself of ownership in, and affiliation with, Aventador by supposedly transferring his interest therein to one of Aventador's employees, Ryan Clarke who, in turn, changed the company's name to Ardent.  See Exhibit B [Paradis Decl.] at ¶¶ 2, 3, 5; Exhibit C [Amendment to Articles of Incorporation].

25.     As of March 4, 2019, Aventador had received at least $21.9 million in public funds under the Aventador Contract.

26.     On March 14, 2019, the City formally notified Aventador that it was terminating the Aventador Contract effective as of April 13, 2019.  See Exhibit D.

27. To avoid a potential lapse of critical services, the City also agreed to a limited, short term contract with Ardent, on a strictly interim basis (the "Ardent Contract").

28. In his Bankruptcy Schedules, which Paradis executed under penalty of perjury, Paradis revealed that he supposedly sold his membership interest in Aventador to Ryan Clarke in exchange for "an antique coin valued at $1,057.00."

29. Several months after the sale of Aventador to Clarke, Paradis (in his words) "reversed" this purported transaction, once again becoming Aventador's sole owner and managing member. [See, Paradis Case ECF No. 1 at p. 61; *see also* Ardent Case ECF No. 17 at p. 20 (listing Paradis as Ardent's managing member)].

30. As the managing member of Ardent (f.k.a. Aventador), Paradis executed the Bankruptcy Schedules in the Ardent Case also under penalty of perjury, which state, among other things, Paradis owns Ardent as its sole member and serves as its managing member. [See, Ardent Case ECF No. 17 at pp. 1, 21, and 22].

31. According to Ardent's Bankruptcy Schedules, in December 2019, Paradis took a draw of $1,500 from Debtor. [*Id.* at p. 20].

32. The Aventador Contract is void under California Government Code section 1090. As described below, the same conduct underlying Paradis' violation of California Government Code section 1090 constitutes a violation of the California Government Code sections 12650 *et seq.*, as well as actual fraud, fraud or defalcation while acting in a fiduciary capacity, and/or willful and malicious injury under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). Any damages, including those available under California Government Code section 1090 or otherwise, traceable to Paradis' non-dischargeable conduct are non-dischargeable. *Cohen v. De La Cruz*, 523 U.S. 213, 218, (1998).

/ / /

33.     As a direct and proximate result of the foregoing misconduct, the City is entitled to a non-dischargeable judgment against Paradis consisting of all amounts received by Aventador under the Aventador Contract of no less than $21.9 million, plus interest thereon, as well as the remedies allowable under California Government Code section 12651(a), in an amount not fully ascertained by the City but which the City is informed and believes will be in excess of the aforementioned amount.

34.     Paradis' decision to violate California Government Code section 1090 and, as a consequence thereof, section 12650 *et. seq*. for personal gain constitutes actual fraud, fraud or defalcation while acting in a fiduciary capacity, and/or willful and malicious injury under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).  Any damages, including those available under the Act, traceable to Paradis' non-dischargeable conduct are non-dischargeable. *Cohen*, 523 U.S. at 218.

35.     In committing the acts and wrongs described in this Complaint, Paradis has been guilty of oppression, fraud and malice toward the City which further entitles the City to a non-dischargeable judgment for damages, including automatic treble damages under section 12651(a) of the California Government Code, in an amount according to proof.

36.     Although additional facts pertinent to the wrongdoing alleged herein are available, those facts have been omitted in deference to the United States Department of Justice so as not to interfere with its ongoing criminal investigation.

## **FIRST CLAIM FOR RELIEF**

### **(Section 523(a)(2)(A) – Debt Obtained Through Fraud)**

37.     The City realleges and incorporates by reference all preceding paragraphs of this Complaint as through fully set forth herein.

38.     As set forth above, Paradis made misrepresentations, fraudulent omissions, and engaged in a pattern of deceptive conduct with the City, including without

limitation, violating California Government Code section 1090 and, in the process, concealing from the City that circumstances did not exist to cause the City to forego the competitive bidding process in favor of simply awarding an expansive, $30 million, three-year, contract to Aventador.

39.     Paradis had knowledge of the falsity and the deceptiveness of his statements and conduct and acted with an intent to deceive the City for his own personal financial gain and benefit.

40.     The City justifiably relied on Paradis' false and deceptive statements and conduct. Had the City been aware of the true facts, which Paradis was duty bound to disclose, it either would not have entered into a contract with Aventador or, upon discovery of Paradis' fraud, would have acted promptly to terminate the subject contract in favor of a new vendor for those services.

41.     The City has suffered damages as a direct and proximate result of its reliance on Paradis' false and deceptive statements and conduct. The City is entitled to a non-dischargeable judgment against Paradis for damages in an amount, according to proof, which has not been fully ascertained but which the City is informed and believes, and thereon alleges, will be in excess of $21.9 million, exclusive of interest.

## SECOND CLAIM FOR RELIEF

### (Section 523(a)(4) – Fraud/Defalcation While

### Acting in a Fiduciary Capacity)

42.     The City realleges and incorporates by reference all preceding paragraphs of this Complaint as through fully set forth herein.

43.     At all times material to the events alleged in this Complaint, a fiduciary relationship of trust and confidence existed between the City and Paradis by reason of Paradis performing, on a temporary basis, a public function as alleged previously in paragraphs 14 through 21 of this Complaint.

44.     Paradis intentionally breached his fiduciary duties by committing the acts and wrongs alleged elsewhere in this Complaint which, in turn, allowed Paradis to illegally abscond with millions of dollars in public funds while at all times falsely purporting to act in the best interests of the City.

45.     Paradis has intentionally or recklessly failed to account for the public funds taken under false pretenses from the City, or otherwise in violation of California law, which therefore, entitles the City to a judgment determining that the debt owing to the City is non-dischargeable under 11 U.S.C § 523(a)(4) by reason of Paradis' fraud or defalcation while acting in a fiduciary capacity.

46.     As alleged in Claim One of this Complaint, Paradis has been guilty of fraud while temporarily performing a public function ostensibly on the City's behalf.

47.     Accordingly, the City is entitled to a judgment determining that the City's debt is non-dischargeable for Paradis' fraud while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4).

### THIRD CLAIM FOR RELIEF

### (Section 523(a)(6) – Willful and Intentional Injury)

48.     The City realleges and incorporates by reference all preceding paragraphs of this Complaint as through fully set forth herein.

49.     Paradis either had a subjective motive to inflict injury on the City or believed that an injury was substantially certain to occur as a result of his conduct. Among other things, Paradis knew that his misrepresentations, concealment of material facts, and breaches of duty would result in the payments under the Aventador Contract for Paradis' benefit.

50.     Paradis' actions were wrongful because, among other things, they were in violation of the statutes referenced above in paragraphs 31-34.

51.     Paradis' actions were intentional and deliberate.

52. Paradis' actions necessarily and proximately caused the City's injury.

53. Paradis' actions were done without just cause or excuse.

54. Under California law, Paradis' actions constitute, among other things, fraud and breach of fiduciary duty.

55. Accordingly, the City is entitled to a judgment determining that the City's debt is non-dischargeable for Paradis' willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE**, the City requests that this Court enter judgment in favor of the City against Paradis as follows:

A. Allowing the City's claim in an amount of no less than $21,900,000;

B. Determining that the City's claim is not discharged as per 11 U.S.C. § 523(a)(2)(A);

C. Determining that the City's claim is not discharged pursuant to 11 U.S.C. § 523(a)(4);

D. Determining that the City's claim is not discharged pursuant to 11 U.S.C. § 523(a)(6);

E. Granting relief from the automatic stay of 11 U.S.C. § 362(a), and any other stays or injunctions in the case, in order for the City to record and enforce a judgment entered pursuant to this Complaint; and

F. For such other further relief as the Court deems just and proper.

DATED: June 24, 2021.

| BROWNE GEORGE ROSS O'BRIEN ANNAGUEY & ELLIS, LLP | ALLEN BARNES & JONES, PLC |
|---|---|
| _/s/ Guy C. Nicholson (with permission)_ | _/s/ MAJ #27311_ |
| Guy C. Nicholson | Michael A. Jones |
| 2121 Avenue of the Stars, Suite 2800 | Cody D. Vandewerker |
| Los Angeles, California 90067 | 1850 N. Central Ave. Suite 1150 |
| Attorneys for the City of Los Angeles | Phoenix, Arizona 85004 |
| | Attorneys for the City of Los Angeles |

# Exhibit A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Spring Street Courthouse, Department 6

BC574690                                                                          March 4, 2019
CITY OF LOS ANGELES VS PRICEWATERHOUSE                                                     9:00 AM
COOPERS LLP

Judge: Honorable Elihu M. Berle                    CSR: Anita B. Anderson, CSR# 11843
Judicial Assistant: P. Martinez                    ERM: None
Courtroom Assistant: M. Molinar                     Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Feuer, Michael N., City Attorney By Deborah Dorny; Paul Robert Kiesel By

Jeffrey A Koncius; Jack Landskroner -- See additional appearances below.

For Defendant(s): Maribeth Annaguey; James Alexander Santiago; Daniel J. Thomasch

Other Appearance Notes: Plaintiff, BC536272, Knapp Petersen Clarke, By Andre E

JardiniPlaintiff, BC536272, Knapp Petersen Clarke, By K. L. MylesPlaintiff, Attorney for the

City Of Los Angeles, Richard TomPlaintiff, Attorney for the City of Los Angeles. Thomas H

Peters

**NATURE OF PROCEEDINGS:** Status Conference re: discovery

The matter is called for hearing.

Pursuant to Government Code sections 68086, 70044, and California Rules of Court, rule 2.956,
Anita B. Alderson, CSR# 11843 , certified shorthand reporter is appointed as an official Court
reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court
Reporter Agreement. The Order is signed and filed this date.

Court and counsel confer in open court.

Counsel are to meet and confer regarding PWC and Jones to find resolution of issues.

All documents related to claims and disputes raised in Jones vs. City of Los Angeles and City of
Los Angeles vs. Pricewaterhouse cases are to be preserved. If any destruction policy exists, the
appropriate individuals should be informed not to destroy the documents.

The Court Orders counsel to proceed to complete the depositions of Mr. Peters and City of Los
Angeles PMQ.

Mr. Landskroner is ordered to report back to this Court on 3/5/19, at 9:00 a.m. for the

Case 2:21-ap-00171-PS    Doc 1    Filed 06/24/21    Entered 06/24/21 13:24:04    Desc
Main Document    Page 14 of 22

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 6

BC574690                                                                    March 4, 2019
CITY OF LOS ANGELES VS PRICEWATERHOUSE                                      9:00 AM
COOPERS LLP

Judge: Honorable Elihu M. Berle            CSR: Anita B. Anderson, CSR# 11843
Judicial Assistant: P. Martinez            ERM: None
Courtroom Assistant: M. Molinar            Deputy Sheriff: None

commencement of his deposition. The deposition will continue until concluded.

Mr. Paradis is ordered to report back to this Court on 3/6/19, at 9:00 a.m. for his deposition. The deposition will continue until completed.

The Court will be available for ruling on any objections to questions and objections to the request for production of documents that arise during the depositions.

Counsel are to make arrangements for a court reporter and depositions. Depositions will be taken in both Jones v. City of Los Angeles and City of Los Angeles v. PWC.

The Court will issue an order to restrain the City of Los Angeles from paying any further sums to Mr. Landskroner, to Mr. Paradis, or any company in which Mr. Landskroner or Mr. Paradis have an interest.

Order to Show Cause Re: Re: Appointment of a Special Master or Special Auditor with Regard to all sums that have been previously paid to Mr. Landskroner or Mr. Paradis or any company in connection with class action lawsuit is scheduled for 04/08/2019 at 09:00 AM in Department 6 at Spring Street Courthouse.

All briefs or submissions with regard to the Order to Show Cause Re: the appointment of an auditor or monitor should be submitted by 3/25/19 with proposals for the selection of the auditor/monitor.

Status Conference previously set for 3/7/19 is continued to 3/19/19, at 11:00 a.m. in this department.

Counsel for Plaintiff is to give notice and post to the website.

Additional appearances for Plaintiff(s):
Paul O. Paradis
Gina Tufaro

# Exhibit B

# DECLARATION OF PAUL O. PARADIS

I, PAUL O. PARADIS, declare under penalty of perjury under the laws of California as follows:

1. Prior to March 14, 2019, I was the sole owner of Aventador Utility Solutions, LLC (the "Company"). Ms. Gina Tufaro never had, at any time, any ownership interest in the Company.

2. As of March 14, 2019, I sold 100% of my ownership interest in the Company, and, therefore, as of March 14, 2019, I do not have any ownership interest, or any interest whatsoever of any nature, in the Company.

3. The new owner of the Company is Mr. Ryan D. Clarke. The Company's new business address is 1007 Euclid Street, #3, Santa Monica 90403. Attached hereto is a copy of the Company's Form LLC-12, Statement of Ownership, dated March 14, 2019, amending the ownership structure of the Company and the Company's address, and which confirms that the California Secretary of State has been informed of these changes, effective today.

4. Mr. Clarke has not released, or agreed to hold me harmless, from any liabilities pertaining to the Company, arising from, or related to, events occurring prior to March 14, 2019.

5. No entity in which I have any ownership interest or with which I am otherwise associated or affiliated, has any relationship whatsoever of whatever nature, with the Company.

6. I will not perform any work for the Company or any successors to the Company, or have access to the Company's offices or to those of any successor to the Company.

7. No entity in which I have an ownership interest or with which I am otherwise associated or affiliated, or has any relationship whatsoever of whatever nature, will perform work for the Company or any successors to the Company.

8. I will not receive any remuneration of any nature whatsoever arising out the work performed by the Company or any successors to the Company after March 14, 2019.

1

9.      Ms. Tufaro has no, and never had any, ownership interest in the Company and no entity in which Ms. Tufaro has any ownership interest or with which she is otherwise associated or affiliated, has any relationship whatsoever of whatever nature, with the Company or any successors to the Company.

10.     Ms. Tufaro will not perform any work for the Company or any successors to the Company, or have access to the Company's offices or to those of any successor to the Company.

11.     No entity in which Ms. Tufaro has an ownership interest or with which she is otherwise associated or affiliated, has any relationship whatsoever of whatever nature, will perform work for the Company or any successors to the Company.

12.     Ms. Tufaro will not receive any remuneration of any nature whatsoever arising out the work performed by the Company or any successors to the Company after March 14, 2019.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed March 14, 2019, at Los Angeles, California.

_____

Paul O. Paradis

2

# Exhibit C



**Secretary of State**
**Amendment to Articles of Organization of a Limited Liability Company (LLC)**

| LLC-2 |

IMPORTANT — *Read Instructions* before completing this form.

Filing Fee – $30.00

Copy Fees – First page $1.00; each attachment page $0.50; Certification Fee - $5.00

Note: You must file a Statement of Information (Form LLC-12), to change the business address(es) of the LLC or to change the name or address of the LLC's manager(s) and/or agent for service of process, which can be filed online at *bizfile.sos.ca.gov*.

**FILED**
Secretary of State
State of California

MAR 29 2019

*Above Space For Office Use Only*

1. **LLC Exact Name** (Enter the exact name on file with the California Secretary of State.)

Aventador Utility Solutions, LLC

2. **LLC 12-Digit Entity (File) Number** (Enter the exact 12-digit Entity (File) Number issued by the California Secretary of State.)

| 2 | 0 | 1 | 7 | 0 | 8 | 7 | 1 | 0 | 2 | 6 | 3 |

3. **New LLC Name (If Amending)** (*See Instructions* – List the proposed LLC name exactly as it is to appear on the records of the California Secretary of State. The name must contain an LLC identifier such as LLC or L.L.C. "LLC" will be added, if not included.)

Ardent Cyber Solutions, LLC

4. **Management (If Amending)** (Select only one box)

The LLC will be managed by:

☒ One Manager    ☐ More than One Manager    ☐ All LLC Member(s)

5. **Purpose Statement** (Do not alter Purpose Statement.)

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

6. **Additional Amendment(s)** set forth on attached pages, if any, are incorporated herein by reference and made part of this Form LLC-2. (All attachments should be 8½ x 11, one-sided, legible and clearly marked as an attachment to this form LLC-2.)

**Signature**

By signing, I certify that the information is true and correct and that I am authorized by California law to sign.

Sign here

**Ryan D. Clarke**

Print your name here

LLC-2 (REV 12/2018)

2018 California Secretary of State
bizfile.sos.ca.gov

# Exhibit D



**Los Angeles Department of Water & Power**

CUSTOMERS FIRST

Eric Garcetti, Mayor

Board of Commissioners
Mel Levine, President
Cynthia McClain-Hill, Vice President
Jill Banks Barad
Christina E. Noonan
Aura Vasquez
Barbara E. Moschos, Secretary

David H. Wright, General Manager

March 14, 2019

Gina M. Tufaro, Esq.
Vice President and General Counsel
Aventador Utility Solutions, LLC.
801 Ocean Avenue, Suite 603
Santa Monica, CA 90403

Re: <u>Agreement No. 47442-7 – Notice of Termination for Convenience</u>

Dear Ms. Tufaro,

Pursuant to Sec. 9.1.1 of Agreement No. 47442-7, the Los Angeles Department of
Water and Power herewith provides Aventador Utility Solutions, LLC with the Notice of
Termination for Convenience. In accordance with Sec. 9.1.1, the effective date will be
April 13, 2019. In addition, Paul O. Paradis and Gina M. Tufaro are directed to
immediately stop work under Agreement 47442-7.

Very truly yours,

Donna I. Stevener
Chief Administrative Officer

111 N. Hope Street, Los Angeles, California 90012-2607   Mailing Address: PO Box 51111, Los Angeles, CA 90051-5700
Telephone (213) 367-4211   ladwp.com

Case 2:21-ap-00171-PS   Doc 1   Filed 06/24/21   Entered 06/24/21 13:24:04   Desc
Main Document     Page 22 of 22