# Exhibit D

*Via Over Night Delivery*
Los Angeles City Ethics Commission
Los Angeles City Hall
200 N. Spring Street, #2410
Los Angeles, California 90012


January 18, 2022


Re:     Complaint Alleging Violations of California
        State Law, the California Rules of Professional
        Conduct and Los Angeles City Ethics Code By
        Michael N. Feuer, Leela Kapur, James P. Clark,
        Thomas H. Peters, Joseph Brajevich, Richard Tom,
        Deborah Dorny, Meldon Levine and Maribeth Annaguey
        And Exhibits Thereto


Dear Ethics Commissioners:

        Enclosed please find a Complaint and Exhibits 1-59 thereto alleging
violations of California State Law, the California Rules of Professional Conduct and
Los Angeles City Ethics Code by Michael N. Feuer, Leela Kapur, James P. Clark,
Thomas H. Peters, Joseph Brajevich, Richard Tom, Deborah Dorny, Meldon Levine
and Maribeth Annaguey.

        I respectfully request that the Ethics Commission conduct an investigation
concerning the conduct detailed in the Complaint and Exhibits.


                        Respectfully submitted,


                        Paul O. Paradis

# COMPLAINT

**To:**          **Los Angeles Ethics Commission**

**Complainant:**    **Paul O. Paradis**

**Date:**         **January 18, 2022**

**Re:**          **Complaint Alleging Violations of California State
Law, the California Rules of Professional Conduct
and Los Angeles City Ethics Code By Senior Ranking
Los Angeles City Officials In The Discharge of Their Official Duties**

## INTRODUCTION

1.      This Complaint ("Complaint") is filed by Paul O. Paradis ("Paradis" or "Complainant"), who served as one of two Special Counsel to the City of Los Angeles and the Los Angeles Department of Water and Power (the "City" and "LADWP"), from January 2015 through March 2019, in a lawsuit filed in the Los Angeles Court Superior Court that was captioned, *City of Los Angeles v. PricewaterhouseCoopers, LLP*, BC574690 (the "*PwC Action*").

2.      This Complaint is filed with the Los Angeles City Ethics Commission ("Ethics Commission") to respectfully request that the Ethics Commission conduct an investigation of the conduct alleged herein that was engaged in by the following individuals: (i) Michael N. Feuer, Los Angeles City Attorney ("Feuer"); (ii) Leela Kapur, Chief of Staff to the Los Angeles City Attorney ("Kapur"); (iii) James P. Clark, former Los Angeles Chief Deputy City Attorney ("Clark"); (iv) Thomas H. Peters, former Chief Assistant City Attorney ("Peters"); (v) Joseph Brajevich, General Counsel of the Los Angeles Department of Water and Power ("Brajevich"); (vi) Richard Tom, Assistant General Counsel of the Los Angeles Department of Water and Power ("Tom"); (vii) Deborah Dorny, Deputy Los Angeles City Attorney ("Dorny"); (iix) Meldon Levine, Of Counsel to Gibson, Dunn & Crutcher LLP and former President of the Board of Commissioners of the Los Angeles Department of Water and Power; and (ix) Maribeth Annaguey, Partner at the law firm of *Browne George Ross O'Brien Annaguey & Ellis LLP* ("Annaguey" and "Browne George"), respectively.

3.     Among other things, Complainant alleges that the aforementioned individuals violated, or aided and abetted violations of:

i.     California Rule of Professional Conduct 1.7 by causing the City of Los Angeles to sue a "current client" of Gibson Dunn, namely PricewaterhouseCoopers, LLP ("PwC");

ii.     Cal. Bus. and Prof. Code § 6068, California Rule of Professional Conduct 3-100 and Section IV of the City Ethics Code by intentionally disclosing the City's attorney-client privileged information and attorney work product to Gibson Dunn, PwC's defense counsel; and

iii.     California Government Code Sections 54950-54963 (the *"Brown Act")*, and interfered with government administration and official LADWP Board action and falsified official public records of the City of Los Angeles to prevent their illegal conduct from being discovered.

4.     On December 13, 2021, the Los Angeles Board of Water and Power Commissioners voted unanimously to terminate both the Los Angeles City Attorney's Office ("City Attorney's Office") and the law firm of *Browne George Ross O'Brien Annaguey & Ellis LLP* as counsel for the Los Angeles Department of Water and Power ("LADWP") in a class action captioned, *Jones v. City of Los Angeles, et al.*, Lead Case No.: BC577267 [Related Cases Nos. BC536272, BC565618, BC568722, BC571664, BC594049, BC574690] (collectively hereinafter the *"Jones Action")* and several other related litigation matters.

5.     The City Attorney's Office and Browne George were terminated as counsel to the LADWP based on the fact that five members of the City Attorney's Office and Maribeth Annaguey, a named partner of Browne George, were found by Special Master Edward Robbins ("Special Master Robbins"), to have engaged in misconduct in the *Jones Action* that constitutes misdemeanor crimes under California law and violations of the California Rules of Professional Conduct, which governs the conduct of attorneys.

6.     After considering Special Master Robbins' findings and conferring with counsel, the five member LADWP Board of Commissioners determined that both the City Attorney's Office and Browne George firm were unable to continue to represent the LADWP because of conflicts that had arisen as a result of the misconduct engaged in by these six attorneys and that

2

1  any further representation of the LADWP by the City Attorney's Office and Browne George firm,
2  would likely violate Rule 1.7 of the California Rules of Professional Conduct. The facts set forth
3  in this Complaint confirm the LADWP Board's beliefs and demonstrate that the City Attorney's
4  Office and Browne George are highly conflicted and therefore unfit and unable to continue their
5  representation of the City of Los Angeles.

6        7.        Despite having been terminated as counsel for the LADWP in all matters involving
7  the LADWP, a proprietary Department of the City, however, both the City Attorney's Office and
8  Browne George continue to represent the City of Los Angeles, itself, in other matters including a
9  personal bankruptcy matter involving Complainant that is captioned *In re Paul Oliva Paradis*, 20-
10 bk-06724-PS ("Paradis Bankruptcy") and another bankruptcy matter captioned *In re Ardent Cyber*
11 *Solutions, LLC*, 20-bk-06722-PS ("Ardent Bankruptcy"), both of which are pending in the United
12 States Bankruptcy Court for the District of Arizona. The conflicts, which render these attorneys
13 incapable of representing the LADWP, similarly render these same attorneys incapable of
14 representing the City of Los Angeles in both the Paradis Bankruptcy and Ardent Bankruptcy.

15       8.        Additionally, Complainant is aware that these attorneys and others from the City
16 Attorney's Office, Browne George firm Partner Maribeth Annaguey, and other senior ranking Los
17 Angeles City Officials, including City Attorney Mike Feuer himself, engaged in conduct that
18 violated California law, the California Code of Professional Conduct and the Los Angeles City
19 Ethics Code and that was not known to, or investigated by, Special Master Robbins.

20       9.        Because these wrongful activities have not yet been publicly disclosed or
21 investigated by Special Master Robbins, Complainant is filing this Complaint with the Los
22 Angeles City Ethics Commission to inform the Ethics Commission of these wrongful activities
23 and requesting that the Ethics Commission conduct an investigation into this misconduct.
24 Complainant strongly believes that the results of such an investigation will further demonstrate
25 that both the City Attorney's Office and Browne George firm are irreconcilably conflicted and,
26 therefore, incapable of continuing to represent the City of Los Angeles in both the Paradis
27 Bankruptcy and Ardent Bankruptcy.

28

3

# STATEMENT OF FACTS

**PwC's Disastrous Implementation of the**
**LADWP's New Customer Care & Billing System**

10. In 2010, PricewaterhouseCoopers, LLP ("PwC") was retained by the City of Los Angeles to develop and implement a new customer care and billing system ("CC&B System") for the Los Angeles Department of Water and Power, which is the largest municipal utility in the United States.

11. As widely publicly reported, PwC's disastrous implementation of the CC&B System for the LADWP went "live" in September 2013 and resulted in an overwhelming number of delayed, inconsistent and inaccurate bills, extremely negative press coverage and, ultimately, rate payer class action lawsuits being filed against the City and the LADWP.

12. In addition to being sued by a number of ratepayers, the City and the LADWP initiated its own lawsuit against PwC, the billing system implementer, on March 6, 2015 (the "*PwC Action*"). The class actions and the *PwC Action* were assigned to Los Angeles County Superior Court Judge Elihu Berle.

13. During the course of these lawsuits, PwC made numerous allegations about the propriety of the *PwC Action* and the filing of certain of the class actions.

**Los Angeles County Superior Court Judge**
**Elihu Berle Appoints Special Master Edward**
**M. Robbins, Jr. To Investigate Purported**
**Wrongdoing In *Jones v. City of Los Angeles, et al.***

14. In response to the allegations levied by PwC concerning the *PwC Action* and the class actions, Judge Berle appointed former Assistant United States Attorney Edward M. Robbins, Jr. ("Robbins") as Special Master in the *Jones Action*. (Ex. 1). On appointing Robbins as Special Master, Judge Berle ordered Robbins to conduct an investigation into a wide variety of purported wrongdoing alleged to have occurred in connection with the prosecution and settlement of ratepayer class actions, including the *Jones Action* and related matters. *Id.*

4

**Special Master Robbins Conducted
A Two Year Long Investigation and
Found That Five Ranking City Attorney
Personnel and a Named Partner of the
City's Outside Counsel Repeatedly
Engaged In Criminal Conduct and Violated
Several Ethical Rules While Representing
the City in *Jones v. City of Los Angeles, et al.***

15.     On July 13, 2021, Special Master Robbins filed a three volume, 595 page report entitled, ***Report on The Investigation Into Any Violations Surrounding The Case and Action of Jones v. City of Los Angeles and Related Cases*** (the "Special Master Report"). *See* Spcl. Mstr. Report, https://www.scribd.com/document/515640293/Special-Master-Report-DWP-cases) (Ex. 2).

16.     After conducting an extensive two year-long investigation, Special Master Robbins found that, among other things:

(i)     former Los Angeles Chief Deputy City Attorney James P. Clark ("Clark");

(ii)    former Chief Assistant City Attorney (Civil Litigation Branch) Thomas Peters ("Peters");

(iii)   Los Angeles Department of Water and Power Assistant General Counsel and Deputy City Attorney Richard Tom ("Tom");

(iv)    Deputy City Attorney Eskel Solomon ("Solomon"); and

(v)     Deputy City Attorney Deborah Dorny ("Dorny")

repeatedly engaged in misdemeanor-level criminal conduct by violating several sections of the Cal. Bus. & Prof. Code and "violated the ethical rules against dishonesty, deceit and collusion and their ethical duties to the Court in violation of the Rules of Professional Conduct" in connection with their actions and failures to act in the *Jones Action*. *Id.* at 11.

17.     In particular, Special Master Robbins found that:

a.     Clark violated:

* Cal. Bus. & Prof. Code § 6128 (Deceit or Collusion);
* Cal. Bus. & Prof. Code § 6106 (Dishonesty or Corruption);
* Cal. Bus. & Prof. Code § 6068(d) (Duty of Candor);
* Cal. Bus. & Prof. Code § 6068(B) (Duty of Respect);
* Cal. R. Prof. Conduct 3-210 (Advising Violation of Law); and
* Cal. R. Prof. Conduct 1-120 (Assisting Violations).

5

*Id.* at 105.

       b.     Peters violated:

- Cal. Bus. & Prof. Code § 6128 (Deceit or Collusion);
- Cal. Bus. & Prof. Code § 6106 (Dishonesty or Corruption);
- Cal. Bus. & Prof. Code § 6068(d) (Duty of Candor);
- Cal. Bus. & Prof. Code § 6068(B) (Duty of Respect);
- Cal. R. Prof. Conduct 3-210 (Advising Violation of Law); and
- Cal. R. Prof. Conduct 1-120 (Assisting Violations).

*Id.* at 105.

       c.     Tom violated:

- Cal. Bus. & Prof. Code § 6128 (Deceit or Collusion);
- Cal. Bus. & Prof. Code § 6106 (Dishonesty or Corruption);
- Cal. Bus. & Prof. Code § 6068(d) (Duty of Candor);
- Cal. Bus. & Prof. Code § 6068(B) (Duty of Respect);
- Cal. R. Prof. Conduct 3-210 (Advising Violation of Law); and
- Cal. R. Prof. Conduct 1-120 (Assisting Violations).

*Id.* at 105.

       d.     Solomon violated:

- Cal. Bus. & Prof. Code § 6128 (Deceit or Collusion);
- Cal. Bus. & Prof. Code § 6106 (Dishonesty or Corruption);
- Cal. Bus. & Prof. Code § 6068(d) (Duty of Candor);
- Cal. Bus. & Prof. Code § 6068(B) (Duty of Respect);
- Cal. R. Prof. Conduct 3-210 (Advising Violation of Law); and
- Cal. R. Prof. Conduct 1-120 (Assisting Violations).

*Id.* at 105.

       e.     Dorny violated:

- Cal. Bus. & Prof. Code § 6128 (Deceit or Collusion);
- Cal. Bus. & Prof. Code § 6106 (Dishonesty or Corruption);
- Cal. Bus. & Prof. Code § 6068(d) (Duty of Candor);
- Cal. Bus. & Prof. Code § 6068(B) (Duty of Respect);
- Cal. R. Prof. Conduct 3-210 (Advising Violation of Law); and
- Cal. R. Prof. Conduct 1-120 (Assisting Violations).

*Id.* at 105.

     18.    Special Master Robbins also found that, Maribeth Annaguey, one of the named partners of the *Browne George Ross O'Brien Annaguey & Ellis LLP* firm, which is the law firm retained as outside counsel to both the City of Los Angeles and the LADWP in the *Jones Action,*

6

knowingly provided false testimony during her June 5, 2019 deposition and violated the ethical rules against dishonesty, deceit and collusion and violated her ethical duties to the Court in violation of the Rules of Professional Conduct in connection with work she performed on behalf of the City of Los Angeles and the LADWP in the *Jones Action*. *Id.* at 10-11. In particular, Robbins found that Annaguey violated:

- Cal. Bus. & Prof. Code § 6128 (Deceit or Collusion);
- Cal. Bus. & Prof. Code § 6106 (Dishonesty or Corruption);
- Cal. Bus. & Prof. Code § 6068(d) (Duty of Candor);
- Cal. Bus. & Prof. Code § 6068(B) (Duty of Respect);
- Cal. R. Prof. Conduct 3-210 (Advising Violation of Law); and
- Cal. R. Prof. Conduct 1-120 (Assisting Violations).

*Id.* at 105.

**The LADWP Board of Commissioners Votes To Terminate Representation of the LADWP By Both The Los Angeles City Attorney's Office and the Browne George Firm Due To The Numerous Instances of Misconduct Found By Special Master Robbins**

19.     On December 13, 2021, the LADWP Board of Commissioners convened a Special Meeting of the Board for the purpose of conducting a closed session meeting in order to participate in a conference with legal counsel concerning a total of nine (9) litigation matters arising from, or in some way related to, the *Jones Action*. (Ex. 3). During that Special LADWP Board Meeting, the Board voted to seek the concurrence of the City Attorney's Office to terminate representation of the LADWP by both the City Attorney's Office and the Browne George firm based on Special Master Robbins having determined that five City Attorneys and one outside counsel engaged in the wrongful conduct detailed above.

20.     Following that closed session Board meeting, LADWP Commission President Cynthia McClain-Hill ("McClain-Hill") wrote a letter addressed to Los Angeles City Attorney Mike Feuer ("Feuer"). (Ex. 4).

7

21.  Commissioner McClain-Hill's December 13th letter to Feuer cited:

    i.    an ongoing federal "criminal inquiry into the actions of attorneys employed and/or retained by your office to represent the LADWP in litigation arising out of *Jones v. City of Los Angeles* and the related cases";

    ii.    Rule 1.7 (b) of the California Rules of Professional Conduct which "prohibit[s] a lawyer from representing a client if there is a significant risk the lawyer's representation of the client will be materially limited by the . . . lawyer's own interests, without informed written consent"; and

    iii.    "certain findings contained in the Special Master's Report on "*The Investigation Into Any Violations Surrounding The Case and Action of Jones v. City of Los Angeles and Related Cases,*"

as reasons why McClain-Hill and the LADWP Board were seeking Feuer's "concurrence in the LADWP Board of Water and Power Commissioners' determination that it now is imperative that the LADWP be independently represented in all matters associated with the ongoing federal investigation related to these events." *Id.*

22.  McClain-Hill also requested that "three City Attorneys currently working at LADWP be reassigned and removed from all LADWP-related matters based on the information detailed in the Special Master's Report related to their actions" and that representation of the LADWP by the Browne George Ross firm be terminated and that the firm be replaced "in all other matters." *Id.*

23.  During the regularly scheduled LADWP Board meeting held on December 14, 2021, President McClain-Hill made clear why the LADWP Board had voted to terminate representation of the LADWP by the Los Angeles City Attorney's Office and the Browne George firm and stated in relevant part:

It would be preferable if we could simply chalk this up to the acts of a few people with ill intent. However, were we to leave it at that, we would be derelict in our duty to not only address what has occurred, but to mitigate the potential for future occurrence. Toward that end, *it is imperative that we acknowledge significant failures as it relates to structures and systems that exist to protect this Department, to protect our ratepayers, from this kind of activity. In particular, there has been a significant failure in oversight at the City Attorney's Office, both past and ongoing, as it relates to their representation of this Department. There is no more polite way to say it.*

8

*    *    *

2
3
4
5

> *Yesterday, the Board of Commissioners, as a response to these matters, authorized me to forward a letter to the City Attorney's Office, advising him, of our determination that the Department requires independent representation moving forward, in all matters related to the ongoing [criminal] investigation of the Department, and in matters related to and arising out of the customer billing system debacle. . . .*

6    *See* http://ladwp.granicus.com/MediaPlayer.php?view_id=2&clip_id=1853 from 4:40 to
7    7:32 (Emphasis added).

8        24.    A recent *Los Angeles Times* article noted that "the DWP Board also moved last
9    month to retain its own independent attorneys, rather than rely on advice from the City Attorney's
10   Office on issues surrounding the billing litigation," and quoted LADWP Commissioner and Board
11   President McClain-Hill as stating, "***there could be advice that we received that could be motivated***
12   ***by an interest in deflecting, diminishing or covering up previous bad acts . . . . We need to know***
13   ***that our advice is not influenced by any of those motivations . . . .***" (Emphasis added).

14
15   **City Attorney Feuer Agrees To Allow the**
     **LADWP To Terminate Representation of**
16   **the LADWP By Both the Los Angeles City**
     **Attorney's Office and the Browne George Firm,**
17   **and Allows the LADWP To Retain Independent Counsel**

18       25.    According to a published report that appeared in a publication entitled, *California*
19   *Energy Markets*, on or about Friday, December 17, 2021, City Attorney Feuer agreed to allow the
20   LADWP to:

21           i.    terminate representation of the LADWP by the Los Angeles City Attorney's
                   office;

22          ii.    terminate representation of the LADWP by the Browne George Ross
23                 firm;

24         iii.    remove and reassign three City Attorneys currently working at LADWP
                   from all LADWP related matters; and
25

26          iv.    retain independent counsel to represent the LADWP.

27   (Ex. 5).   *See* https://www.newsdata.com/california_energy_markets/bottom_lines/ladwp-board-
28   requests-outside-counsel-in-complicated-legal-scandal/article_4c4af066-5f92-11ec-9667-
     e30578db9cdf.html.   *See also* December 21, 2021 *Daily Journal* article entitled, "*Changing*

9

*lawyers is costly, DWP is warned."*

**While These Attorneys Are No Longer**
**Representing the LADWP, The City Attorney**
**Has Improperly Continued To Allow These**
**Attorneys To Represent The City Against Complainant**

26. Despite the fact that LADWP Board President and the entire LADWP Board have determined that the Los Angeles City Attorney's Office and the Browne George firm are incapable of representing the LADWP, a proprietary Department of the City, because of the wrongdoing five City Attorneys and one outside counsel were found to have engaged in by Special Master Robbins, City Attorney Feuer and LADWP General Counsel Brajevich have nevertheless continued to allow the City Attorney's office and the Browne George firm to represent the City, itself, in two bankruptcy matters involving Complainant.

27. That Feuer and Brajevich have done so is particularly troubling and deserving of investigation in light of the fact that the City Attorney's office and the Browne George firm have previously made numerous statements about Debtor in public and in court filings that have been proven false. For example, the Special Master found that, *"despite the City's public assertion that Mr. Paradis and Mr. Kiesel, without the knowledge of anyone in the City, went "rogue" in handing off the Jones v. City complaint, ... the evidence supports a finding that the City directed and assisted in the City suing itself with a sham lawsuit."* (Ex. 2 at 6-7.) (Emphasis added).

28. In addition, on March 14, 2019, Complainant's counsel spoke at length telephonically with Browne George Partners Maribeth Annaguey and Eric George and provided both of them with a number of emails and documents that clearly demonstrate that Kiesel and Complainant were not "rogue actors" and the acts undertaken by Kiesel and Complainant on behalf of the City in connection with both the *Jones Action* and the *PwC Action* were undertaken at the direction of, and with the knowledge and consent of the City Attorney's Office, and that both Levine and Clark, the mastermind behind the *PwC Action*, suffered from inherent conflicts due to their continuing financial interests in the Gibson Dunn firm. Despite having actual knowledge of the falsity of the City's "rogue actor" allegations involving Complainant and Kiesel, neither Annaguey nor George informed Judge Berle or Special Master Robbins of these facts. Rather,

10

both Browne George partners wrongly continued to perpetrate the "rogue actor" lie and violated Cal. Bus. & Prof. Code § 6068(d) by knowingly and intentionally misleading Judge Berle by making these false statements and Cal. R. Prof. Conduct 1-120 by knowingly assisting the City Attorney's Office in violating the California State Bar Act.

29. Accordingly, Complainant requests that the Ethics Commission conduct an investigation to determine whether the conduct detailed herein did, in fact, violate, among other things, the Los Angeles City Ethics Code and whether such conduct renders the Los Angeles City Attorney's Office and/or the Browne George law firm incapable of continuing to represent the City of Los Angeles in numerous matters, including, but not limited to, the two bankruptcy matters pending in the United States Bankruptcy Court for the District of Arizona involving Complainant.

**Previously Undisclosed Violations of California Law, the California Code of Professional Conduct and the Los Angeles City Ethics Code By Senior Ranking Los Angeles City Officials That Were Not Investigated By Special Master Robbins Require Investigation by the Ethics Commission**

30. Complainant also has knowledge of additional extremely serious wrongdoing by senior ranking City officials that was not known to, or investigated by, Special Master Robbins. This previously undisclosed wrongdoing further demonstrates that the City, including its attorneys, have engaged in a wide variety of illegal and unethical conduct during the pendency of the *Jones Action* and *PwC Action*. This unethical conduct, which is detailed below, warrants investigation by the Ethics Commission and the California State Bar.

I. **Gibson Dunn & Crutcher LLP Attorney Meldon Levine Violated California Rule of Professional Conduct 1.7 By Voting To Approve The Filing Of The City of Los Angeles and LADWP's Law Suit Against A "Current Client" of Gibson Dunn -- Namely PricewaterhouseCoopers LLP**

31. As explained above, on March 6, 2015, the City, by and through the LADWP, filed a lawsuit against PwC, asserting breach of contract and fraudulent inducement claims arising out of the botched CC&B system implementation for the LADWP. The *PwC Action* was captioned, *City of Los Angeles v. PricewaterhouseCoopers, LLP*, BC574690 and was ultimately assigned to

11

1    Judge Berle.   The City retained attorneys Paul Kiesel ("Kiesel") and Complainant as "Special

2    Counsel" to prosecute the *PwC Action* on behalf of the City.

3         32.    The City's lawsuit, which named PwC as the sole defendant, was conceived of by

4    Los Angeles Chief Deputy City Attorney James P. Clark.  Prior to working as the Los Angeles

5    Chief Deputy City Attorney, Clark was a Partner and thirty-six year veteran of the litigation

6    department at Gibson, Dunn & Crutcher LLP ("Gibson Dunn").  During Clark's tenure as the Los

7    Angeles Chief Deputy City Attorney, in addition to receiving his salary from the City of Los

8    Angeles, Clark also regularly received retirement pension benefit payments from Gibson Dunn and

9    therefore had a continuing financial interest in Gibson Dunn at all times relevant hereto.

10        33.    As the Los Angeles Chief Deputy City Attorney, Clark was a Los Angeles City

11   official because he was required to file statements of economic interests for his position with the

12   City.   (Ex.  6  at  2).   *See*  https://ethics.lacity.org/wp-content/uploads/2019/01/City-Officials-

13   Handbook-2019-with-Cover-1.pdf.

14        34.    As a Los Angeles City official, Clark was subject to the requirements imposed on

15   Los Angeles City officials under the City of Los Angeles Code of Ethics ("Code of Ethics"),

16   including, in particular, Section I which states in relevant part, "***persons in the public service shall***

17   ***not engage in nor shall they have any interest, direct or indirect, in any . . . transaction . . .***

18   ***which is in substantial conflict with the proper discharge of their official duties in the public***

19   ***interest  .  .  . .***"   (Ex.  7).   (Emphasis  added).   *See*  https://ethics.lacity.org/wp-

20   content/uploads/2017/10/CityCodeofEthics.pdf.

21        35.    As an attorney licensed to practice law in the State of California, Clark was, at all

22   times  relevant  hereto,  required  to  comply  with  the  California  Rules  of  Professional  Conduct,

23   including,  in  particular,  Rule  1.7  governing  conflicts  of  interest.   (Ex.  8  at  12).   *See*

24   https://www.calbar.ca.gov/Portals/0/documents/rules/Rules-of-Professional-Conduct.pdf.

25        36.    From September 2013 through summer 2020, retired United States Congressman

26   Meldon Levine ("Levine") served as the President of the Los Angeles Board of Water and Power

27   Commissioners and was, therefore, a Los Angeles City official because he was required to file

28   statements  of  economic  interests  for  his  position  with  the  City.   (Ex.  6  at  2).   *See*

1  https://ethics.lacity.org/wp-content/uploads/2019/01/City-Officials-Handbook-2019-with-Cover-
2  1.pdf. As a Los Angeles City official, Levine was also subject to the requirements imposed on Los
3  Angeles City officials under the City Code of Ethics. (Ex. 7).

4      37.    At all times relevant hereto, Levine also was an employee of Gibson Dunn, serving
5  as "Of Counsel" to the firm. At all times relevant hereto, Levine was also a retired Gibson Dunn
6  Partner as a result of having reached the mandatory retirement age for Partners of the firm who
7  then continued to work for Gibson Dunn as "Of Counsel" following his retirement as a Partner of
8  the firm. In addition to regularly receiving retirement pension benefit payments from Gibson
9  Dunn, Levine also received W-2 wages from Gibson Dunn at all times relevant hereto for serving
10  in an "Of Counsel" capacity to the firm. As a result of receiving these various payments, Levine
11  had a continuing financial interest in Gibson Dunn at all times relevant hereto. (Ex. 9).

12      38.    As an attorney licensed to practice law in the State of California, Levine was, at all
13  times relevant hereto, also required to comply with the California Rules of Professional Conduct,
14  including, in particular, Rule 1.7 governing conflicts of interest, which even applies to attorneys
15  not working in a professional, representative capacity. (Ex. 8 at 12). *See*
16  https://www.calbar.ca.gov/Portals/0/documents/rules/Rules-of-Professional-Conduct.pdf.

17      39.    In relevant part, California Rule of Professional Conduct 1.7 states that a "conflict
18  of interest" exists when an attorney, without informed written consent, represents a client whose
19  interests are "directly adverse" to another client in the same matter.

20      40.    At all times relevant hereto, PwC was a "current client" of Gibson Dunn. This fact
21  is confirmed by a review of the docket sheet in a matter entitled, *Laurent v.*
22  *PricewaterhouseCoopers LLP et al.*, 06-cv-02280-JPO filed in the United States District Court for
23  the Southern District of New York. (Ex. 10). According to this docket sheet, PwC became
24  "current client" of the Gibson Dunn firm at least as early as March 23, 2006 and continuously
25  remained a "current client" of the Gibson Dunn firm through at least 2021. *Id.*

26      41.    According to a June 21, 2016 *Recusal Review Memorandum* authored by Nathan
27  Hardy, Director of Policy for the Los Angeles City Ethics Commission,

28

13

*Because President Levine's law firm [Gibson Dunn] may occasionally represent clients with interests adverse to the City, the City Attorney's office has stated that it would advise President Levine to recuse himself from all discussions and deliberations regarding matters directly involving or affecting current clients of his firm . . . .*

(Ex. 9 at 2.) (Emphasis added).

42.     During the period January through April 23, 2015, Levine and Clark knowingly violated California Rule of Professional Conduct 1.7 and the City's Code of Ethics by conceiving of, engineering, instigating and commencing the City of Los Angeles' lawsuit against PwC – which was a "current client" of the Gibson Dunn firm at the time Levine and Clark did so.

43.     By doing so without informing PwC that Levine and Clark had been the originators and architects of the City's lawsuit against PwC and without obtaining PwC's informed written consent, Gibson Dunn, Levine and Clark each violated, and/or aided and abetted Levine in violating, California Rule of Professional Conduct 1.7 and the City's Code of Ethics.

44.     The fact that Levine and Clark were the originators and architects of the City's lawsuit against PwC is also well documented in a series of emails, including a:

a.     January 22, 2015 email authored by Chief Assistant City Attorney Peters that was sent to Deputy Los Angeles City Attorney Solomon ("Solomon") which states in relevant part, "Gary, Jim and I spoke about the affirmative litigation the outside firm proposes to bring [against PwC]. *[Gary and Jim] would like to schedule a meeting to discuss it at the very earliest opportunity, and would like you, Marcie, Mel and Richard Tom and or [Richard] Brown to be involved . . . .*" (Ex. 11). (Emphasis added);

b.     January 23, 2015, email from Peters to Deputy City Attorney Solomon asking Solomon, "*Can we get an audience with Mel, too? Marcie* as well?" (Ex. 12). (Emphasis added);

c.     January 23, 2015 email from LADWP Assistant General Counsel Richard Tom ("Tom") to Peters stating in relevant part, "*Thom, Your assistant just scheduled us to meet at 3 pm. We can discuss then how and when to engage Marcie, Mel and the board in the discussion to get their direction and approval.*" (Ex. 13). (Emphasis added);

14

d.     January 26, 2015 email authored by Chief Deputy City Attorney Clark sent to Special Counsel Paul Kiesel stating:

> Paul –
>
> ***I have been working on this all weekend, and just haven't been able to connect with Mel. I am 100% sure that he'll be fine with it -- and Mike [Feuer] is completely on board -- but I just want Mel's sign off.*** He's in his G, D&C office today, and we've traded calls. I'm confident that this will get resolved in the next few hours, and will let you know as soon as that's happened. I am truly sorry about this incredibly stupid delay.
>
> Best. Jim

(Ex. 14). (Emphasis added);

e.     second January 26, 2015 email from Clark to Kiesel stating:

> Paul –
>
> ***Just talked to Mel.*** While (for political reasons) he still would like me to talk to his Vice-Chair, Bill Funderburk, we're good to go on the tolling agreement and 10-day notice letter now. ***He was enthusiastic, by the way, and is confident that the full Board will support the litigation strategy we've discussed.***
>
> All best regards.
>
> Jim

(Ex. 15). (Emphasis added).

45.     A February 13, 2015 email authored by LADWP Assistant General Counsel Tom to Clark again makes clear that Levine and Clark were the originators and architects of the City's lawsuit against PwC. Tom's email states:

> Jim:
>
> ***I spoke with Bill Funderburk and traded emails with Mel Levine this afternoon. They are both in agreement with the approach of a limited briefing to the board on Tuesday seeking their support for the filing of the suit***, and both understand the potential short delay in the filing date. We would have opportunity for a more detailed discussion about suit in the next few months as needed. . . .

(Ex. 16). (Emphasis added).

46.     Minutes of the February 17, 2015 LADWP Board Meeting reflect the fact that the LADWP Board held a discussion as Levine and Clark had directed, but that no action was taken

15

concerning the commencement of the City's lawsuit against PwC at that Board meeting. (Ex. 17 at 33).

47.    The fact that Levine was actively and deliberately engaged in hiding his involvement in instigating and commencing the City's lawsuit against PwC, which was a "current client" of Gibson Dunn, is demonstrated by Levine's filing of a "CEC Form 51 Recusal Notification" form which publicly created the materially false and misleading impression that Levine recused himself and had no involvement with the City's discussion of whether to bring suit against PwC during the February 17, 2015 LADWP Board meeting. (Ex. 18).

48.    In reality however, as the email traffic identified in ¶¶ 42 - 43 above makes clear, Levine was, in fact, a primary driver behind the City's decision to sue Gibson Dunn's then "current client," PwC, and even Clark would not – and did not – proceed to initiate this lawsuit without first obtaining Levine's approval to file the City's lawsuit against PwC. (Ex. 15, 16).

49.    On April 23, 2015, the LADWP Board conducted a regularly scheduled Board meeting. Minutes of that Board meeting confirm that Gibson Dunn violated California Rule of Professional Conduct 1.7 and that *Levine violated both California Rule of Professional Conduct 1.7 and the City's Code of Ethics when, rather than recusing himself as Levine was required to do, Levine, instead, intentionally voted to approve Agenda Item 23 which involved the formal retention of Special Counsel by the City and LADWP to prosecute the lawsuit against PwC that had previously been filed by the City on March 6, 2015*. In fact, not only did Levine vote to approve the retention of Special Counsel to prosecute the litigation against PwC -- who was the Gibson Dunn's "current client" – Levine actually demonstrated his enthusiasm for suing PwC by seconding the motion for approval as confirmed by the Board meeting minutes. (Ex. 19 at 13-14). (Emphasis added).

50.    Levine's deliberate and affirmative act of voting to approve the retention of Special Counsel and the prosecution of the City's lawsuit against PwC (who was a "current client" of the Gibson Dunn firm at the time Levine cast his affirmative vote) constituted a blatant violation of both California Rule of Professional Conduct 1.7 and the City's Code of Ethics because of Levine's ongoing financial interests in the Gibson Dunn firm.

16

51.     The wrongful actions taken by the Gibson Dunn firm (under a theory of *respondeat superior*), Levine and Clark in causing the City and LADWP to file a lawsuit against Gibson Dunn's "current client" were actually known to and approved by Los Angeles City Attorney Mike Feuer, Los Angeles Chief Assistant City Attorney (Civil Litigation Branch) Thomas Peters, LADWP Assistant General Counsel Richard Tom, Deputy City Attorney Eskel Solomon, and Deputy City Attorney Deborah Dorny, who each personally aided and abetted Gibson Dunn, Levine and Clark in violating California Rule of Professional Conduct 1.7 and the City's Code of Ethics.

52.     To the best of Complainant's knowledge, none of these individuals ever reported the foregoing misconduct engaged in by Gibson Dunn, Levine and Clark to Judge Berle, Special Master Robbins, PwC, the Los Angeles Ethics Commission, California State Bar officials, or LADWP ratepayers.

53.     While the exact amount of the millions of dollars in attorneys' fees that were paid to the Gibson Dunn firm by PwC to defend PwC against the City's lawsuit has not been publicly disclosed, it is indisputable that Levine and Clark greatly financially benefitted the Gibson Dunn firm (a firm in which they both had – and continue to have – a continuing financial interest at all times relevant hereto) by conceiving of, engineering, instigating and commencing the City's lawsuit against PwC, which was a "current client" of Gibson Dunn at the time they did so and while they were both required to recuse themselves from matters involving Gibson Dunn's "current clients."

**II.     Levine and Clark Violated Cal. Bus. and Prof. Code § 6068, Rule of Professional Conduct 3-100 and Section IV of the City Ethics Code By Knowingly and Intentionally Disclosing the City's Attorney-Client Privileged Information and Attorney Work Product To Gibson Dunn, PwC's Defense Counsel**

54.     As explained above, from September 2013 through July 30, 2020, Levine was the LADWP Board President and a Los Angeles City official. As a Los Angeles City official, Levine was assigned an official City email address for him to use while conducting business on behalf of the LADWP.

17

55.     As a Los Angeles City Official, Levine was subject to and required to comply with the Los Angeles City Ethics Code. Section IV. of the Ethics Code is entitled, "**Use of Confidential Information,**" and requires in relevant part:

> Persons in the public service shall not disclose confidential information acquired by or available to them in the course of their employment with the City, or use such information for speculation or personal gain.

(Ex. 7).

56.     As also explained above, from September 2013 through July 30, 2020, Levine was also an attorney licensed to practice law in the State of California and employed as "Of Counsel" by the Gibson Dunn firm. As a Gibson Dunn attorney, Levine was assigned the following official Gibson Dunn email address for him to use while conducting business on behalf of Gibson Dunn: MLevine@gibsondunn.com.

57.     As a Gibson Dunn attorney, Levine was subject to and required to comply with the California Rules of Professional Conduct. Rule 3-100 (now Rule 1.6) of the California Rules of Professional Conduct is entitled, "**Confidential Information of a Client,**" and states in relevant part:

> (A) A member shall not reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) without the informed consent of the client, or as provided in paragraph (B) of this rule.

(Ex. 8 at ).

58.     From July 2013 through August 31, 2020, Clark was the Los Angeles Chief Deputy City Attorney and a Los Angeles City official. As a Los Angeles City official, Clark was assigned the following official City email address for him to use while conducting business on behalf of the LADWP: james.p.clark@lacity.org.

59.     As a Los Angeles City Official, Clark was subject to and required to comply with the Los Angeles City Ethics Code, including Section IV. of the Ethics Code governing "**Use of Confidential Information.**" (Ex. 7). As the Los Angeles Chief Deputy City Attorney, Clark was also subject to and required to comply with the California Rules of Professional Conduct, including Rule 3-100, governing "**Confidential Information of a Client.**" (Ex. 8).

18

60. From July 2013 through August 31, 2020, Clark was also a retired Gibson Dunn Partner. As retired Gibson Dunn Partner, Clark was assigned the following official Gibson Dunn email address for him to use: jclark@retiredpartner.gibsondunn.com.

61. Under California law, a lawyer owes a duty of undivided loyalty to their client and is under an obligation to preserve the secrets of his client "at every peril to himself." (Cal. Bus. & Prof. Code, § 6068 (e)) (Ex. 20) It is a fundamental principle in the client-lawyer relationship, that, in the absence of the client's informed consent, an attorney must not reveal information relating to the representation. *See*, e.g., *Commercial Standard Title Co. v. Superior Court* (1979) 92 Cal.App.3d 934, 945 and California Rule of Professional Conduct 3-100.

62. At all times relevant hereto, Levine and Clark knowingly and intentionally violated Cal. Bus. & Prof. Code, § 6068 (e) and California Rule of Professional Conduct 3-100 by utilizing their Gibson Dunn email addresses and the Gibson Dunn firm's email servers to send and receive emails and documents that contained information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine owned by the City and LADWP concerning many litigation matters, including the City's lawsuit against PwC.

63. By doing so, Levine and Clark intentionally provided the adverse party's counsel, Gibson Dunn – the very firm in which both Levine and Clark had a continuing financial interest, with a plethora of emails and documents that contained the City's confidential litigation strategy, draft pleadings (before such pleadings were ever filed), complex damage analyses and a plethora of other strategy memoranda, documents and emails that contained the mental thoughts and processes of Special Counsel to the City and LADWP involving the City's case against PwC.

64. By intentionally and knowingly providing defense counsel for PwC with the City's privileged and confidential litigation strategy materials, Levine and Clark clearly benefitted Gibson Dunn – the law firm in which both Levine and Clark had an ongoing financial interest throughout the pendency of the City's lawsuit against PwC -- and violated Section IV of the City's Ethics Code in doing so. In addition, Levine and Clark also severely disadvantaged the City to whom they took an oath to protect. (Exs. 21-22). *See* Sections 209 and 215 of the City of Los Angeles Charter.

19

65.     The fact that Levine knowingly and deliberately engaged in this misconduct and that Levine clearly intended to provide Gibson Dunn with the City's confidential attorney-client privileged communications and documents and attorney work product is evidenced by emails dated December 19, 2015. (Ex. 23). A December 19, 2015 email authored by Complainant that was written to the LADWP's Assistant IT Director and copied to Deputy City Attorney Dorny and the City's outside counsel, Maribeth Annaguey, states:

> Please find out what Mel Levine's email is and make sure it is active and let me know. ***I need him to start using it immediately to communicate with us about DWP matters so that this information is not stored on Gibson Dunn's email server since Gibson Dunn is defending PwC. I spoke with him [Levine] about it this week***. Thanks.

*Id.* (Emphasis added).

66.     A review of Levine's email traffic sent and received after the December 19, 2015 emails confirms that Levine ignored Complainant's advice and continued to deliberately provide Gibson Dunn - his employer and the law firm that was adverse to the City in the PwC Litigation – with all of the City's attorney-client privileged information and attorney work product concerning the City's litigation against PwC by improperly using his Gibson Dunn email to conduct City business. For example, on June 1, 2017, Levine wrote an email to LADWP General Manager David Wright in which Levine stated in relevant part, "Actually, ***I looked back a year and the only ones [emails] I had other than DWP announcements and things like that were from you. I will try to check it [Levine's official LADWP email] more often, which I should do, but I don't like to use that account except when absolutely necessary (even though I know I should).***" (Ex 24.) (Emphasis added).

67.     Finally, the fact that Clark was using his Gibson Dunn email to conduct official City business and sending and receiving the attorney-client privileged information and attorney work product involving virtually all of the litigation matters that Clark was handling or overseeing in the City Attorney's office was well known to City Attorney Feuer and Chief of Staff Kapur.

68.     Clark's knowing and deliberate failure to safeguard the City's attorney-client privileged communications and attorney work product extends well beyond the matters discussed herein and, in fact, involves literally *every* matter that Clark was assigned to or worked on during

20

his tenure in the City Attorney's Office because of the manner in which Clark intentionally configured his official City email to work with his Gibson Dunn email. By knowingly sharing the City's attorney-client privileged communications and attorney work product with the Gibson Dunn firm, Clark arguably waived both the City's attorney-client privilege and attorney work product protections in *all* of the City matters on which Clark worked.

69. Inexplicably, neither Feuer nor Kapur ever instructed Clark to cease this practice or reported Clark for this misconduct – rather, they aided and abetted Clark's misconduct by knowingly allowing Clark's misconduct to continue unchecked and even emailed Clark at his Gibson Dunn email address concerning official City business themselves. In addition, by using non-City email addresses to conduct official City business, these officials enabled the City Attorney's Office to improperly deny the existence of any emails responsive to a wide variety of California Public Records Act ("CPRA") requests because a search of the City's email servers could never and would never reveal the existence of emails that had been authored or received by Levine and Clark using non-City owned email servers.

**III.   Senior Ranking Los Angeles City Officials**
**Intentionally Violated the *Brown Act*,**
**Interfered With Government Administration**
**and Falsified Official Public Records of the**
**City of Los Angeles To Prevent**
**Their Misconduct From Being Discovered**

**A.   The LADWP Board Voted To Initiate**
**Contractor Non-Responsibility / Debarment**
**Proceedings Against PwC During the**
**June 21, 2016 Closed Session Board Meeting**

70. In the spring and early summer of 2016, during the course of litigating the *PwC Action*, Complainant uncovered the fact that PwC had acted fraudulently in connection with work it had performed at the LADWP. Accordingly, Complainant undertook an investigation to determine whether the LADWP should institute contractor non-responsibility / debarment proceedings against PwC. After completing this investigation, Complainant determined he would recommend to the LADWP Board of Commissioners that the Board vote in favor of instituting contractor non-responsibility / debarment proceedings against PwC.

21

71. In the early morning of June 21, 2016, Wright (who at that time was the LADWP's Chief Operating Officer) instructed Complainant that Wright and Complainant needed to meet with LADWP General Manager Marcie Edwards to discuss Complainant's recommendation that the LADWP Board consider commencing contractor non-responsibility / debarment proceedings against PwC.

72. Wright and Complainant then met with Edwards in Edwards' conference room at approximately 8 am on June 21st for approximately twenty minutes. During that meeting, Complainant explained the recommendation that the LADWP Board consider commencing contractor non-responsibility / debarment proceedings against PwC and Edwards and Wright asked numerous questions. The meeting was concluded by Edwards and Wright stating they would support moving forward with debarment proceedings against PwC.

73. On June 21, 2016, the LADWP Board conducted a regularly scheduled Board meeting, which included both a Public Session and Closed Session. Agenda ITEM NO. 31A(ll) involved a discussion with the Board and Complainant concerning the *City of Los Angeles v. Pricewaterhouse Coopers LLP (PwC)* litigation. (Ex. 25 at 28.)

74. During the closed session, Complainant made a presentation to four Board members and others in attendance at the Closed Session, including Edwards and Wright, concerning Complainant's recommendation that the LADWP institute contractor determination of non-responsibility / debarment proceedings against PwC. (Ex. 26). Following this discussion, the four Board members that were present, including LADWP Board Vice President Funderburk, voted unanimously to institute contractor debarment proceedings against PwC; *i.e.*, to begin the process of debarment against PwC.

75. The fact that the Board conducted such a vote was confirmed by a June 21, 2016 email authored by LADWP General Counsel Brajevich that he sent to City Attorney Feuer's Chief of Staff, Leela Kapur, that states in relevant part, "Leela, *We had the closed session discussion on PWC. One of the things the board authorized management to do is institute debarment proceedings against PWC at the appropriate time.*" (Ex. 27). (Emphasis added).

22

**B. City Attorney Feuer, Chief of Staff Kapur,
LADWP General Counsel Brajevich and
Others Intentionally Interfered With Government
Administration and Conspired to Undo the Official LADWP
Board Vote To Institute Debarment Proceedings Against PwC**

76.     Following the LADWP's June 21, 2016 unanimous vote to initiate contractor non-responsibility / debarment proceedings against PwC, several top-ranking members of the Los Angeles City Attorney's Office, including City Attorney Feuer himself, knowingly and intentionally embarked on an illegal course of conduct that was designed to – and did – greatly benefit Gibson Dunn and its client PwC to the detriment of the City by undoing the LADWP official Board vote to initiate debarment proceedings against PwC. Such conduct improperly interfered with government administration and violated California state law, the City's Ethics Code and the California Rules of Professional Conduct. These same City officials then acted to insure that the public never learned of their wrongful conduct by falsifying official City of Los Angeles public records.

77.     On June 29, 2016, City Attorney Mike Feuer sent a meeting invitation to Kapur, Peters and Brajevich inviting them to attend a meeting at Feuer's office the following day, June 30, 2016 from 9:30 to 10:30 am to discuss the PwC litigation, including debarment. (Ex. 28). In the afternoon of June 29th, Peters telephoned Complainant and informed him of this meeting and told Complainant that his attendance at this meeting was required. (Ex. 29).

78.     In the early evening of June 29, 2016, Brajevich visited Complainant in his office at the LADWP and engaged in a discussion concerning debarment proceedings and the LADWP's Contractor Program. Following this discussion, Brajevich emailed Kapur and Peters and informed them of the substance of the conversation that Brajevich had with Complainant concerning debarment.

79.     On the morning of June 30, 2016, Complainant met with City Attorney Feuer, Kapur, Peters and Brajevich in Feuer's office at City Hall East. Feuer began that meeting in an extremely angry and hostile tone by asking Complainant the following rhetorical question, "***Do you know who I am?***" Puzzled, Complainant responded, "yes, you are the City Attorney." Feuer then responded, "***that's right. I am the Captain of the team! I am the Captain! Do you***

23

1  *understand that? I am the Captain and you are just a player on the team! And if you want to*
2  *keep playing on the team, you will follow my orders, is that clear?"* (Emphasis added).

3      80.    Dumbfounded, Complainant asked Feuer why he was upset. Feuer then explained
4  that he was angry that Complainant had requested and obtained a vote by the LADWP Board to
5  institute debarment proceedings against PwC. Feuer and Kapur both repeatedly stated that they
6  were strongly against moving forward with debarment proceedings against PwC and that it was
7  Feuer's opinion that doing so was "a bad idea."

8      81.    Feuer then stated that he wanted Complainant and Peters to meet with LADWP
9  General Manager Marcie Edwards and LADWP Chief Operating Officer Wright, along with
10  Brajevich and that Feuer wanted Complainant to argue the benefits of moving forward with
11  debarment against PwC and Peters to argue the negatives associated with moving forward with
12  debarment against PwC so that LADWP's Executive Management could make a decision on
13  whether to move forward with debarment proceedings against PwC.

14      82.    Complainant responded that he was happy to meet with Edwards and Wright and to
15  present his views on the benefits of initiating debarment proceedings against PwC as the LADWP
16  Board had voted to do on June 21st, but was confused by Feuer's suggestion that this presentation
17  by Complainant and Peters would be used by LADWP's Executive Management to make a
18  decision on whether to move forward with debarment proceedings against PwC because, as
19  Brajevich's June 21st email confirmed, *the LADWP Board had already voted 4-0 to initiate*
20  *debarment proceedings against PwC during the Closed Session of the June 21st LADWP Board*
21  *meeting*.

22      83.    Feuer then acknowledged the fact that the LADWP Board had voted to initiate
23  debarment proceedings against PwC, but nevertheless said that he wanted the presentation made to
24  Edwards and Wright by Complainant and Peters. Following the lengthy meeting in Feuer's office,
25  Brajevich then emailed Edwards and informed her that he had just finished a meeting with Feuer,
26  Complainant and others and that Feuer wanted Edwards to participate in a meeting as Feuer had
27  directed. (Ex. 30).

28

24

84.     Peters then drove Complainant and himself from City Hall East to the LADWP where the two were to meet with Edwards, Wright and Brajevich, as Feuer had instructed. After waiting for a period of time, Brajevich informed Peters that he was delayed and that Peters and Complainant should begin their discussion with Wright and that Brajevich would join when he was free and was uncertain whether Edwards would be joining the meeting at all because she was not at the LADWP at that time.

85.     An email sent by Edwards to Brajevich at 1:20 pm on June 30th while Brajevich was in attendance at the meeting with Complainant, Peters and Wright makes clear that City Attorney Feuer, his Chief of Staff Kapur, Peters, Brajevich, along with LADWP's Edwards and Wright had, unbeknownst to Complainant at that time, determined to intentionally interfere with the administration of Los Angeles City government official action by secretly trying to "undo" or "reverse" the LADWP Board's June 21st vote to initiate debarment proceedings against PwC. (Ex. 31).

86.     Edwards email to Brajevich confirmed the City Attorney's plot to intentionally interfere with official government action by undoing the LADWP Board's June 21st vote and tellingly asks, "***Getting to the appropriate outcome***?" Brajevich's immediate response to Edwards is unequivocal and states, "***Yes on debarment language, working other details***" and "***Dave doing a great job on lead*** – working on press lead now – discussion overtime of filing lawsuit." *Id.* (Emphasis added).  Edwards responded immediately and stated, "***Good.  Then I don't need to weigh in.  Nice work!***" *Id.* (Emphasis added).

87.     Following this meeting with Wright, Peters and Brajevich at the LADWP, Complainant contacted LADWP Commissioner and Board Vice President William Funderburk ("Funderburk") and requested to meet with him as soon as possible.  Funderburk agreed to meet Complainant later in the afternoon of June 30th.

88.     During their meeting, Complainant informed Funderburk of how Complainant had been summoned to a meeting earlier that day and excoriated by Feuer for having recommended that the LADWP Board consider and vote on initiating debarment proceedings against PwC on June 21st and how Feuer had expressed anger at Complainant that the LADWP Board had actually

25

1  voted 4-0 to initiate debarment proceedings against PwC at that Closed Session Board meeting.

2      89.     Following Complainant's meeting with LADWP Board Vice President Funderburk

3  in the late afternoon of June 30, 2016, Funderburk emailed fellow LADWP Commissioner and

4  attorney Michael Fleming and asked if Commissioner Fleming was available to talk.  (Ex. 32).

5      90.     At 3:34 pm on the afternoon of June 30, 2016, LADWP's Assistant General

6  Manager for Communications and Public Affairs Ramallo emailed LADWP Commissioners

7  Funderburk, Fleming, Noonan and Barad and provided them with a copy of the press release that

8  the LADWP issued in connection with the filing of the Motion for Leave to File an Amended

9  Complaint that also occurred on June 30, 2016.  In relevant part, that press release states:

> After learning of the alleged fraudulent conspiracy, ***the Board of Water and Power Commissioners directed LADWP Executive Management to pursue all appropriate remedies, up to and including the possibility of debarment***, which if initiated could result in PwC being debarred as a government contractor for the LADWP for a maximum period of five (5) years.

(Ex. 33). (Emphasis added).

15     91.     Precisely six minutes after Ramallo sent his email and press release to the LADWP

16  Commissioners, Peters emailed Brajevich at 3:40 pm and asked, "***So does this mean they are still***

17  ***not moving forward with debarment at this time?***"  (Ex. 34).  (Emphasis added).  Shortly

18  thereafter Brajevich replied, "***That is correct but Funderburk is still pushing.***"  *Id.*  (Emphasis

19  added).

20     92.     Seven minutes later, at 3:47 pm, Funderburk emailed Brajevich and copied

21  Commissioner Fleming on his email.  Funderburk's email stated in relevant part,

> Joe:
>
> Just to confirm that even with the information you provided about the factual uncertainty of proceeding with debarment, ***I strongly believe a debarment notice should be sent today.  First, the board voted 4-0 to provide management with authority with executing certain actions within 10 days . . .  To go against management would be to undermine the board's closed session decision, if it is ever questioned in the future. . . .***

27  (Ex. 35). (Emphasis added).

28

93.     Following Complainant's meeting with LADWP Board Vice President Funderburk in the late afternoon of June 30, 2016, Funderburk called Brajevich and informed Brajevich that Funderburk remained "*supportive of moving forward with debarment.*" (Ex. 36). (Emphasis added).   Brajevich sent an email to Kapur and Peters informing both of them of Funderburk's position at 6:04 pm on June 30, 2016 and stated, "*I do not know how that will impact Dave and Marcie.*" *Id.*

94.     At 6:07 pm on June 30, 2016, Brajevich emailed Edwards and Wright and stated, "*I just spoke with Commissioner Funderburk who said he considered everything in the conversation our office had with him and that he is in favor of moving forward with the debarment process and that I convey that to you which I am doing.*" (Ex. 37).   (Emphasis added).

95.     At 6:26 pm on June 30, 2016, Funderburk again emailed Brajevich and stated,

Joe:

I spoke with Commissioner Fleming. *It would be helpful to have the closed session minutes.   I'm not sure the motion was to delegate authority to management on debarment.   I believe our motion was to debar PWC.*   If management was given authority by the board to make the decision, that's one thing. *If the board already voted, doesn't the board have to decide itself to undo its vote . . . ?*

(Ex. 38 at 3).   (Emphasis added).

96.     At 6:57 pm on June 30, 2016, Edwards emailed Brajevich.   The subject line stated simply, "Bill's [Funderburk] Email."   Edwards' email was concise and simply stated, "*I am so pissed off.   Not at you, lol.*" (Ex. 39).   (Emphasis added).   At 6:59 pm, Brajevich responded to Edwards and stated, "feel free to be pissed off at me if it makes you feel any better.   I feel like I just played seven rounds of tennis – as the ball." *Id.*   Edwards then replied, "Better than me.   I feel like the tennis shoe." *Id.*

97.     At 10:27 pm on June 30, 2016, Brajevich, again, emailed Funderburk and copied Commissioner Fleming and Edwards.   In this email, Brajevich intentionally misstated what had occurred during the Closed Session of the June 21, 2016 LADWP Board Meeting and continued to unlawfully interfere with official government action by ignoring the Board's 4-0 vote to initiate

27

1  debarment proceedings against PwC on June 21, 2016. Brajevich continued to press forward with
2  Feuer's plot to secretly undo the LADWP's official Board action and interfere with the LADWP
3  Board's effort to initiate debarment proceedings against PwC. Brajevich's email stated in relevant
4  part:

> Commissioner,
>
> *        *        *
>
> I would also like to clear up a matter in your original email below stating that to
> "go against the management would be to undermine the Board's closed session
> decision." *The City Attorney's Office is not going against the management . . . .*
> *After Paul and Thom finished their presentations, I advised your office of our*
> *Office's position and the City Attorney's express words, that commencing the*
> *debarment process is a bad idea.  Thom, Paul and I had a similar meeting with*
> *David Wright early in the afternoon and did the same presentation and conveyed*
> *the same message.  Management made the decision not to commence debarment*
> *proceedings at this time.*
>
> *If the Board of Commissioners desires to move forward with debarment*
> *proceedings and provide instructions it can certainly do so at a Board meeting . .*
> *. .*

16 (Ex. 38). (Emphasis added).

17      98.      In furtherance of Feuer's effort to impose his will on the LADWP Board and undo
18 the official Board vote to initiate debarment proceedings against PwC, Brajevich continued to
19 ignore the fact that *the LADWP Board had already voted to commence debarment proceedings*
20 *against PwC during the June 21ˢᵗ Closed Session Board meeting*.  This fact was confirmed by
21 Funderburk in his email of 6:26 pm June 30ˑ 2016.  In reality, the only thing that had been
22 delegated to LADWP Executive Management was the decision of when to commence debarment
23 proceedings against PwC within the 10 day period following the June 21ˢᵗ Board meeting.  Rather
24 than acknowledging this fact, Brajevich improperly continued to execute on Feuer's orders to take
25 whatever action necessary to undo the official June 21ˢᵗ Board vote concerning debarment and
26 PwC.

27      99.      At 10:38 pm on June 30, 2016, Funderburk replied to Brajevich's email of 10:27
28 pm that same date and simply stated, "Thank you Joe.  Very helpful."  (Ex. 40).  Brajevich

forwarded Funderburk's email to Feuer, Kapur and Peters at 11:13 pm on June 30, 2016 and stated "FYI." *Id.*

**C. When Funderburk Refused To Yield To Feuer's Demand That The LADWP Board Abandon Debarment Proceedings Against PwC, Gibson Dunn Attorney and LADWP Board President Levine Violated California's "*Brown Act*" and Ordered Commissioners Funderburk and Fleming to Stand Down**

100. On June 21, 2016, the LADWP Board voted to begin debarment proceedings against Gibson Dunn's client, PwC. However, the Board did not set a precise deadline for doing so during the June 21st meeting. Rather, the Board discussed the LADWP commencing such debarment proceedings within a "10 day" window following the June 21st vote and delegated the decision concerning the exact date on which the LADWP would begin debarment proceedings against PwC to LADWP General Manager Edwards.

101. Following the public filing of the First Amended Complaint by the LADWP against PwC on June 30, 2016, however, there was a great deal of news and heightened public outrage over the allegations concerning PwC having billed ratepayers for several wild parties that occurred in Las Vegas and a wide variety of other wrongful actions engaged in by PwC. In response to this public uproar, Board Vice President Funderburk determined that he wanted the LADWP Board to immediately commence debarment proceedings against PwC, rather than waiting for the ten days following the June 21st vote to expire.

102. Accordingly, at 5:25 pm on July 1, 2016, Funderburk emailed Brajevich and copied Commissioner Fleming, Edwards and Wright. Funderburk's email stated:

Joe:

*I hereby request that you act today to convene a Special Meeting of the Board of Commissioners of the LADWP on Tuesday or Wednesday next week.*

*I am requesting that this Special Meeting be convened to allow the Board to vote on whether to immediately commence the debarment process against PWC in light of the allegations made by the City and the LADWP in the Proposed First Amended Complaint that was filed with the Court yesterday.*

29

Thank you for your prompt attention to this matter.

(Ex. 41). (Emphasis added).

103. At 5:39 pm on July 1, 2016, -- just fourteen minutes after receiving Funderburk's email requesting that a Special Meeting be called -- LADWP General Manager Edwards defiantly responded to Funderburk and undeniably interfered with government administration when she flatly refused to act in accordance with Funderburk's legally valid request that a Special Meeting of the Board be called for the following week. Edwards' email to Funderburk, Commissioner Fleming, Brajevich and Wright stated in relevant part,

Bill,

***No. We are not prepared to do immediate disbarment [sic]. . . If you want to micromanage this company around me, please request the chair to hold a special meeting and incrementally direct me. I will not voluntarily follow this course of action. Remove me immediately if this is your chosen course.***

(Ex. 42). (Emphasis added).

104. Despite being well aware that Gibson Dunn attorney and LADWP Board President Levine was prohibited from having any involvement in the *PwC Action* by the City Ethics Code because the law firm that Levine worked for represented PwC in the *PwC Action*, General Manager Edwards ignored this prohibition and nevertheless emailed Levine to enlist Levine's help in "reigning in" Funderburk's effort to commence ***immediate*** debarment proceedings against PwC.

105. At 5:58 pm on July 1, 2016, Edwards emailed Levine *at Levine's Gibson Dunn email address*. The subject line of her email to Levine was simply, "Bill" and Edwards' email stated, ***"He has lost his mind. He wants to be GM? Good luck."*** (Ex. 43). (Emphasis added). At 6:03 pm, Levine replied to Edwards and asked, "How did this arise? . . ." *Id.* Edwards then replied, "I have no idea. He has lost his center." *Id.* Levine then inquired of Edwards, "How and to whom did he communicate this desire?" *Id.* To which Edwards then replied, ***"He [Funderburk] wants to 'win,' I get that. But he is overboard and I can't rein [sic] him in."*** *Id.* (Emphasis added).

30

106.    Just minutes after receiving Edwards' July 1, 2016 email, Levine knowingly and intentionally violated California's *Brown Act*, the California Rules of Professional Conduct and City's Ethics Code by issuing a very stern order to Commissioners Funderburk and Fleming that Levine emailed to both of them from his Gibson Dunn email address. Levine's email stated, "***Bill: PLEASE let our attorneys handle this matter. This is not a board matter***." (Ex. 44). (Emphasis added).

107.    Levine did not hide the fact, nor did he attempt to hide the fact, that he was intentionally interfering with the LADWP Board's June 21, 2016 Board vote to initiate debarment proceedings against PwC, nor did he hide the fact that he was doing so on behalf of his employer, Gibson Dunn and its client, PwC, in the *PwC Action*. Levine was very deliberate in his conduct and wanted Executive Management at the LADWP to know that Levine had personally ordered Commissioners Funderburk and Fleming to stand down in their effort to initiate immediate debarment proceedings against Gibson Dunn's client, PwC, so Levine also sent his email to LADWP General Counsel Brajevich, LADWP General Manager Edwards, and LADWP Chief Operating Officer Wright using Levine's Gibson Dunn email.

108.    Significantly, not only did Levine's email violate the California Rules of Professional Conduct and City's Ethics Code, Levine's email also violated California's *Brown Act*, which prohibits governmental bodies (such as the LADWP Board) from holding "meetings" (including "serial meetings") with a quorum of members, without formal notice to the public.

109.    By issuing his stand down order in an email, which was sent to a quorum of the Board (Funderburk, Fleming and Levine, himself), and which concerned official LADWP Board action (namely undoing the Board's June 21, 2016 vote to initiate debarment proceedings against PwC), Levine conducted a "meeting" without providing the required public notice and thereby violated California's *Brown Act*.

110.    Levine also cannot dispute that he had ***actual knowledge*** that his actions also violated the City's Ethics Code because Levine expressly had been informed that he was required to recuse himself from all LADWP matters involving PwC and the PwC Action by the Ethics Commission ***just nine (9) days earlier*** in the "***Final Recusal Review Report***," authored by Ethics

31

Commission Director Hardy on June 21, 2016.

111. The *"Final Recusal Review Report"* concerning Levine stated in relevant part:

**C.    Facts**

*President Levine is a retired partner and currently of counsel to the law firm of Gibson, Dunn & Crutcher LLP (Gibson Dunn). He receives income from his current position with the firm, as well as retirement income from his status as a former partner.* President Levine properly reported these sources of income on his SEIs. . . . Because President Levine's law firm may occasionally represent clients with interests adverse to the City, the City Attorney's office has stated that it would advise President Levine to recuse himself from all discussions and deliberations regarding matters directly involving or affecting current clients of his firm. Accordingly, President Levine recused himself from 24 such matters between February 17, 2015 and February 16, 2016.

*Fourteen of President Levine's 24 recusals during this period were due to the ongoing litigation between the City and Pricewaterhouse Coopers LLP (the Pricewaterhouse litigation) related to the botched rollout of a computer billing system, which resulted in a loss of millions of dollars. Pricewaterhouse Coopers LLP (Pricewaterhouse) is represented by Gibson Dunn in this matter and is adverse to the City.* The *Pricewaterhouse* litigation is currently scheduled for hearings through January 2017 and is unlikely to conclude before the end of the current calendar year.

*          *          *

**D.    Analysis**

    a.    <u>Continuing Nature of the Recusals</u>

*Based on discussions with the City Attorney's office, we anticipate that, absent a settlement, the Pricewaterhouse litigation . . . [is] likely to continue throughout President Levine's term. In addition, it is likely that President Levine will continue his employment relationship with Gibson Dunn. As a result, we believe that the conflict will continue for the duration of President Levine's term as a member of the Water and Power Commission.*

*          *          *

**E.    Recommendation**

*Based on an examination of the recusals received to date, we believe that President Levine's financial interests in Gibson Dunn present a continuing conflict of interests that will require recusals for at least the duration of the Pricewaterhouse litigation . . . .*

(Ex. 9 at 2-4). (Emphasis added).

112.    The fact that Levine knowingly and intentionally violated the *Brown Act*, the City's Ethics Code and the California Rules of Professional Responsibility was also ***actually known*** by Los Angeles City Attorney Mike Feuer himself, as well as Leela Kapur, Feuer's Chief of Staff and Chief Assistant City Attorney Thom Peters.  The irrefutable proof of this fact exists in the form of a July 1, 2016 email sent by Brajevich to Feuer, Kapur and Peters which forwards Levine's email of July 1, 2016 email of 6:05 pm to these three senior ranking members of the City Attorney's Office. (Ex. 45).

113.    The fact that Feuer, Kapur, Peters and Brajevich each had ***actual knowledge*** of Levine's violation of the *Brown Act*, the City's Ethics Code and the California Rules of Professional Responsibility and failed to take any action whatsoever to report this violation, or to halt Levine's improper intervention into the LADWP'S Board Vote of June 21st to initiate debarment proceedings, demonstrates that Feuer, Kapur, Peters and Brajevich deliberately concealed Levine's illegal and unethical conduct and, then, even more incredibly, acted as "intermediaries" for Levine and continued to conduct the illegal "serial meeting" that had been begun by Levine on July 1, 2016 until they successfully undid the LADWP's June 21st Board vote to initiate debarment proceedings against PwC.

114.    The falsity of Feuer's repeated claims that he and members of his office have always acted with "integrity" in the handling of the LADWP billing litigation has been demonstrated by a Plea Agreement filed in the United States District Court for the Central District of California on January 10, 2022 in a matter entitled *United States v. Thomas H. Peters*, 2:22-cr-00009-PA in (the "Peters' Plea Agreement").    In the Peters' Plea Agreement, Mr. Peters pled guilty to aiding and abetting extortion in violation of 18 U.S.C. §§ 1951(a), 2 (a) and admitted that "senior members of the City Attorney's Office" were made aware of the extortion scheme and "directed" Peters "to take care of the situation."  Unsaid in the Peters' Plea Agreement was the fact that there were only three more "senior members" of the City Attorney's Office than Peters – namely Feuer, Kapur and Clark.  These newly disclosed facts clearly demonstrate that Feuer, Kapur, Brajevich  and other members of the City Attorney's Office identified herein each lack the character and fitness required of attorneys that is necessary for them to continue to represent the

33

City of Los Angeles in *any* litigation matters – let alone the two bankruptcies involving Complainant. (Ex. 46) *See Los Angeles Times* article of July 16, 2021 entitled, *Under fire, Feuer defends his office's handling of DWP billing litigation*".

115.    The fact that these extremely serious violations were never uncovered or investigated by Special Master Robbins is likely explained by the fact that the City Attorney's Office worked closely with attorney Maribeth Annaguey and other Browne George Partners and Associates in producing emails and documents requested by Special Master Robbins.  These attorneys all had great personal incentive to deliberately withhold from Special Master Robbins emails and other documents that were responsive to Special Master Robbins' requests, but that could nevertheless potentially incriminate them.  In addition, it is likely that Gibson Dunn's email servers were never searched in order to obtain highly incriminating emails authored or received by Levine at his Gibson Dunn email address.  All of these facts demonstrate the validity of the LADWP Board's belief that the City Attorney's Office and Browne George are highly conflicted and therefore unfit and unable to continue to represent the LADWP.

>    **D.    Several High-Ranking Members Of The LADWP and City Attorney's Office Continue To Act In Furtherance Of Levine's and The City Attorney's Effort To Derail The PwC Debarment Proceedings**

116.    After Levine violated the *Brown Act*, California Rules of Professional Conduct and City Ethics Code by emailing Commissioners Funderburk and Fleming and personally ordering them to stand down in their effort to initiate immediate debarment proceedings against Gibson Dunn's client, PwC, several high-ranking members of the LADWP and City Attorney's Office continued to act in furtherance of the Levine's and the City Attorney's effort to derail the PwC debarment proceedings as Levine's "intermediaries."

117.    The first of these individuals to do so was LADWP General Manager Edwards.  At 6:23 pm on Friday night of July 1st, just eighteen minutes after Levine issued his order to Funderburk and Fleming to stand down on their effort to have the LADWP debar Gibson Dunn's client, PwC, Edwards sent a second email to Funderburk in response to Funderburk's "Request for Special Board Meeting to Discuss PWC Matter" and admonished Funderburk, "***Please.  Trust me***

34

1    *and stand down.*" (Ex. 47). (Emphasis added).

2         118.    At 7:48 pm on that same Friday night of July 1, 2016 ahead of the July 4th weekend,

3    Levine improperly conducted a "serial meeting" in violation of the *Brown Act* by directing

4    Edwards and Brajevich to speak with Feuer as Levine's "intermediaries" in order to get Feuer to

5    speak with Funderburk so that Feuer could reiterate Levine's order to stand down that Levine had

6    issued to Commissioners Funderburk and Fleming.   Levine's email to Edwards states, "*Can you*

7    *get Mike Feuer to talk with him? Actually, I will suggest that to Joe B.*" (Ex. 48). (Emphasis

8    added).

9         119.    One minute later at 7:49 pm, Levine continued to conduct the illegal "serial

10   meeting" when Levine emailed Brajevich and asked, "*Can you get Mike Feuer to rein [sic] Bill*

11   *in? Marcie feels she can't.*" (Ex. 49). (Emphasis added).   Brajevich responded immediately and

12   agreed to act as an "intermediary" for Levine and stated, "*I will ask Mike.*" *Id.* (Emphasis added).

13   Levine quickly thanked Brajevich for agreeing to improperly act as an "intermediary" who would

14   continue the illegal "serial meeting" and stated, "*THANKS! Bill is now over the top on whatever*

15   *he gets into.   I have no idea what has happened, but it is deeply troubling.   And he is driving*

16   *Marcie crazy . . . .*" *Id.* (Emphasis added).   At 8:15 pm that same night, Brajevich continued the

17   illegal "serial meeting" by responding to Levine and stated in relevant part, "*Just so [you] know,*

18   *as VP when the President is unable to act (as in this case) Bill as the VP can call the special*

19   *meeting. . . . .*" *Id.* (Emphasis added).   Levine then replied by email and further admonished

20   Brajevich to get Feuer to speak with Funderburk.   Levine's email of 8:16 pm was sent from

21   Levine's Gibson Dunn email and stated, "*Yikes.   I really think Mike should call him and try to*

22   *calm him down.   His judgment has disappeared.*" *Id.* (Emphasis added).

23        120.    At 8:05 pm on July 1, 2016, Brajevich continued to conduct the illegal "serial

24   meeting" that had been begun by Levine earlier that evening.   Brajevich did so in his role as

25   Levine's "intermediary" when Brajevich emailed Feuer as he had promised Levine he would do

26   and informed Feuer, "*Mike, Mel asked if I could ask you to rein [sic] Bill in, Marcie feels she*

27   *can't.   I told Mel I would pass along the message.   Let me know if you want to discuss.*"

28   Tellingly, the subject line of Brajevich's email to Feuer states, "*Request from Mel.*" (Ex. 50).

1    (Emphasis added).

2        121.    When Funderburk continued to press ahead with the LADWP Board's effort to

3    debar PwC and cited "*what is clearly a big difference of opinion by in house and outside counsel*

4    *on a key tactical issue in one of the biggest litigation's in the enterprise's history,*" Brajevich

5    quickly resorted to intimidating Funderburk.    At 8:48 pm on the night of July 1st, Brajevich

6    emailed Funderburk and told Funderburk, "*so that we are perfectly clear there is no difference of*

7    *opinion as there is only one City Attorney's Office and one City Attorney, Mike Feuer. . . . you*

8    *were given the pros and cons of proceeding with the debarment process and after that you were*

9    *advised of the City Attorney's position which was that it was a bad idea.    That is the City*

10   *Attorney's opinion.*" (Ex. 51). (Emphasis added).

11       122.    The fact that this "serial meeting" was commenced by the LADWP's purportedly

12   recused Board President and improperly continued by numerous "intermediaries," including

13   LADWP General Manager Edwards, LADWP General Counsel Brajevich and City Attorney Mike

14   Feuer himself on the Friday night before the July 4th holiday weekend is strong evidence of the full

15   court press that was illegally being applied to Funderburk and Fleming to undo the LADWP

16   Board's June 21, 2016 vote to initiate debarment proceedings against Gibson Dunn's client, PwC.

17                  **E.    Levine and the City Attorney's Office**
18                       **Succeeded In Their Effort To Undo The LADWP's**
                         **Board Vote To Initiate Debarment Proceedings Against PwC**
19
         123.    Less than 24 hours later, there was similarly strong evidence that the illegal

20   campaign by Levine, Feuer, Peters, Edwards and Brajevich to undo the LADWP Board vote to

21   initiate debarment proceedings against PwC was working.    At 4:49 pm on Saturday afternoon, July

22   2, 2016, Funderburk emailed Brajevich and Commissioner Fleming and stated in relevant part,

23
             *There was a dispute less than 48 hours ago about the timing on debarment,*
24           *issuing of any debarment notice and commencing of any debarment process. . . .*
             *Like you, I wasn't remotely expecting to deal with this or be put in the middle so I*
25           *hope you can bear with me. . . .    Mel's email, no matter how inadvertent or*
             *unintended, must be considered for even the appearance that it presents*
26           *regardless whether it is protected by privilege.    I could never deny under oath that*
             *I didn't see it if the privilege were waived or somehow the email trail made it to*
27           *the Gibson Dunn server . . . .*    This matter in my mind calls for cooler and calmer
28           minds and not hasty decisions especially where no need to rush may exist.

                                              36

*Fortunately, none of this deliberation has seen the light of day that we know of.*

\*     \*     \*

*My thinking has evolved now, and I would just like to get a few more questions answered before withdrawing the request for the Special Board meeting* and asking that the PwC matter be placed on the next Regular agenda closed session on July 19 subject to having an outside opinion by counsel expert in debarment of large companies and civil fraud prepared by July 19. Such an opinion would be for the protection of all concerned. I solicit Commissioner Fleming's input as well.

(Ex. 52). (Emphasis added).

124.  Funderburk's admission that, *"Mel's email, no matter how inadvertent or unintended, must be considered for even the appearance that it presents regardless whether it is protected by privilege. . . ."* makes clear that Levine's order to Commissioners Funderburk and Fleming to stand down on their effort to commence immediate debarment proceedings against PwC was wholly improper and had its intended effect on Commissioners Funderburk and Fleming. *Id.* (Emphasis added).

125.  Sensing that victory for Levine, Gibson Dunn and PwC was imminent and that Funderburk and Fleming would soon abandon the LADWP Board's effort to debar PwC despite the Board having voted to do so on June 21st, Brajevich forwarded Funderburk's lengthy Saturday afternoon email to both Feuer and Kapur. Tellingly, Brajevich stated in relevant part,

*I received this from Bill this afternoon. Separately I received a text from him say [sic] wants to back off his special meeting request. I think this email is his effort to back off and save some face. . . .* As to his question whether our office thinks having a special meeting is a bad idea, I intend to say that we do not have an opinion on that issue as calling one is his prerogative as VP. (*He is looking for us to say it's a bad idea so he can cover himself*).

(Ex. 53). (Emphasis added).

126.  Clearly pleased that Feuer and his City Attorney team had been successful in undoing the LADWP's Board vote to debar PwC, as Levine had ordered when he directed Funderburk and Fleming to stand down and *"let our attorneys handle this matter,"* Feuer sent Brajevich a reply email that was copied to Kapur at 5 pm on Saturday July 2d that stated, "*I agree with every element of your proposed approach. If things change please let me know. Really appreciate all your work on this, and I [sic] general.*" (Ex. 54). (Emphasis added).

37

127. On July 4, 2016 at 9:12 pm, Brajevich emailed Feuer, Kapur and Peters and informed them that their collective effort to undo the LADWP Board's June 21st vote to initiate debarment proceedings against PwC as Levine had ordered to help his employer, Gibson Dunn, and its client, PwC, was working. Brajevich's email to Feuer, Kapur and Peters states in relevant part,

> *I had a very, very long conversation with Bill on his special meeting and what he wanted to do.* It was hard to keep it focused. *He wants to back off without appearing like he has been sent to sit in the corner. During our conversation he mentioned some things that would help him stand down gracefully. [I] composed this email in response to his email which I would like to send him if it is ok with you.* He asked if I could send him something or call him tonight. I told him I would work on it (as *I would prefer to have this wrapped up before the board secretary starts calling members for availability tomorrow.* [sic]

(Ex. 55). (Emphasis added).

128. On July 5, 2016 at 3:41 pm, Brajevich finally declared complete victory when he emailed Feuer, Kapur and Peters and informed them,

> *FYI, Commissioner Funderburk withdrew his request for a special board meeting.* There are a couple of issues that we will need to address for the July 19, regular board meeting . . . but *in the meantime I want to let you know he withdrew the request.* Thanks again for your time over the 3 day holiday weekend. Joe

(Ex. 56). (Emphasis added).

129. Feuer was quick to congratulate Brajevich for all the work he did to execute on Levine's instruction that the LADWP Board abandon its effort to debar PwC as a contractor to the LADWP and emailed Brajevich and stated, "*Thanks again for all your great work, Joe.*" (Ex. 57). (Emphasis added).

130. Peter's congratulatory email to Brajevich, however, leaves no doubt that the "undoing" of the LADWP Board's June 21st vote to initiate debarment proceedings against PwC was the clear result of Levine's instruction to Commissioners Funderburk and Fleming to stand down. Peter's email states, "*I suppose that was expected given Mel's admonition . . . . Great work. Thanks.*" (Ex. 58). (Emphasis added).

38

**F.** **LADWP General Counsel Brajevich Intentionally**
**Falsified Official City Public Records To Prevent**
**Discovery of Brown Act Violation and Related**
**Misconduct By Levine, Feuer and Other Senior Ranking City Officials**

131.    The fact that the LADWP Board voted 4-0 in favor of instituting debarment proceedings against PwC during the closed session of the June 21, 2016 Board meeting was confirmed by Brajevich's June 21st email to Chief of Staff Kapur in which Brajevich stated in relevant part, "Leela, *We had the closed session discussion on PWC. One of the things the board authorized management to do is institute debarment proceedings against PWC at the appropriate time.*" (Ex. 27). (Emphasis added). The Board's vote is also confirmed by Funderburk's email of 6:26 pm on June 30, 2016 wherein Funderburk stated in relevant part, "*I believe our motion was to debar PWC.*" (Ex. 38). (Emphasis added).

132.    Email authored by LADWP Board Secretary Barbara Moschos on June 23, 2016, confirms that LADWP General Counsel Brajevich was the author of the LADWP Board minutes for the June 21, 2016 Closed Session, and, in particular, for Agenda Item A-11, the Board Agenda Item concerning the LADWP Board vote to initiate debarment proceedings against PwC. Board Secretary Moschos's email of June 23, 2016 make this fact clear and states, "*Hey Joe: Give me a call. I need wording for Item [31]A-11 from yesterday, the PWC one.* Thanks!" (Ex. 59). (Emphasis added).

133.    Despite Brajevich himself having authored an email on June 21st in which he confirmed that the LADWP Board voted to "institute debarment proceedings against PwC," Brajevich intentionally falsified the official LADWP Board minutes (an official public record of the City of Los Angeles) relating Agenda Item 31A-11 and intentionally caused those LADWP Board meeting minutes to falsely state, "*Discussion held – action taken but not a final action that is reportable.*" (Ex. 25 at 28). (Emphasis added).

134.    Brajevich knowingly and intentionally falsified the June 21, 2016, LADWP Board Meeting Minutes to conceal the wrongful course of conduct that Levine, Feuer, Kapur, Peters, Brajevich and Edwards engaged in to undo the official LADWP Board vote of June 21st to initiate debarment proceedings against PwC.

39

135.    Because falsification of City of Los Angeles public records is investigated by the Los Angeles City Controller's Office, Complainant is also filing a Complaint concerning Brajevich's falsification of the June 21, 2016, LADWP Board Meeting Minutes with the Los Angeles City Controller and requesting that the Controller's Office conduct an investigation into LADWP General Counsel Brajevich having knowingly and intentionally falsified official City of Los Angeles public records.

## CONCLUSION

136.    On the basis of the foregoing, Complainant respectfully requests that the Ethics Commission conduct an investigation into the conduct alleged herein to determine whether the conduct detailed herein, did, in fact, violate, among other things, the Los Angeles City Ethics Code and whether such conduct renders the Los Angeles City Attorney's Office and/or the Browne George law firm incapable of continuing to represent the City of Los Angeles in numerous matters, including, but not limited to, two bankruptcy matters pending in the United States Bankruptcy Court for the District of Arizona involving Complainant.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 18, 2022          By:    _____

                                        Paul O. Paradis
                                        *Complainant*

40

# EXHIBIT 1

┌─────────────┐
│  E-SERVICE  │
│  63546593   │
│  Jul 15 2019│
│  10:59AM    │
│File & ServeXpress│
└─────────────┘

1  Sandra R. Brown State Bar No. 157446
   Robert S. Horwitz, State Bar No. 119162
2  Hochman Salkin Toscher Perez, P.C.
   9150 Wilshire Boulevard, Suite 300
3  Beverly Hills, California 90212-3414
   Telephone:    (310) 281-3247
4  Facsimile:    (310) 859-5129
   E-mail:       EdR@taxlitigator.com
5
   Attorneys for Court Appointed Special Master
6  Edward M. Robbins, Jr.

7

8

9                 SUPERIOR COURT OF THE STATE OF CALIFORNIA
           FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT
10                         UNLIMITED JURISDICTION

11  ANTWON JONES,                        Case No.: BC577267
                                         Case No.: BC574690
12                    Plaintiff,         Case No.: BC594049

13       v.                              NOTICE OF ENTRY OF ORDER RE:
                                         APPOINTMENT OF SPECIAL MASTER
14  CITY OF LOS ANGELES,

15                    Defendant.         Dept: SSC6

16  CITY OF LOS ANGELES,

17                    Plaintiff,

18       v.

19  PRICEWATERHOUSE COOPERS, LLP,

20                    Defendant.

21  MACIAS, et al.,

22                    Plaintiffs,

23       v.

24  LOS ANGELES DEPARTMENT OF WATER
    AND POWER,
25
                      Defendant.
26

27

28

           NOTICE OF ENTRY OF ORDER RE: APPOINTMENT OF SPECIAL MASTER
                                      1

*(vertical sidebar text)* HOCHMAN SALKIN TOSCHER PEREZ P.C.

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 17, 2019, the Court entered and filed the following order in the above-captioned case:

1. Order Re: Appointment of Special Master

A true and correct copy of the order is attached hereto as Exhibit 1.

DATED: July 15, 2019

> HOCHMAN SALKIN TOSCHER PEREZ, P.C.
> SANDRA R. BROWN
> ROBERT S. HORWITZ
>
> By: ___/s/ Robert S. Horwitz_____
>     Robert S. Horwitz
>     Attorneys for Special Master
>     EDWARD M. ROBBINS, JR.

Exhibit 1

Edward M. Robbins, Jr., Esq., State Bar No. 82696
Hochman Salkin Toscher Perez, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212-3414
Telephone:     (310) 281-3247
Facsimile:     (310) 859-5129
E-mail:        EdR@taxlitigator.com

Attorney for Defendant
Department of Water and Power

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 1 7 2019

Sherri R. Carter, Executive Officer/Clerk
By: Pedro Martinez, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT
UNLIMITED JURISDICTION

ANTWON JONES,

                              Plaintiff,

          v.

CITY OF LOS ANGELES,

                              Defendant.

---

CITY OF LOS ANGELES,

                              Plaintiff,

          v.

PRICEWATERHOUSE COOPERS, LLP,

                              Defendant.

---

MACIAS, et al.,

                              Plaintiffs,

          v.

LOS ANGELES DEPARTMENT OF WATER
AND POWER,

                              Defendant.

Case No.: BC577267
Case No.: BC574690
Case No.: BC594049

[PROPOSED] ORDER RE:
APPOINTMENT OF SPECIAL MASTER

Dept: SSC6

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

1

1    After consideration of the submissions and arguments of the parties and under the Court's

2    June 3, 2019 findings that a Special Master is appropriate and shall be appointed to assist the

3    Court in determining the full extent of any violations surrounding the case and action of *Jones v.*

4    *City of Los Angeles* and the related cases: *Kimhi v. City of Los Angeles* (Case No. BC536272);

5    *Bransford v City of Los Angeles* (Case No. BC565618); *Morski v. Dept. of Water & Power* (Case

6    No. BC568722); *Fontaine v. City of Los Angeles Department of Water and Power* (Case No.

7    BC571664); *City of Los Angeles v. PwC* (Case No. BC574690); *Antwan Jones v. City of Los*

8    *Angeles* (Case No. BC577267), and *Macias v. Dept. of Water & Power* (Case No. BC594049),

9    collectively "*Related Cases*", the Court ORDERS:

10    The Court appoints Edward M. Robbins, Jr., a principal of the law firm of Hochman

11   Salkin Toscher Perez P.C., to serve as Special Master to assist the Court in the matter of the

12   *Related Cases*. The parties in the *Related Cases* shall add the Special Master to their service

13   lists.

14    As further ordered, the Special Master shall possess the full authority as set forth herein

15   to perform the duties and responsibilities in this order.

16   I.    **DUTIES OF THE SPECIAL MASTER**

17   A. <u>INVESTIGATE AND AUDIT FINANCIAL MATTERS</u>

18    The Special Master shall investigate and audit all financial matters relating to payments

19   by the City of Los Angeles in connection with the settlement of the *Jones v. City of Los Angeles*

20   action ("Settlement Agreement"), the remediation of the DWP billing system ("Remediation"),

21   all payments to special counsel Paul Kiesel, all payments to special counsel Paul Paradis, all

22   payments to every entity in which Paul Paradis or Jack Landskroner have an interest, all other

23   payments made in connection with the *Related Cases*, including all payments made to Aventador

24   Utility Solutions and/or Ardent Cyber Solutions and Bender Consultant.

25    The Special Master shall conduct a complete financial audit about any financial

26   arrangements, fee sharing agreements, referral fees, payments or disbursements regarding the

27   *Related Cases* and any related litigation. Such financial audit shall include, but not be limited to,

28

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

2

HOCHMAN SALKIN TOSCHER PEREZ P.C.

accountings of Mr. Landskroner, Michael Libman, Mr. Paradis, Gina Tufaro, Mr. Kiesel, any attorneys retained by the City of Los Angeles, any attorneys retained by the Los Angeles Department of Water and Power and any entities in which any of the foregoing individuals have an interest.

The Special Master's financial audit shall identify each payment made and the basis for the justification for the payment and the disposition of funds paid to Mr. Landskroner and Mr. Libman, including tracing the funds they received to the ultimate payee.

The Special Master's audit will include the disposition of funds paid to any entity receiving money from the City of Los Angeles in connection with the *Related Cases*, settlement, mediation or remediation, including the remediation consultants.

Among other things, the Special Master's financial audit shall include:

1. Details of all amounts paid by the City of Los Angeles regarding the Settlement Agreement for attorney's fees, costs, remediation or any other expenses, including payments to any attorney representing Antwon Jones, not only Mr. Landskroner and Mr. Libman and their law firms, but also other attorneys alleged to represent Mr. Jones, such as Mr. Paradis, Ms. Tufaro, and Mr. Kiesel and their law firms.

2. For all payments greater than $1,000 identified in paragraph 1, above, subsequent disbursements or transfers made by recipients of these payments to another (the "transferee"). Subsequent disbursements or transfers made by the transferee to an additional transferee.

3. All billings and invoices submitted for payment in the *Related Cases* and all claims made by for services in connection with the *Related Cases* other than claims made by ratepayers.

4. All payments made by Mr. Landskroner or his law firm to Aventador Utilities Solutions and any successor entity.

5. All payments associated with the remediation of the DWP billing system.

6. All time records, bills and invoices for work performed that were submitted by Mr.

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

3

HOCHMAN SALKIN TOSCHER PEREZ P.C.

Landskroner and Mr. Libman and their law firms to the City of Los Angeles for payment.

7. All time records, bills and invoices of Mr. Landskroner and Mr. Libman and their law firms for work performed by them in connection with *Jones v. City of Los Angeles.*

8. All time records, bills and invoices for the mediation work in connection with the *Related Cases.*

9. All time records, bills and invoices for work performed by Bender Consultant.

10. All contracts entered into by the City of Los Angeles in connection with the Settlement Agreement, which shall cover all payments made in connection with *Jones v. City of Los Angeles.*

B. <u>INVESTIGATE AND AUDIT RELATIONSHIPS</u>

The Special Master must determine the existence of relationships that preexisted the filing of the *Related Cases* as between and among counsel representing the City of Los Angeles and counsel of record in *Related Cases,* including any individual relationships that pre-existed their work for the City of Los Angeles, such as Thomas Peters who was a partner of Paul Kiesel's before joining the City of Los Angeles; and determine the extent and conditions under which those preexisting relationships led to the naming of counsel in the *Jones v. City of Los Angeles;* including relationships between:

1. The City of Los Angeles and Paul Paradis and his law firm

2. The City of Los Angeles and Paul Kiesel and his law firm

3. The City of Los Angeles and Antwon Jones

4. Antwon Jones and Paul Paradis and his law firm

5. Antwon Jones and Paul Kiesel and his law firm

6. The City of Los Angles and Jack Landskroner and his law firm

7. Antwon Jones and Jack Lansdkroner and his law firm

8. The City of Los Angeles and Michael Libman and his law firm

9. Antwon Jones and Michael Libman and his law firm

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

4

10. Michael Libman and his law firm and Paul Kiesel and his law firm

11. Michael Libman and his law firm and Jack Landskroner and his law firm

12. Paul Paradis and his law firm and Jack Landskroner and his law firm

The Special Master's audit shall also include any arrangements, including any consideration paid, between and among the City of Los Angeles, Counsel for the City of Los Angeles and any other counsel in connection with the *Related Cases*, whether those arrangements have been disclosed or not disclosed.

## C. GENESIS OF THE RELATED CASES

The Special Master must investigate the facts and circumstances surrounding the representation of Mr. Jones, the ethical duties owed to Mr. Jones and by whom, the knowledge or lack of knowledge by the City of Los Angeles regarding Mr. Jones's representation by counsel.

The Special Master must determine how Mr. Landskroner and Mr. Libman became counsel for Mr. Jones in the class action cases.

The Special Master must determine the facts and circumstances surrounding the preparation of the *Jones v. Pricewaterhouse* draft complaint and any version or other drafts of such complaint.

The Special Master must determine the facts about knowledge and/or participation by the City of Los Angeles or anyone representing the City of Los Angeles regarding:

(a) the genesis of the *Jones v. City of Los Angeles* litigation,

(b) the genesis of the settlement demand in *Jones v. City of Los Angeles* contained in the letter of April 2, 2015,

(c) the circumstances surrounding the settlement of *Jones v. City of Los Angeles* litigation,

(d) the participation in the settlement of the class action, and

(e) the participation in the mediation of the *Jones v. City of Los Angeles* case.

The Special Master must ascertain the facts and circumstances regarding the terms contained in the proposed settlement agreement in the *Jones v. City of Los Angeles* case and must

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

5

HOCHMAN SALKIN TOSCHER PEREZ P.C.

1  determine what terms were negotiated as to (i) be included in the settlement agreement and (ii)

2  not to be included in the settlement agreement by the participants in the negotiations, specifically

3  as to the various attorneys and who they represented.

4      The Special Master shall have the responsibility and duties to determine whether written

5  submissions or oral presentations made by counsel in the *Related Cases* to support the settlement

6  complied with ethical duties and responsibilities, specifically, whether there was any unethical

7  conduct.

8      The Special Master shall investigate whether there was collusion in connection with the

9  litigation in the *Related Cases* and whether there were misrepresentations to the Court regarding

10 the litigation. The Special Master will have the responsibility of investigating whether there was

11 any collusion by any party or counsel in a cover up of conduct related to the litigation, whether

12 there was a fraud on the court by any party or counsel in connection with a cover up related to

13 the litigation, whether fraud was committed on any party or any counsel for any party in the

14 related actions during an alleged cover up or collusion or conduct that occurred in the *Jones v.*

15 *City of Los Angeles* case.

16     The Special Master shall investigate and determine if there were misrepresentations and

17 if so, what were the misrepresentations, when they were made, who made those

18 misrepresentations and what were the actual facts known by the parties making those

19 misrepresentations.

20     The Special Master may, upon application to and approval of the Court, expand his area

21 of inquiry of discoverable information and documents to determine whether fraud on the Court

22 occurred.

23     The Special Master will make findings about any impropriety, fraud, collusion, unethical

24 conduct, violations of the rules of professional conduct or any fraud upon the Court as part of the

25 class action and all related cases.

26     D.  <u>PRIVILEGE ISSUES</u>

27     The Special Master may seek information for matters which a party contends is

28

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

6

HOCHMAN SALKIN TOSCHER PEREZ P.C.

privileged. However, the Special Master does not have power to make a final decision as to any privilege.

The parties may enter into arrangements regarding the disclosure of privileged information to the Special Master conditioned on the information being kept confidential. Such disclosure will not constitute a waiver.

When the Special Master is given access to claimed privileged information, the information claimed to be privileged shall be identified on a privilege log. The Special Master could then make an independent determination on whether or not privilege should apply or could apply to that item. Once privileged information is inquired into and once the privilege log is prepared, the issue may be presented to the Court for a final determination of the privilege issue if there is a disagreement.

## E. RESPONSIBILITIES WITH RESPECT TO THE CLASS ACTION SETTLEMENT AGREEMENT

The Special Master does not have the responsibility and shall make no determinations on whether the terms of the Settlement Agreement in the class action are fair, reasonable and adequate and shall not impede class counsel's ability to investigate whether the terms of the operative Settlement Agreement are fair, reasonable and adequate. This investigation of the Settlement Agreement is the responsibility of the Class Counsel to investigate and advise the Court.

The Special Master will coordinate and work with the newly appointed Class Counsel if the Special Master's investigation crosses over into new Class Counsel's responsibility to investigate the operative Settlement Agreement.

The Court orders the cooperation of all parties and attorneys with the Special Master's investigation, including cooperation by the City Attorney's office. the Los Angeles Department of Water and Power, counsel for the City of Los Angeles, Antwon Jones, John Landskroner and Landskroner Grieco Merriman, LLC, Michael Libman and Law Offices of Michael Libman APC, Paul Paradis and Paradis Law Group, PLLC, Gina Tufaro and her law firm. Paul Kiesel

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

7

and Kiesel Law, LLP, counsel for Pricewaterhouse, the new Class Counsel, and all individuals, including individuals who may not currently be working for the City of Los Angeles or the Los Angeles Department of Water and Power but previously had employment or an engagement with the City of Los Angeles or the Department of Water and Power and also includes any attorneys representing any of those individuals or entities.

F.     OVERSIGHT BY THE COURT

Upon consultation and application to the Court, the Court may order the Special Master to expand the inquiry beyond the objectives in this Order, as may be necessary or appropriate. The Special Master shall perform additional duties regarding this case as the Court may direct.

The Special Master's term of service will conclude when the Court is satisfied that all parties and counsel have fully complied with all court orders and the Special Master's services are no longer needed.

The Special Master will be accountable only to the Court and will not be supervised by any party or any counsel in the class action case or any of the related cases.

The Special Master will be independent from all plaintiffs, all defendants and all counsel. In his work, the Special Master and any lawyers or consultants hired by the Special Master, may consult with any party or their counsel. Counsel is permitted, but not required, to be present for meetings with any party they represent.

G. SPECIAL MASTER'S AUTHORITY, POWERS AND RESPONSIBILITIES

The Special Master has the authority, power and responsibility to:

1.     Communicate, *ex parte*, with parties and the attorneys to facilitate and schedule matters, to make informal suggestions to the parties to facilitate compliance with Orders of the Court; to obtain background information, documents, copies of transcripts of depositions and hearings, court filings, and as necessary to permit the full and efficient performance of the Special Master's duties.

2.     Issue subpoenas for the production of documents or taking of testimony on the record and to take depositions.

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

8

3.      Inspect and copy files, documents, communications, and electronic data of any party or counsel for any party as necessary to complete the objectives of the inquiry.

4.      Maintain orderly files comprising all documents submitted to the Special Master by the parties and of any of his written orders, findings, and/or recommendations. The files of the Special Master will be confidential in this and any other proceeding subject to further Court Order on that issue.

5.      Negotiate and enter protective orders as needed to preserve privileged and confidential information.

6.      Retain the services of experts, consultants, or advisors for specialized tasks, such as accounting, data processing or computer analysis.

7.      Obtain the services of lawyers and legal support staff within the law firm of Hochman Salkin Toscher Perez P.C. to assist him in performing his tasks as Special Master in this proceeding.

## II.      FEES AND EXPENSES

The Special Master, and the experts, consultants, advisors, lawyers and legal support staff whose services he has retained to assist him in performing his duties and responsibilities in this proceeding as noted above, will be entitled to compensation at their usual customary rate and shall be entitled to reimbursement for reasonable expenses. These fees and costs shall be borne by the City of Los Angeles.

The Special Master shall submit periodic itemized statements of fees and expenses to the Court no later than every 90 days.

## III.      REPORTS AND RECOMMENDATIONS

The Special Master shall proceed with all reasonable diligence and keep the Court apprised of progress and anticipated timeline towards completion of the duties and responsibilities of the appointment. The Court orders the Special Master to file with the Court an initial interim report within 90 days and periodic reports thereafter until the assignment is

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER
9

HOCHMAN SALKIN TOSCHER PEREZ P.C.

1   completed.

2       Any party may object to any order or report of the Special Master by filing the objection

3   with the Court within seven days of the issuance of the order or report.   Any response to such

4   objection must be filed within seven days of the objection.   Thereafter, the Court will determine

5   whether any parties' objection is appropriate to cause review of the Special Master's report or

6   make a de novo determination that further investigation is necessary and determine whether the

7   objection shall be sustained or denied.

8       Upon conclusion of the Special Master's investigation and assignment, the Special

9   Master shall make recommendations to the Court about the class action litigation and conduct of

10  counsel. This final report which contains the findings and recommendations of the Special

11  Master shall, upon notice of such filing, be filed under seal and *in camera*. The Court shall at its

12  discretion provide to the parties any findings and recommendations of the Special Master.

13      The Court will maintain the confidentiality of any protected material unless prior notice

14  and opportunity to object has been provided to the affected party.

15  IT IS SO ORDERED.

16  Dated:  6/17/19                    ELIHU M. BERLE

17                                     HON. ELIHU M. BERLE

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER
10

## PROOF OF SERVICE

*Antwon Jones v City of Los Angeles, et al.*
LASC, Central Judicial District, Complex - Case No. **BC577267**
[Related to Case Nos. BC536272, BC565618, BC568722, BC571664, BC594049, BC574690]

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 9150 Wilshire Boulevard, Suite 300, Beverly Hills, California 90212.

On June 10, 2019, I served the foregoing document described as [PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER on the interested parties in this action as follows:

### SEE THE ATTACHED SERVICE LIST

___X___ **(BY ELECTRONIC MAIL)** I electronically served the document(s) described above, via FileAndServeXpress, on the recipients designed on the Transaction Receipt located on the FileAndServeXpress website (https://secure.fileandserveexpress.com) pursuant to the Court Order establishing the case website and authorizing service of documents.

___X___ **(BY U.S. MAIL)** I caused such envelope(s) to be addressed as indicated above and deposited in the United States mail at Beverly Hills, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

Nasir Khan
7288 Woodrow Wilson Drive
Hollywood, CA 90068
Email: nasirkhanali@gmail.com

Defendant and Cross-Defendant *Pro Se*
(Case No. BC574690)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 10, 2019, at Beverly Hills, California.

___/s/ Jessica Crenshaw___
Jessica Crenshaw

1

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

HOCHMAN SALKIN TOSCHER PEREZ P.C.

## SERVICE LIST

*Antwon Jones v City of Los Angeles, et al.*
LASC, Central Judicial District, Complex - Case No. BC577267
[Related to Case Nos. BC536272, BC565618, BC568722, BC571664, BC594049, BC574690]

| | |
|---|---|
| Jeffrey B. Isaacs<br>Paige Shen<br>Isaacs Friedberg LLP<br>555 S. Flower Street, Suite 4250<br>Los Angeles, CA 90071<br>Tel:    (213) 929-5550<br>Fax:    (213) 955-5794<br>Email: jisaacs@ifcounsel.com<br>    pshen@ifcounsel.com | Attorneys for Plaintiff:<br>Antwon Jones (Case No. BC577267) |
| Brian S. Kabateck<br>Anastasia K. Mazzella<br>Brian Hong<br>Kabateck LLP<br>633 West Fifth Street, Suite 3200<br>Los Angeles, CA 90071<br>Tel: (213) 217-5000<br>Fax: (213) 217-5010<br>Email: bsk@kbklawyers.com<br>    am@kbklawyers.com<br>    bvh@kbklawyers.com | Attorneys for Class<br>(Case No. BC 577267) |
| Michael N. Feuer<br>Joseph A. Brajevich<br>Eskel H. Solomon<br>Los Angeles City Attorney's Office<br>221 N. Figueroa Street, Suite 1000<br>Los Angeles, CA 90012<br>Tel: (213) 367-4580<br>Fax:<br>Email: mike.feuer@lacity.org<br>    joseph.brajevich@ladwp.com<br>    eskel.solomon@ladwp.com | Attorneys for Defendant<br>City of Los Angeles (Case No. BC577267)<br><br>Attorneys for Defendant<br>City of Los Angeles (Case No. BC536272)<br><br>Attorneys for Defendant<br>City of Los Angeles (Case No. BC571664)<br><br>Attorneys for Defendant<br>Los Angeles Department of Water and Power<br>(Case No. BC568722)<br><br>Attorneys for Defendant<br>Los Angeles Department of Water and Power<br>(Case No. BC594049) |

2

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

| | | |
|---|---|---|
| 1 | Eric George | Attorneys for Defendant |
| | Maribeth Annaguey | City of Los Angeles (Case No. BC577267) |
| 2 | Brown George Ross LLP | |
| | 2121 Avenue of the Stars, Suite 2800 | Attorneys for Defendant |
| 3 | Los Angeles, CA 90027 | City of Los Angeles (Case No. BC536272) |
| | Tel: (310) 274-7100 | |
| 4 | Fax: (310) 275-5697 | Attorneys for Defendant |
| | | City of Los Angeles (Case No. BC571664) |
| 5 | | |
| | | Attorneys for Defendant |
| 6 | | Los Angeles Department of Water and Power |
| | | (Case No. BC568722) |
| 7 | | |
| | | Attorneys for Defendant |
| 8 | | Los Angeles Department of Water and Power |
| | | (Case No. BC594049) |
| 9 | | |
| 10 | Daniel J. Thomasch (Pro Hac Vice) | Attorneys for Defendant and |
| | Lauren J. Elliot (Pro Hac Vice) | Cross-Complainant: |
| 11 | Gibson, Dunn & Crutcher LLP | PricewaterhouseCoopers LLP; and |
| | 200 Park Avenue | Defendant; James M. Curtin |
| 12 | New York, NY 10166 | (Case No. BC574690) |
| | Tel: (212) 351-4000 | |
| 13 | Fax: (212) 351-4035 | |
| | Email: ddthomasch@gibsondunn.com | |
| 14 | lelliot@gibsondunn.com | |
| 15 | | |
| 16 | Maurice Suh | Attorneys for Defendant and |
| | James Santiago | Cross-Complainant: |
| 17 | Casey McCracken | PricewaterhouseCoopers LLP; and |
| | Gibson, Dunn & Crutcher LLP | Defendant; James M. Curtin |
| 18 | 333 S. Grand Avenue | (Case No. BC574690) |
| | Los Angeles, CA 90071 | |
| 19 | Tel: (213) 229-7000 | |
| | Fax: (213) 299-7520 | |
| 20 | Email: msuh@gibsondunn.com | |
| | jsantiago@gibsondunn.com | |
| 21 | cmccracken@gibsondunn.com | |
| 22 | Margaret L. Carter | Attorneys for Defendant: |
| | J. Jorge Deneve | Treavor LaRoque |
| 23 | O'Melveny & Myers LLP | (Case No. BC 574690) |
| | 400 S. Hope Street, 18th Floor | |
| 24 | Los Angeles, CA 90071 | |
| | Tel: (213) 430-6000 | |
| 25 | Fax: (213) 430-6407 | |
| | Email: mcarter@omm.com | |
| 26 | jdeneve@omm.com | |
| 27 | | |
| 28 | | |

HOCHMAN SALKIN TOSCHER PEREZ P.C.

3

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

| | | |
|---|---|---|
| 1 | Charles R. Jaeger<br>David Goldstein | Attorneys for Defendants:<br>Paul Butler and David Garcia |
| 2 | Farmer Brownstein Jaeger LLP<br>235 Montgomery St., Suite 835 | (Case No. BC574690) |
| 3 | San Francisco, CA 94104<br>Tel:   (415) 962-2879 | |
| 4 | Fax:   (415) 520-5678<br>Email: cjaeger@fbi-law.com | |
| 5 | dgoldstein@fbi-law.com | |
| 6 | Jeffrey L. Steinfeld<br>Scheper, Kim & Harris LLP | Attorneys for Non-Parties:<br>Paul O. Paradis; Paradis Law Group, LLC; |
| 7 | 601 W. Fifth Street, 12th Floor<br>Los Angeles, CA 90071 | and Aventador Utility Solutions, LLC<br>(Case No. BC574690) |
| 8 | Tel:   (213) 613-4655<br>Fax:   (213) 613-4556 | |
| 9 | Email: jsteinfeld@scheperkim.com | |
| 10 | Grant B. Gelberg<br>Huang Ybarra Gelberg & May LLP | Attorneys for Non-Party:<br>Gina Tufaro |
| 11 | 550 S. Hope Street, Suite 1850<br>Los Angeles, CA 90072 | (Case No. BC574690) |
| 12 | Tel:   (213) 884-4900<br>Fax:   (213) 884-4910 | |
| 13 | Email: Grant.Gelberg@hygmlaw.com | |
| 14 | Alan Himmelfarb<br>Law Offices of Alan Himmelfarb | Attorneys for Plaintiffs:<br>Debra Macias, et al., |
| 15 | 80 W. Sierra Madre Blvd., Suite 304<br>Sierra Madre, CA 91024 | (Case No. BC594049) |
| 16 | Tel:   (626) 325-3104<br>Fax:   (626) 325-3104 | Attorneys for Plaintiff:<br>Daniel Morski |
| 17 | Email: consumerlaw1@earthlink.net | (Case No. BC568722) |
| 18 | David C. Parisi<br>Suzanne Havens Beckman | Attorneys for Plaintiffs: Debra Macias, et al.<br>(Case No. BC594049) |
| 19 | Parisi & Havens LLP<br>212 Marine St., Suite 100 | |
| 20 | Santa Monica, CA 90405<br>Tel: (818) 990-1299 | Attorneys for Plaintiff: Daniel Morski<br>(Case No. BC568722) |
| 21 | Fax: (818) 501-7852<br>Email: dcparisi@parisihavens.com | |
| 22 | | |
| 23 | Sheri Manning<br>Gary Luckenbacher | Attorneys for Plaintiffs: Debra Macias, et al.<br>(Case No. BC594049) |
| 24 | Manning, Manning & Luckenbacher<br>20750 Ventura Blvd., Suite 203 | Attorneys for Plaintiff: Daniel Morski |
| 25 | Woodland Hills, CA 913 64<br>Tel: (818)883-8000 | (Case No. BC568722) |
| 26 | Fax: (818)883-8077<br>Email: smanningesq@aol.com | |
| 27 | | |
| 28 | | |

HOCHMAN SALKIN TOSCHER PEREZ P.C.

4

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

Timothy G. Blood
Leslie E. Hurst
Jennifer L. MacPherson
Blood Hurst & O'Reardon LLP
501 W. Broadway, Suite 1490
San Diego, CA 92101
Tel:    (619) 338-1100
Fax:    (619) 338-1101
Email: tblood@bholaw.com
        lhurst@bholaw.com
        jmacpherson@bholaw.com

Attorneys for Plaintiffs:
Sharon Bransfsord; Steven Shrager and
Rachel Tash
(Case No. BC565618)

Lee Jackson
Gillian L. Wade
Marc A. Castaneda
Milstein Jackson Fairchild & Wade LLP
10250 Constellation Blvd., 14th Floor
Los Angeles, CA 90067
Tel:    (310) 396-9600
Fax:    (310) 396-9635
Email: ljackson@majfw.com
        gwade@majfw.com
        mcastaneda@majfw.com

Attorneys for Plaintiffs:
Sharon Bransfsord; Steven Shrager and
Rachel Tash
(Case No. BC565618)

Andre E. Jardini
K.L. Myles
Knapp, Petersen & Clarke
550 North Brand Blvd., Suite 1500
Glendale, CA 91203-1922
Tel:    (818) 547-1922
Fax:    (818) 547-5329
Email: aej@kpclegal.com
        klm@kpclegal.com

Attorneys for Plaintiffs:
Yaar Kimhi; Tahl Beckerman Megerdichian;
and Yelena Novak (Case No. BC536272)

David E. Bower
Bower Law Group PC
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel:    (213) 446-6652
Cell:   (310) 2:10-0605
Email: DBower@BowerLawGroup.com

Attorneys for Plaintiff:
Hayley Fontaine
(Case No. BC571664)

Mark T. Drooks
Nithin Kumar
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks Lincenberg & Rhow, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
Tel: (310) 201-2100
Fax: (310) 201-2110
Email: mdrooks@birdmarella.com
        nkumar@birdmarella.com

Attorneys for Non-Party:
Jack Landskroner
(Case No. BC577267)

HOFFMAN SALKIN TOSCHER PEREZ, P.C.

5

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

Edward M. Robbins, Jr.
Hochman Salkin Toscher Perez, P.C.
9150 Wilshire Blvd. Suite 300
Beverly Hills, CA 90212
Tel:    (310) 281-3247
Fax:   (310) 859-5129
Email: EdR@taxlitigator.com

Court Appointed Special Master
(Case No. BCF577267) and Related Cases:
BC536272
BC565618
BC568722
BC571664
BC594049
BC574690

6679000_1

6

[PROPOSED] ORDER RE: APPOINTMENT OF SPECIAL MASTER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

STATE OF CALIFORNIA        )

COUNTY OF LOS ANGELES )

    I am employed in the County of Los Angeles, State of California, am over the age of eighteen years, and not a party to the within action.  My business address is 9150 Wilshire Blvd., Suite 300, Beverly Hills, California 90212.   On July 15, 2019, I served the document(s) described as:

## NOTICE OF ENTRY OF ORDER RE: APPOINTMENT OF SPECIAL MASTER

on the interested parties in this action by causing true and accurate copies of such document(s) to be transmitted via **fineandservexpress.com**, in accordance with the Court's Order Authorizing Electronic Service governing Case No. BC594049 requiring all documents to be served upon interested parties via the File&ServeXpress Service system.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on July 15, 2019 at Beverly Hills, California

                        /s/ Jessica Crenshaw
                         Jessica Crenshaw

6683705_1

NOTICE OF ENTRY OF ORDER RE: APPOINTMENT OF SPECIAL MASTER

3

# EXHIBIT 2

# Report on The Investigation Into Any Violations Surrounding The Case and Action of Jones v. City of Los Angeles and Related Cases

Volume I of III

Special Master Edward M. Robbins, Jr.

*Submitted Pursuant to the Order of the Honorable Elihu Berle*

*Judge of the Superior Court of California, County of Los Angeles*

Los Angeles, California

April 2021

*See* https://www.scribd.com/document/515640293/Special-Master-Report-DWP-cases (for a complete copy of the Special Master's Report)

# EXHIBIT 3



**BOARD OF WATER AND POWER COMMISSIONERS**
DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS ANGELES
Room 1555-H, 111 North Hope Street, Los Angeles, CA 90012

# SPECIAL MEETING AGENDA
# Monday, December 13, 2021, at 9:30 a.m.

## <u>Board of Water and Power Commissioners</u>
President Cynthia McClain-Hill
Vice President Susana Reyes
Commissioner Jill Banks Barad-Hopkins
Commissioner Mia Lehrer
Commissioner Nicole Neeman Brady

---

### <u>SPECIAL NOTICE</u>
In conformity with California Assembly Bill AB361, signed into law by Governor Newsom on September 16, 2021, and due to public health concerns and directives issued by the Mayor of Los Angeles and Los Angeles County Public Health Department regarding reducing the spread of COVID-19, this meeting of the Board of Water and Power Commissioners for the City of Los Angeles (LADWP Board Meetings) will be conducted with some or all Commissioners appearing virtually from remote locations. All public comment will be taken telephonically or by written submission. This will apply to all LADWP Board Meetings taking place during the period in which state or local public health officials have imposed or recommended social distancing measures.

Members of the public who wish to listen to the LADWP Board Meetings live can do so by calling the following telephone number at any time during the meeting: (213) 306-3065 and entering code 24589476#.

Members of the public may also view the meeting live on-line by going to:
http://ladwp.granicus.com/ViewPublisher.php?view_id=2&_afrLoop=359337251116000

Requests for reasonable modification or accommodation from individuals with disabilities, consistent with the Americans with Disabilities Act, can be requested in advance by contacting the Commission Office at (213) 367-1356 during business hours. For Telecommunications Relay Service for the hearing impaired, please visit the site below for details of the services available:
https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs

### <u>OPPORTUNITIES FOR THE PUBLIC TO ADDRESS THE BOARD</u>
Before reaching those portions of the agenda where Board action is requested, members of the public will be given an opportunity to address the Board on items of interest within the subject matter jurisdiction of the Board (general public comment). Thereafter, members of the public will be given an opportunity to address the Board on any item on the regular agenda prior to or during the Board's consideration of that item. The same opportunity will be given in open session regarding the closed session agenda prior to commencement of the closed session. Agendas for special meetings will permit the public to address particular agenda items even where the agenda does not include general public comment.

Members of the public who wish to offer public comment may do so telephonically by calling (213) 306-3065 and entering code 24843730354# when prompted for a meeting ID number. The public comment phone line will be accessible starting at 9:15 a.m.

The requirement of public comment on individual items shall not apply if the opportunity for public comment on the item previously had been provided by a Board committee (consisting entirely of Board members at which a quorum was present) to all interested members of the public when it considered the item and the item had not changed substantially since the committee hearing. The Board agenda shall state whether such earlier opportunity for public comment had been duly provided. If the Board President determines that an item has changed substantially since the committee hearing, public comment on the item shall be allowed. (These public comment procedures are in addition to any other hearing requirement specifically imposed by law.)

Each speaker is allowed to speak up to two minutes per agenda item, with a five-minute cumulative total to speak on all agenda items. The Presiding Officer shall, however, exercise discretion to determine whether such period of time should be reduced or extended based upon such factors as the length of the agenda or substance of the agenda items, the number of public comment speaker cards submitted, the need for the Board to conclude its business as expeditiously as is practicable, and whether the Board is at risk of losing a quorum, among other factors.

## BOARD MEETINGS
The Board conducts regular meetings at 10:00 a.m., or as soon thereafter as a quorum is present, on the second and fourth Tuesdays of the month (or on the next business day when a meeting day falls on a legal holiday) in Room 1555-H of the John Ferraro Building (JFB). Special meetings are held at the date, time, and place specified in the meeting notice. Three members of the five-member Board constitute a quorum for the transaction of business. Meetings are recorded.

Board meetings are conducted in accordance with the Ralph M. Brown Act, California Government Code Section 54950 *et seq.* Resources: The Brown Act: Open Meetings for Local Legislative Bodies (Cal. Atty. Gen. 2003) (available online at <www.oag.ca.gov/open-meetings>); Open & Public IV: A Guide to the Ralph M. Brown Act (League of Cal. Cities 2d ed. 2010) (available online at <www.cacities.org> search for "Open Meeting IV").

Board meetings are conducted in accordance with the Rules of the Board of Water and Power Commissioners (available online at <www.ladwp.com/board>).

Board meetings are presided over by the Board President or, in his or her absence, as provided in Board Rule No. 5.

The Board upon request will provide reasonable accommodation to the disabled to ensure equal access to its meetings. To ensure availability, such request should be made as soon as reasonably practical by contacting the Commission Office at (213) 367-1356 during business hours.

## MEETING AGENDAS
The agenda for meetings contains a brief general description of the items to be considered. The Board may consider an item not on the agenda only in limited circumstances consistent with the Brown Act. The agenda is posted in the front window to the left (as viewed from the street) of the main entrance of the JFB Building, in the JFB lobby before entering Security area, JFB Level A lobby before entering Security area, and outside JFB Room 1555-H at least 72 hours before regular meetings and at least 24 hours before special meetings. The agenda is also available online at <www.ladwp.com/board>. The description of any item displayed on the agenda may be changed subsequent to the electronic posting of the agenda or by Board action at the meeting, but only if consistent with the Brown Act.

## ACCESS BY THE PUBLIC TO DOCUMENTS DISTRIBUTED TO BOARD MEMBERS

Members of the public may inspect documents (other than legally confidential documents) relating to open session items on the agenda distributed to at least a majority of Board members in advance of the meeting or at the meeting. Many of the documents distributed in advance of the meeting will be available online through a link included in the item description on the agenda. Some large documents or documents received too late to link to an agenda item may not be viewable in this manner. Documents (other than confidential documents) distributed during the meeting -- if prepared by the Department, another City department or office, or a Board member – will be made available for inspection during the meeting. Documents may be viewed in the Commission Office (JFB Room 1555) prior to or after the meeting. Copies may be obtained in accordance with regular procedures for copying Department records.

## THE ORDER OF BUSINESS

The order of business for regular meetings typically follows the sequence described below. The Board, however, sometimes considers matters out of order as the Board President may direct. The order of business for special meetings will be determined by the agenda. Thus, some special meeting agendas may follow the organizational format of regular meetings, while other meeting agendas may be limited to but one or several items.

1. *Preliminary Matters:* The Board President will begin the meeting with opening remarks. General Public comments will then follow. Thereafter, the General Manager may give a report followed by introduction of motions by Commissioners.

2. *Consideration of Items Recommended for Approval:* The Board will consider items recommended for approval. Items on which there are speaker cards or which a Commissioner has requested pulled for discussion will generally be considered after the Management Reports and Filed Items.

3. *Management Reports:* Reports from management and other documents are presented to the Board for information or possible discussion. No action is requested in regard to these items.

4. *Filed Items:* Filed items from management and other documents are presented to the Board for informational purposes and/or possible discussion. No action is requested in regard to these items.

5. *Items Recommended for Approval:* The Board President will announce the items to be considered by the Board. The Board will hear from members of the public who have requested to speak on an item that a speaker card has been submitted.

6. *Closed Session Agenda:* Before going into closed session, the Board will hear from members of the public on any closed session item. Thereafter, the Board will make any announcements required by law before retiring to closed session. Closed sessions are allowed only for particular subject matters permitted by the Brown Act. The Board agenda will state any provisions of the Brown Act permitting the closed session. After the closed session, the Board will publicly report any action taken in closed session and the vote or abstention thereon of every member present in accordance with California Government Code Section 54957.1.

## BOARD ACTIONS

The vote of at least three members is required for Board action. With some exceptions, Board actions are not final when taken because, under Los Angeles City Charter Section 245, the City Council may assert jurisdiction for possible veto of actions of boards and commissions of City government. Board actions thus become final as provided by Charter Section 245.

A.  Roll Call

B.  Public Comment
    An opportunity will be given for the public to address the Board on items listed below. Speakers may be limited in speaking time dependent upon the press of business and number of persons wishing to address the Board.

C.  Closed Session

    The Board shall recess into closed session for a conference with legal regarding the below items:

    1.  CONFERENCE WITH LEGAL COUNSEL – EXISTING LITIGATION
        (Section 54956.9(a) of the California Government Code)

        *Antwon Jones v. City of Los Angeles*, Los Angeles Superior Court Case No. BC577267 (and designated related cases, including related appeals).

    2.  CONFERENCE WITH LEGAL COUNSEL – EXISTING LITIGATION
        (Section 54956.9(a) of the California Government Code)

        *City of Los Angeles v. Pricewaterhouse Coopers LLP (PwC)*, Los Angeles Superior Court Case No. BC574690 (including current appeals and designated related cases).

    3.  CONFERENCE WITH LEGAL COUNSEL – EXISTING LITIGATION
        (Section 54956.9(a) of the California Government Code)

        *In re Paul Oliva Paradis,* United States Bankruptcy Court, District of Arizona, Case No. 2:20-bk-06724-MCW.

    4.  CONFERENCE WITH LEGAL COUNSEL – EXISTING LITIGATION
        (Section 54956.9(a) of the California Government Code)

        *In re Ardent Cyber Solutions,* United States Bankruptcy Court, District of Arizona, Case No. 2:20-bk-06722-PS.

    5.  CONFERENCE WITH LEGAL COUNSEL – EXISTING LITIGATION
        (Section 54956.9(a) of the California Government Code)

        *Dennis Bradshaw v. City of Los Angeles, et al.* United States District Court, Central District of California, Case 2:19-cv-06661-VAP.

6. CONFERENCE WITH LEGAL COUNSEL – EXISTING LITIGATION
(Section 54956.9(a) of the California Government Code)

*Antwon Jones v. City of Los Angeles et al,* United States District Court, Central District of California, Case 2:20-CV-11502-JC.

7. CONFERENCE WITH LEGAL COUNSEL – EXISTING LITIGATION
(Section 54956.9(a) of the California Government Code).

*Eric M. Haley, Chapter 7 Trustee for the Bankruptcy Estate of In re: Ardent Cyber Solutions, LLC, Case No. 2:20-bk-06722-PS v. Eric Garcetti, Joseph Brajevich, The City of Los Angeles, The City of Los Angeles By and Through Its Department of Water and Power, and Does 1 through 50,* United States District Court Case No. 2:21-cv-07503-SB-PD.

8. CONFERENCE WITH LEGAL COUNSEL – EXISTING LITIGATION
(Section 54956.9(a) of the California Government Code)

*Michael Libman, et al. v. United States of America, et al.,* United States District Court, Central District of California, Central District, Case No. 2:21-cv-09455.

The Board shall publicly report any action taken in closed session and the vote or abstention of every member present thereon in accordance with Section 54957.1 of the California Government Code.

D. <u>Adjournment</u>

# EXHIBIT 4



Eric Garcetti, Mayor

Board of Commissioners
Cynthia McClain-Hill, President
Susana Reyes, Vice President
Jill Banks Barad-Hopkins
Mia Lehrer
Nicole Neeman Brady
Yvette L. Furr, Acting Secretary

Martin L. Adams, General Manager and Chief Engineer

December 13, 2021

**Via U.S. Mail and Email**

Honorable Mike Feuer
Los Angeles City Attorney
City Hall East, Room 800
Los Angeles, California 90012

Dear Mr. Feuer:

Subject:    Los Angeles Department of Water and Power Legal Representation

As you know, the Los Angeles Department of Water and Power's (LADWP) response to the failed launch of a new Customer Information System (CIS) in 2013, which included a new Customer Care and Billing System (CCB), has been the subject of numerous reports and investigations, including a criminal inquiry into the actions of attorneys employed and/or retained by your office to represent the LADWP in litigation arising out of *Jones v. City of Los Angeles* and the related cases: *Kimhi v. City of Los Angeles* (Case No. BC536272); *Bransford v. City of Los Angeles* (Case No. BC565618); *Morski v. Dept. of Water & Power* (Case No. BC568722); *Fontaine v. City of Los Angeles Department of Water and Power* (Case No. BC571664); *City of Los Angeles v. PwC* (Case No. BC574690); *Antwon Jones v. City of Los Angeles* (Case No. BC577267), and *Macias v. Dept. of Water & Power* (Case No. BC594049), collectively "Related Cases".

California Rules of Professional Conduct prohibit a lawyer from representing a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to, or relationships with another client, a former client or a third person, or by the lawyer's own interests, without informed written consent.

In light of certain findings contained in the Special Master's Report on "*The Investigation Into Any Violations Surrounding The Case and Action of Jones v. City of Los Angeles and Related Cases*" ("Report") filed with the Los Angeles Superior Court on July 12, 2021, and the Information and Plea Agreement in the matter of the *United States of America v. Paul O. Paradis*, I respectfully request your concurrence in the LADWP Board of Water and Power Commissioners' ("Board") determination that it now is imperative that the LADWP be independently represented in all matters associated with

111 N. Hope Street, Los Angeles, California 90012-2607  Mailing Address: PO Box 51111, Los Angeles, CA 90051-5700
Telephone: (213) 367-4211 · ladwp.com

Case 2:21-ap-00171-PS   Doc 33-4  Filed 01/27/22   Entered 01/27/22 10:15:04   Desc
Exhibit D Pt 1   Page 74 of 119

the ongoing federal investigation related to these events. Additionally, we request that three City Attorneys currently working at LADWP be reassigned and removed from all LADWP-related matters based on the information detailed in the Special Master's Report related to their actions.

We propose scope of work for independent counsel is as follows:

- Advise the Board and represent LADWP in its effort to cooperate with the ongoing federal investigation arising from these and related matters.
- Advise the Board on the Report and potential conflicts with the Los Angeles City Attorney's Office's representation of the LADWP.
- Advise the Board on any necessary remediation within LADWP to address and avoid.
- Represent the LADWP in the Related Cases, to the extent they are not resolved by the settlement in *Jones v. City of Los Angeles.*
- Monitor LADWP's current counsel in *Jones v. City of Los Angeles* and, to the extent any additional proceedings related to customer restitution are required in that matter, provide independent advice to the Board on any recommendations advanced by current counsel. Replace current counsel in *Jones v. City of Los Angeles* in all other matters.

We look forward to your response.

Sincerely,

Cynthia McClain-Hill
President, Board of Water and Power Commissioners
Los Angeles Department of Water and Power

CMH:ylf

c:   Mayor Eric Garcetti
     City Council President Nury Martinez
     Council Member Mitch O'Farrell
     Council Member Paul Krekorian

# EXHIBIT 5

https://www.newsdata.com/california_energy_markets/bottom_lines/ladwp-board-requests-outside-counsel-in-complicated-legal-scandal/article_4c4af066-5f92-11ec-9667-e30578db9cdf.html

# LADWP Board Requests Outside Counsel in Complicated Legal Scandal

Jason Fordney

Dec 17, 2021



LADWP headquarters. The agency is embroiled in a complex web of scandals stretching back years, forcing its board to act on an alleged conflict of interest.

Ron Gilbert/Flickr

Leadership of the Los Angeles Department of Water & Power voted to seek authorization from Los Angeles City Attorney Mike Feuer to hire independent counsel to represent the city in various legal matters under investigation by federal authorities.

The LADWP Board of Water and Power Commissioners in a news release said it seeks to hire the attorneys "to resolve conflicts of interest that may exist and that must be remedied to protect the department and its ratepayers." The board's Dec. 13 letter, approved in a closed session, also requests removal of three city attorneys from their roles based on findings outlined in a "special master report" by former federal prosecutor Edward Robbins related to the LADWP billing scandal, currently in litigation.

"As you know, the Los Angeles Department of Water and Power's (LADWP) response to the failed launch of a new Customer Information System (CIS) in 2013, which included a new Customer Care and Billing System (CCB), has been the subject of numerous reports and investigations, including a criminal inquiry into the actions of attorneys employed and/or retained by your office to represent the LADWP in litigation arising out [seven related court cases]," the board's letter to Feuer says.

Feuer's office in a Dec. 17 email to California Energy Markets provided a letter responding to LADWP Board President Cynthia McClain-Hill, which states the board had not identified "what that ostensible conflict is."

"Absent an identifiable conflict of interest, our Office can continue to perform our Charter-mandated duty of providing legal services to LADWP on these specific matters, as we have faithfully been doing for years—and do for all LADWP's legal needs," Feuer said in the letter. "Nonetheless, given the unique circumstances here and in the spirit of continuing to work collaboratively with you and the LADWP Board, I will agree to your request that LADWP may be independently represented on these matters."

He added: "The plea agreements that recently emerged display an appalling betrayal of the public trust. That behavior is inexcusable."

**The July 13 <u>special master report</u> cited** in the LADWP board's letter was submitted in state Superior Court in Los Angeles County in a case that involves Feuer himself: Antwon Jones v. City of Los Angeles.

Jones' suit and other related matters have been covered in this column over the past couple of years in the "Tangled Web" series. Jones filed his latest lawsuit in December 2020 against the City of Los Angeles after a series of events that took place when he received an inflated electric bill more than seven years ago, a case that resulted in multiple lawsuits, Federal Bureau of Investigation raids and allegations of wider corruption (see <u>CEM No. 1635</u>).

Jones' suit names Feuer; Feuer's chief deputy, Michael Clark; and Civil Litigation Branch Chief Thomas Peters. Parties not named as defendants, but described as participants in the alleged misconduct, include David Wright, who was general manager of LADWP from 2015 to 2019; LADWP itself; attorneys Paul Paradis, Gina Tufaro, Paul Kiesel, Michael Libman, Richard Tom, Eskel Solomon, Deborah Dorney and Jack Landskroner; former Aventador Utility Solutions President Ryan Clarke; and former Board of Water and Power Commissioners President Mel Levine.

The FBI in July 2019 raided LADWP headquarters as well as Feuer's office at City Hall and several local law offices, hauling away documents and computers. The following day, Los Angeles Mayor Eric Garcetti fired Wright.

Wright and Paradis recently signed agreements to plead guilty to bribery related to a scheme they allegedly concocted to funnel tens of millions of dollars in illegally obtained contracts with LADWP to a company they created, as well as millions of dollars in contracts with other entities. The company, Aventador Utility Solutions, would pay Wright a salary of $1 million a year and provide him a luxury car after his time at LADWP (see CEM No. 1671).

**The entire case around LADWP's** billing scandal is extremely complex, but one allegation is that the same lawyers were representing both Jones and the city in Jones' lawsuit against the city, which would represent a conflict of interest. Another theme was an attempt to blame PricewaterhouseCoopers for billing errors that led to hundreds of millions of dollars in unclaimed revenue.

The special master report notes that "Despite the City's public assertion that Mr. Paradis and Mr. Kiesel, without the knowledge of anyone in the City, went 'rogue' in handing off the Jones v. City complaint to Mr. Landskroner and Mr. Libman, the evidence supports a finding that the City directed and assisted in the City suing itself with a sham lawsuit."

Consumer Watchdog President Jamie Court in a lengthy Dec. 3 blog post discusses the highly complicated case, alleging that Feuer at best "was asleep at the switch. At worst he knew what was going on."

Court has been intimately involved in the case, according to his blog, at one point getting in an altercation with Tom Merriman, an Ohio lawyer. According to an article on the incident in the Los Angeles Times, Court and other attorneys alleged that Merriman and his colleagues at a Cleveland law firm did not hold out for a tough enough settlement over the LADWP billing mistakes.

Meanwhile, Wright is also under scrutiny for his actions during his time at Riverside Public Utilities, before he was named to head LADWP by Garcetti (see CEM No. 1594). RPU recently completed an audit of contracts Wright approved with the Southern California Public Power Authority. California Energy Markets is currently reviewing a draft audit of the activities.

**Additionally, the U.S. attorney's office** announced Dec. 13 that former LADWP Chief Information Security Officer David Alexander agreed to plead guilty to lying to the FBI in relation to his relationship with Paradis.

According to a news release, Alexander lied "about a lucrative job offer he secretly solicited and agreed to accept in exchange for providing 'guarantees' of additional LADWP contract money to a lawyer who held a bribery-fueled contract with the department."

The release says that SCPPA issued a request for proposals for a cybersecurity services contract at the request of Wright.

"Alexander, the RFP's primary drafter, was one of four members of the scoring committee for the SCPPA RFP, which was responsible for presenting its scores and recommendations to the SCPPA's Cybersecurity Working Group," the U.S. attorney's office release says. "Alexander knew the SCPPA RFP process was intended to be a competitive, neutral and transparent process. But he manipulated that process with the goal of securing future cybersecurity work for Aventador, and, later, Ardent."

CEM will have further coverage as it unravels the tangled web that has ensnared a large number of attorneys and civil servants in Los Angeles.

Jason Fordney

Editor - California Energy Markets

# EXHIBIT 6



# Ethics Handbook

### for

# City Officials

los angeles city

## ETHICS COMMISSION

*...preserving the public trust.*

Case 2:21-ap-00171-PS    Doc 33-4    Filed 01/27/22    Entered 01/27/22 10:15:04    Desc
Exhibit D Pt 1    Page 82 of 119



## los angeles city
## ETHICS COMMISSION
*...preserving the public trust.*

This is a brief overview of the governmental ethics laws. Please contact us for more information about how the laws apply to you or to report a possible violation.

**Address:**

200 North Spring Street
City Hall 24th Floor
Los Angeles CA 90012

**Phone:**

(213) 978-1960

**Whistleblower Hotline:**

(800) 824-4825

**Fax:**

(213) 978-1988

**Web:**

ethics.lacity.org

# Table of Contents

Introduction.................................................... .2

The Public Trust.................................................. 3

Financial Disclosure............................................. 8

Conflicts of Interests ......................................... 12

Gifts and Travel ............................................... 16

Political Activity ............................................. 21

Lobbying....................................................... 25

Revolving Door................................................. 27

Violations..................................................... 30

Conclusion..................................................... 32

Appendices:
*Gift Guide for City Officials* .................................... 33
*Citations*........................................................ 34

# Introduction

This handbook for City officials is a summary of key provisions in the City's Governmental Ethics Ordinance (GEO) and relevant state laws. You are a City official if you are required under the state's Political Reform Act to file statements of economic interests for your position with the City.

The laws are intended to protect the integrity of the City's decision-making processes. Often, even the perception that a City official has acted with bias can erode public confidence as much as if bias actually existed. Therefore, it is crucial that we, as City officials and City employees, are ever conscious of the governmental ethics laws.

The governmental ethics laws are described here in general terms, but applying them in specific real-world scenarios may be complex. If you are contemplating an action covered by the governmental ethics laws—or just want more information—please contact us with questions about how to apply the laws. We are happy to help!

Thank you for your service to the City and for your commitment to providing open, honest, and accountable government to the people of the City of Los Angeles.

## Contact Information

200 North Spring Street
City Hall, 24th Floor
Los Angeles, CA 90012

ethics.commission@lacity.org
ethics.lacity.org

Tel: (213) 978-1960
Fax: (213) 978-1988

Whistleblower Hotline:
(800) 824-4825
(213) 978-1999

# The Public Trust

Persons in the public service shall not only be ever conscious that public service is a public trust but also shall be impartial and devoted to the best interests of the City, and shall so act and conduct themselves, both inside and outside the City's service, as not to give occasion for distrust of their impartiality or of their devotion to the City's best interests.

*Code of Ethics*
City of Los Angeles

# The Public Trust

**Introduction**

The governmental ethics laws were adopted to help preserve the public trust by promoting elections and government decisions that are fair, transparent, and accountable. To further those goals, City officials are held to appropriately high standards of conduct, to help ensure that they act in the best interests of the public and the City.

In addition to the City's governmental ethics laws, case law requires a public official to "exercise the powers conferred on him with disinterested skill, zeal, and diligence and primarily for the benefit of the public." *Noble v. Palo Alto* (1928) 89 Cal.App.47, 51.

This guide describes the governmental ethics laws that apply to you, as a City official.

**Bribery and extortion**

Two obvious and egregious betrayals of the public trust are bribery and extortion, both of which are illegal.

A bribe is anything of value that is offered to you in exchange for your official action or inaction. Asking for, agreeing to, or receiving a bribe is illegal. A bribe does not necessarily need to involve the payment of money. It could also be a good or service, including a future advantage or benefit.

Extortion occurs when you obtain property through the wrongful use of your City position. For example, you may not demand, threaten, or force a person to provide you with money or other benefits in exchange for taking a City action.

**Misuse of City authority or resources**

Those are dramatic examples of misusing public authority. However, even if it does not rise to the level of bribery or extortion, City officials and employees are prohibited from using their City positions or the City's resources to engage in conduct that does not benefit the public.

Specifically, it is illegal to misuse or even attempt to misuse your position or your prospective position to create a private advantage or disadvantage for any person.

In addition, you may not use or authorize the use of City resources for non-City purposes. City resources include City facilities, supplies, telephones, vehicles, equipment, Internet access, e-mail, and mailing lists.

You are also prohibited from misusing or disclosing confidential information acquired as a result of your City service. This provision applies even after you leave City service.

Your agency may have its own policy with further restrictions on the use of City positions and resources, so please check with your supervisor.

# The Public Trust

**Retaliation**

You may not use or threaten to use your City authority or influence to discourage, restrain, interfere with, or cause retaliation against a person reporting possible violations of law to the Ethics Commission or another government entity.

If you think you have been retaliated against for reporting a violation, you may file a complaint with the Ethics Commission.

**Future employ-ment**

To avoid conflicts with your City responsibilities, there are limits on how you can arrange future employment and how you can interact with future employers.

The Mayor, City Attorney, Controller, and the heads of City agencies may not negotiate future employment or future business opportunities with a person (other than a government agency) who has a matter pending before them or their agencies.

Members of the City Council or a City board or commission may not negotiate future employment or future business opportunities with a person (other than a government agency) who has a matter pending before them or a body of which they are a voting member.

Other City officials may not negotiate future employment or future business opportunities with a person (other than a government) who has a matter pending before them.

In addition, you may not participate in or use your City position to influence a decision involving the interests of a person with whom you are negotiating or have an agreement concerning future employment.

**Outside income**

City officials and employees may never engage in outside employment while on City time.

If you are a City official other than an elected official or a part-time board or commission member, you may not receive outside (i.e., non-City) income unless you obtain prior written approval from your department head or appointing authority. You must also obtain prior written approval from the Ethics Commission if the source of outside income is a restricted source to you (see page 18). Approval is required even if the activities for which you will receive income are completely unrelated to your City employment. It is also required regardless of the location of the source of income.

**Outside income (cont'd)**

You may not receive approval for outside income if receiving the income would be "inconsistent, incompatible, in conflict with or inimical to" your City duties. Some of the reasons that outside income would be in conflict with your City duties include the following: the outside employer is likely to have business before your agency; the outside job involves providing the same service that you provide to the public on behalf of the City; the outside job reduces the quality of your service to the City; and the outside job involves or appears to involve the use of City resources for private gain.

If you are an elected official, the City Charter requires you to devote your entire time to the duties of your office and prohibits you from receiving outside compensation. If you are a Public Works Board member, you are required to devote your entire time to the duties of your office, and you may not engage in outside employment that interferes with those duties.

### Example 1

*You are a full-time City official on staff with the Department of Water and Power who wishes to receive outside income for a few months of preparing tax returns for a private accounting firm. You must do all of the following: obtain prior written approval from your department head; obtain prior written approval from the Ethics Commission if the accounting firm is a restricted source to you; avoid conflicts of interests by not participating in any matter before you as a City official involving the accounting firm or the firm's clients; use only non-City resources to conduct the outside work; disclose your income if required by your disclosure category; and keep private any confidential information that you acquire in the course of your City duties.*

**Honoraria**

An honorarium is a payment for giving a speech, writing an article, participating in a panel or seminar, or engaging in a similar activity. You may not accept honoraria from a source that is described in your disclosure category (defined on page 9). An 87200 filer (defined on page 9) may not accept honoraria from any source. For honoraria that are not prohibited, the GEO provisions regarding outside earned income apply, including the requirement that you obtain prior written approval.

### Example 2

*You are not just a City official on staff with the Police Department, you are also a really great cook. Your skill in the kitchen is renowned, and you are asked to give a speech to the Professional Chefs Association of Los Angeles (PCALA). You will be compensated for your efforts. You may accept this honorarium if the PCALA is not described in your disclosure category and you received prior written approval from the police chief and approval from the Ethics Commission if PCALA is a restricted source to you.*

# The Public Trust

*Statement of*
*City-related*
*business*

When City action affects the financial interest of an elected official, a board or commission member, the head of a City agency, or an individual holding an appointive office named in the Charter, that official is required to file a Statement of City-related Business (Form 44). Reportable financial interests include those held by the official personally, by the official's spouse or registered domestic partner, or by a business in which either the official or the official's spouse or registered domestic partner holds an ownership interest of five percent or more.

City actions that must be reported include the sale of real or personal property to the City; the City's award or denial of a City contract; the receipt of a grant, loan, or forgiveness of debt; and the approval or denial of an application for a license, certificate, permit, franchise, change of zone, variance, credential, or other benefit.

Form 44 must be filed with the Ethics Commission within 10 days after the City action occurred.

# Financial Disclosure

*Financial disclosure helps City officials make unbiased governmental decisions by identifying potential conflicts between their personal interests and their City duties.*

# Financial Disclosure

**Required filers**

Under the state's Political Reform Act, every City agency must adopt a Conflict of Interests (COI) code. Schedule A of your agency's COI code lists each position in your agency that makes or participates in making governmental decisions. You are required to periodically file a statement of economic interests (SEI) if your position is listed in Schedule A or if you are in a newly created position that makes or participates in making a decision but is not yet listed in the COI code. Officials listed in Government Code Section 87200 (see below) and certain consultants are also required to file SEIs.

**87200 filers**

City officials identified in California Government Code section 87200 include the following:

- Mayor, City Attorney, City Council Members
- City Treasurer/Director of Finance
- City Administrative Officer
- Citywide Planning Commission Members
- Members of Retirement Boards (*e.g.,* LACERS Board Members, Board of Fire & Police Pension Commissioners, Board of Administration of the Water and Power Employees' Retirement Plan Members, Deferred Compensation Board Members)
- Other City employees and consultants who manage public investments

**Disclosure categories**

Each position listed on a COI code has a specific disclosure category, which is defined in Schedule B of the code. A disclosure category describes the types of financial interests that are reportable for each position, based on decision-making authority. You are required to report ONLY the interests specified in your disclosure category. These may include one or more of the following:

- Investments in business entities (*e.g.,* stocks, businesses, partnerships);
- Real estate interests;
- Sources of income, including gifts and loans; and
- Business positions.

You are also required to report 50 percent of your spouse's or registered domestic partner's income, as well as investments and interests in real property that are specified in your disclosure category and held by your spouse, registered domestic partner, or dependent child.

Officials listed in Government Code Section 87200 (see above) must report all investments, sources of income, sources of gifts, and real property interests.

# Financial Disclosure

## Example

You are a systems analyst for the Information Technology Agency. Your disclosure category requires you to disclose any "investment in, business position with, or income from a source that provides the type of services, goods, or equipment" used by your agency. You own $2,000 worth of IBM stock, and you have an ownership interest in a gym that your spouse runs in North Hollywood. You must disclose your IBM stock investment, because it is covered by your disclosure category. The interest in your spouse's gym does not need to be disclosed because it is not covered by your disclosure category.

## How to file an SEI

For most City officials, an SEI is the state's Form 700. You can file your SEI electronically through the City's electronic filing system, eDisclosure. For elected officials, general managers, board members, and commissioners, an SEI is the state's Form 700 and the City's Form 60, which captures interests associated with restricted sources (See page 18).

Your agency has designated an ethics liaison, who communicates with the Ethics Commission regarding filing compliance. You may receive filing reminders from your liaison and eDisclosure, but it is your responsibility to ensure that you have filed properly and on time.

Your SEI is a public record that must be made available by your agency and the Ethics Commission to anyone who requests it. For this reason, you are not required to disclose your home address, as long as it is used exclusively as your personal residence and you do not rent out a room or claim a business deduction for it. We recommend that you use your agency's mailing address or a business address when completing your forms.

# Financial Disclosure

**_When to file an SEI_**

The schedule for filing your SEIs depends on the type of statement you are filing.

**Pre-confirmation Statement:**
Filed by nominees to City board, commission, and department head positions prior to the City Council's consideration of their appointments.

**Assuming Office Statement:**
Filed by all City officials. Due within 30 days after beginning official duties in a new City position, even if a pre-confirmation statement was filed.

**Annual Statement:**
Filed by all City officials. Due every year by April 1. A new annual statement must be completed and filed each April, even if your interests have not changed since your last filing.

**Leaving Office Statement:**
Filed by all City officials. Due within 30 days after leaving a City position.

Instructions and the period covered by each type of statement are included with the forms.

You must complete and file your forms, even if you have no reportable interests to disclose.

**_Important:_** Monetary penalties and possible administrative enforcement action apply to a City official who does not file a statement on time or who fails to file (see page 31). If the filing deadline falls on a Saturday, a Sunday, or an official state holiday, the filing deadline is extended to the next business day. Otherwise, extensions may only be granted for a City official on a military leave of absence.

Ethics Commission

# Conflicts of Interests

*To promote government decisions that are fair and accountable, City officials must avoid participating in actions that affect or appear to affect their private interests, both financial and non-financial.*

# Conflicts of Interests

**Conflicts of interests**

You have a conflict of interests under the state's Political Reform Act if your actions as a City official affect your personal interests or the interests of your immediate family members. It does not matter whether the action has a negative or positive effect on the interest. The Act prohibits you from making, participating in, or attempting to influence a government decision if it is reasonably foreseeable that the decision will have a material financial effect on an economic interest of yours or an immediate family member.

**The City's appearance standard**

In addition to state law, the City has its own conflicts provision. The City's appearance standard states that it is "not in the public interest" for you to act on a matter if you do not believe that you could act impartially or if the public might reasonably reach that conclusion. This can be true even when your interest in the matter is not financial. The City Attorney may decide, pursuant to City Charter § 222, that the public interest prevents you from acting even when you would not be disqualified by state conflict of interests laws.

**Decisions related to contracts**

State law prohibits you from having a financial interest in a City contract if your duties call on you to participate in any way in the contract. Participating in preliminary discussions, planning, developing, negotiating, approving, or executing a contract is a violation of law if you have a financial interest in that contract. Furthermore, state law limits both your ability to participate in the contract and also the City's ability. If you are a member of a board that acts on a contract in which you have a financial interest, severe penalties can result for the board and the City—even if you recuse yourself.

In the first 12 months of City service, you are prohibited from knowingly making, participating in making, or attempting to use your City position to influence a City decision directly relating to a contract if a party to the contract is a person by whom you were employed in the 12 months prior to entering City service.

If you are a member of a City board or commission, you may not participate in the contracting process outside of a public board or commission meeting. Participation includes making recommendations on bids or proposals and taking part in contract negotiations.

# Conflicts of Interests

### Example

*You are a City Pension Board member. At a conference you are approached by a money manager who insists that a City pension fund should invest in his company. He wants to talk to you in detail about what his company can offer the pension fund. Because you are prohibited from being individually involved in the contracting process, you should ask the money manager to contact the staff to discuss his proposal.*

**Interests that can create conflicts**

A conflict of interests may arise from interests like the following:

- A **business** in which you or your family members have an investment; or

- **Real property** in which you or your family members have an interest; or

- A **source of income, gifts, or loans** to you or your family members; or

- A person with whom you have a **relationship** other than in your capacity as a City official (e.g., a non-profit board on which you sit); or

- A person with whom you are **negotiating future employment or business**.

- If you are a board or commission member, an elected official serving on another public board, or the head of a City agency, a source of campaign contributions to you in the past 12 months may create a conflict of interests for you. Please seek guidance from the City Attorney's office.

**Remedies**

It can be difficult to determine whether you have a conflict of interests. The mere presence of one of the interests listed above does not necessarily mean that you have a conflict, as other factors may be involved. You should contact the City Attorney's office to determine if you have a conflict and whether you must disqualify yourself from participating in a particular matter.

If a conflict of interests exists, you must disqualify yourself, meaning you must recuse yourself from making, participating in, or attempting to use your official position to influence the government decision that might affect your personal interest. Severe penalties may result for you and the City if you do not recuse yourself when required.

**Recusal**

If the City Attorney determines that you have a conflict or the appearance of a conflict and must recuse yourself, you should inform your supervisor, appointing authority, or chief administrative officer. Providing a written statement of your recusal, including a description of the interest that is the subject of the conflict, is the most prudent means of conflict disclosure. Also, when you are required to recuse yourself, you may not do anything to attempt to influence the decision related to your conflicting interest.

# Conflicts of Interests

**Recusal (cont'd)**

If you sit on a City board or commission, you are required to submit a recusal notification form (Form 51) each time you are required to recuse yourself, even if you are not present at the meeting. Written or verbal public disclosure may also be required by law of certain City officials (e.g., 87200 filers, see page 9), members of a body or board, and employees participating in contracting matters.

## Example

**Y**ou are an employee with Los Angeles World Airports (LAWA). Your job includes screening proposals submitted in response to requests for proposals, to ensure that each meets the specified requirements. Your spouse, who owns a construction company, decides to submit a proposal for a five-year contract to repair and maintain runways at LAX. Since your spouse owns the business, you are financially interested. You should ask the City Attorney for advice about how to proceed.

If the City Attorney determines that you must recuse yourself from participating in this matter, you should submit a written declaration of disqualification to your general manager. If you are a LAWA board member, the entire board could be disqualified from acting and the matter may be sent to the Board of Referred Powers.

**Recusal reviews**

If you are a board or commission member and submit three recusal forms within a 365-day period, the Ethics Commission is required to conduct a review to determine whether you have a significant and continuing conflict of interests that results from an interest in real property, a source of income, or an investment.

If the Ethics Commission determines that you do have a significant and continuing conflict, it is required to order you to divest yourself of the financial interest that is causing the conflict.

# Gifts and Travel

*City and state laws limit and sometimes prohibit gifts to City officials. These laws are designed to prevent gift givers from exercising or appearing to exercise improper influence over City decisions.*

Case 2:21-ap-00171-PS    Doc 33-4    Filed 01/27/22    Entered 01/27/22 10:15:04    Desc
Exhibit D Pt 1    Page 99 of 119

# Gifts and Travel

**Definition of "gift"**

A gift is anything you receive that gives you a personal benefit for which you do not provide monetary or other consideration of equal or greater value. If you believe you have provided consideration (and, therefore, not received a gift), you have the burden of proving that the consideration is worth as much as or more than the value of what was received.

Examples of gifts include meals, tickets to sporting events, entrance to entertainment events, gift cards, gift baskets, and rebates or discounts (unless the rebate or discount is made in the regular course of business to any member of the public and without regard to your City position). Gifts to your family members may be gifts to you and, in some cases, a personal loan may also be a gift.

**Gift limits**

You may not solicit or accept a gift if it is reasonably foreseeable that it could influence you in the performance of your City duties.

In addition, you may not accept a gift or combination of gifts during the calendar year from a single source with a total value that exceeds any of the following:

- **$0** from a lobbyist or lobbying firm that lobbies your agency or, if you are an elected official, that lobbies any City agency.

- **$100** from any other restricted source (see definition below).

- **$520** from a source that is not a restricted source but is listed in your disclosure category (see page 9) or, for an "87200 filer" (see page 9), from any source.

Registered lobbyists and lobbying firms are identified on the Ethics Commission's web site.

Additional information about accepting gifts is provided in the "Gift Guide for City Officials" on page 33.

# Gifts and Travel

**Restricted sources**

A restricted source is a person who is actively engaged in business with the City. A restricted source is a person who:

- Files or is required to file as a lobbyist or lobbying firm and seeks to influence your agency (or, if you are an elected official, any City agency);
- Has entered into, performs under, or seeks a contract with your agency (or, if you are an elected official, any City agency);
- Has attempted to influence you in the last 12 months on a matter that would have a material financial effect on the source; or
- Is, or within the last 12 months was, a party to a proceeding involving a license, permit, or other entitlement for use that was pending before you or a board of which you are a member.

*You may never solicit a gift from a restricted source! And you may never accept a gift from a restricted source—or any other source—if it is reasonably foreseeable that it could influence you in your City actions.*

**Loans**

Under state law, a personal loan may be considered a gift and, therefore, may be limited and subject to disclosure requirements. This does not apply to a loan from commercial lending institution that was made in the lender's regular course of business on terms available to members of the public, without regard to your official status.

If you are an elected official or an "87200 filer" (see page 9), you are prohibited from receiving a personal loan of more than $250 from an officer, employee, commission or board member, contractor, or consultant of your agency or an agency over which your agency exercises control. Elected City officials are subject to further restrictions on loans.

**Exceptions**

Items listed below are not subject to City or state gift limits and, except where noted, need not be disclosed on your SEI.

- Items that are not used and are returned to the source within 30 days or items that are not used, are donated within 30 days to either the City or a 501(c)(3) organization in which neither you nor your family members hold a position, and are not claimed as a tax deduction.

- Items received from a family member, spouse, registered domestic partner, former spouse, former registered domestic partner, child, parent, grandparent, grandchild, brother, sister, parent-in-law, brother- or sister-in-law, nephew, niece, aunt, uncle, first cousin, or the spouse of any of these persons) or a partner in a bona fide dating relationship, as long as the individual is not acting as an intermediary for another source.

- Informational material (e.g., books, reports, pamphlets, calendars, seminars, or informational conferences) used to assist you in the performance of your City duties. Transportation is generally not considered informational material.

# Gifts and Travel

**Exceptions (cont'd)**

- Admission for you and one guest to a ticketed entertainment event at which you perform a ceremonial role. This exception only applies if your agency files the state's Form 802. Specific rules may apply, and you should seek guidance from the Ethics Commission before applying this exception.

- Benefits received as a guest attending a wedding or civil union where the benefits are the same as those received by the other guests.

- Bereavement offerings.

- Personalized plaques and trophies valued at less than $250.

- Admission and food provided by the organizers of an event at which you speak, participate in a seminar, or provide a similar service.

- Reciprocal exchanges of gifts of substantially similar value between you and a friend (other than a restricted lobbyist) where no single gift is $520 or more.

- Inheritances and bequests. An inherited investment or interest in real property may need to be disclosed under state law.

- Two tickets or admissions received from a 501(c)(3) organization for a fundraiser for that 501(c)(3) organization.

- Two tickets or admissions received from a committee or candidate for a political fundraiser for that committee or candidate.

- Nominal and routine office courtesies received by a City official in a restricted source's place of business, as long as the courtesies are available to any person who visits that place of business.

### Example 1

You are a principal city planner in the Planning Department, and you are attending a meeting at the office of a lobbyist who is registered to lobby the Planning Department. As he does with all guests, the lobbyist offers you a cup of coffee. Although you should not normally accept gifts from lobbyists registered to lobby your agency, you may accept a cup of coffee in this situation because it is a courtesy that the lobbyist normally offers to guests attending a meeting at his office.

**Travel**

Generally, you may not accept payments for travel or travel-related expenses from sources other than the City.

Travel that is offered to you by a source that is listed in your disclosure category is subject to the $520 gift limit—even if it is offered to you in your personal life, outside the scope of your City duties. Travel that is offered by a restricted source is subject to the $100 gift limit and travel offered by a restricted lobbyist or lobbying firm is prohibited. In addition, the California Constitution prohibits high-ranking City officials from accepting free or discounted travel from transportation companies.

# Gifts and Travel

Exceptions to the gift restrictions may apply for certain types of travel offered to you, depending on the destination, the source, and whether you are providing a service, such as making a speech, in exchange for the travel.

Travel paid for by another local, state, or foreign government is not restricted.

It is important to get advice from the Ethics Commission about gifts of travel, because travel that is permitted may create disclosure requirements for you and your agency and may also require your recusal.

## Disclosure

You must publicly disclose a gift and its value on your SEI if:

- The source is described as a reportable source of income in your "disclosure category" (see page 9); and

- The total value of all gifts you received from that source during the calendar year is $50 or more.

It is a good idea to track the gifts that you receive throughout the year. The Ethics Commission has created a gift journal for tracking gifts, and it is available on our website.

If the exact dollar amount of a gift is unknown, you must report a good-faith estimate of the item's fair market value. Reporting the value as "over $50" or "value unknown" is not adequate disclosure.

### Example 2

*You are an official with the Department of Building and Safety. Jack Smith is a consultant for a firm that has applied for a contract with your agency. He offers you a couple of tickets to a Dodger game, each valued at $75. Because Mr. Smith is seeking to do business with your agency through a contract, he is a restricted source to you. Therefore, you may not accept more than $100 in gifts from him during the calendar year.*

*You should consult with your department to determine whether any additional departmental gift policies apply. If no additional departmental policy applies, you have three options:*

*1) Decline the gift; or*

*2) Accept one ticket and return the other; or*

*3) Accept both tickets and pay Mr. Smith the $50 difference between the value of the tickets and the gift limit (so long as you have not received any other gifts from the Mr. Smith in the calendar year).*

*If you accept one or both tickets, they must be disclosed on your Statement of Economic Interests, because Mr. Smith is a reportable source of income to you and the value is over $50. If you pay down the difference, you should keep a record of the*

*transaction.*

# Political Activity

*City laws that limit the political activities of City personnel were adopted to ensure that the City remains neutral in elections, to protect City personnel from pressure to support or oppose a candidate or ballot measure, and to protect City resources.*

# Political Activity

*Prohibited political activity*

Political activity is activity directed at the success or failure of any candidate for elective office or ballot measure in a future election. It includes but is not limited to endorsing a candidate; engaging in fundraising; developing, displaying, or distributing campaign materials; conducting research; and posting comments on social media or other Internet sites.

You may **not** do any of the following:

- Solicit contributions from a City official or employee to support or oppose a candidate for elected office, the recall of an elected official, a ballot measure, or an officeholder or legal defense committee.

- Receive, deliver, or attempt to deliver a contribution in City Hall, another City building, or building space for which the City pays most of the rent. This does not apply to City space that is rented by a private party, unless the rental agreement prohibits it.

- Use or authorize the use of City facilities, equipment, supplies, vehicles, or any other City property for campaign activity. City property includes computers, telephone numbers, email addresses, and mailing lists.

- Engage in political activity in the following scenarios:
  - While on duty for the City.
  - Using City equipment, vehicles, supplies, or resources, including but not limited to phones, computers, mailing and distribution lists, electronic mail, and electronic data.
  - In any manner that implies you are speaking on behalf of the City or communicating a City position. This may include wearing a uniform or official City insignia or using a City title or position.
  - In a room or building that is owned, primarily paid for, or used by the City and is occupied by a City official or employee in discharging City duties. This does not include a City room or building that is available to the public for political activities, as long as you do not use the space during your City working hours and do not use other City resources.

- Induce or coerce another person to violate these prohibitions.

# Political Activity

If you are a general manager, a board member, or a commissioner, you also may **not** do any of the following:

- Solicit, direct, or receive a contribution from a person who has, or in the preceding 12 months had, a matter involving a City action pending before you.

- Engage in the following activities on behalf of an elected City officer, a candidate for elected City office, or a City controlled committee (unless the activity is on behalf of your own candidacy):

  1. Asking someone to make a contribution.
  2. Inviting someone to a fundraising event.
  3. Supplying names to be used on invitations to a fundraising event.
  4. Permitting your name, signature, or official title to appear on a solicitation for contributions or an invitation to a fundraising event.
  5. Providing the use of your home or business for a fundraising event.
  6. Paying for 20% or more of the costs of a fundraising event.
  7. Hiring someone to conduct a fundraising event.
  8. Delivering someone else's contribution to an elected City officer, a candidate for City office, or a City controlled committee.
  9. Acting as an agent or intermediary in the making of a contribution.

*Permitted political activity*

You **may** do any of the following:

- Perform volunteer work, endorse candidates, and take a position on a ballot measure, as long as these activities do not involve the use of City resources and you make it clear that you are acting as an individual and are not acting on behalf of the City.

- Use your own funds to make political contributions, subject to applicable limits.

- Solicit a political contribution from a person who is not a City official or employee, as long as you are not a general manager, board member, or commissioner, and so long as it does not violate any of the other prohibitions on political activity above.

- Use City resources to inform the public of the possible effects of a bond issue or ballot measure relating to the City when using City resources is legally authorized.

In any of these activities, you must make it clear that you are acting as an individual and take all steps to avoid giving the impression that the City or your agency supports a particular candidate or ballot measure.

# Political Activity

## Example 1

**Y**ou are a City official who is not a general manager or a member of a City board or commission, and you would like to support a candidate for City Attorney. You may support the candidate by volunteering on your non-City time, making a contribution of your personal funds to the candidate's campaign, and by soliciting contributions from someone who is not a City official or employee. In doing any of these activities, you must not use any City resources and must make it clear that you are acting as an individual and not on behalf of the City.

## Example 2

**Y**ou are a City employee who works for the Department of Animal Services. You want to campaign for a ballot measure that would ban the euthanizing of animals in City shelters. You may support and promote the passage of the ballot measure, but you may not use any City time or resources, and you must make it clear that you are acting as an individual and not on behalf of the City or the Department of Animal Services.

# Lobbying

*To foster public confidence in the integrity of City decisions, City law limits lobbying activity by certain City officials and requires lobbying entities to publicly disclose their lobbying activities, clients, and financing.*

# Lobbying

**Registered lobbyists**

An individual is required to register as a lobbyist if the person contacts a City official or employee in an attempt to influence City action on behalf of another person and is compensated for at least 30 hours of lobbying activity in a three-month period. Lobbyists must register with the Ethics Commission, and a list of all registered lobbyists is available on the Ethics Commission's web site.

If someone has attempted to influence you on behalf of a third party, you should check to see if the person is registered as a lobbyist. If the person's name does not appear on the Ethics Commission's web site and you believe that the person may be required to register, please contact us.

As a reminder, a gift from a registered lobbyist or lobbying firm that lobbies your agency is prohibited (see page 17). If you are an elected official, a gift from any lobbyist or lobbying firm is prohibited.

**Board and commission members**

If you are a member of a City board or commission, you may not attempt to influence any City decisions for compensation. This prohibition includes direct communication with City officials, either personally or through someone acting as your agent, and it applies to matters pending before any City agency.

## Example

You are a City commissioner who also happens to own a law practice. One of your clients is seeking a liquor license from the City and has asked you to meet with the City Council offices to urge their support for the license. You decline and inform your client that, because you are a City commissioner, you are not allowed to be paid to influence a City action.

Case 2:21-ap-00171-PS   Doc 33-4   Filed 01/27/22   Entered 01/27/22 10:15:04   Desc
Exhibit D Pt 1   Page 109 of 119

# Revolving Door

*To prevent former City officials from exercising or appearing to exercise improper influence over City decisions, City law contains "revolving door" restrictions.*

# Revolving Door

**Lifetime ban**

You are permanently prohibited from receiving compensation (monetary or non-monetary) to attempt to influence City action on a specific matter in which you personally and substantially participated during your City service. The ban lasts as long as the matter is still pending before a City agency or the City is a party to the matter. You are also prohibited from advising or assisting anyone else who attempts to influence action on the matter.

Personal and substantial participation includes but is not limited to making or voting on a decision, making a recommendation, rendering advice, and conducting research or an investigation. It does not include ministerial acts, such as simply scheduling a meeting.

As a reminder, you are also permanently prohibited from using or disclosing confidential information that you gain during City service.

**One-year ban**

You are also subject to a one-year "cooling-off" period, during which you are prohibited from attempting to influence action on a matter pending before your former City agency for compensation (monetary or non-monetary), regardless of whether you personally participated in that matter. This ban applies for one year after leaving City service. It applies to attempts made personally or through an agent, and it applies to matters pending before any City agency in which you served during the 24 months before leaving City service.

If you are an elected official or held one of the positions listed below in the 24 months before leaving City service, your cooling-off period applies to compensated attempts to influence the actions of every City agency, regardless of whether you personally served in that agency:

Mayor's Office
Chief of Staff
Deputy Mayor
Mayoral Aide VII
Mayoral Aide VIII

City Attorney's Office
Executive Assistant City Attorney
Chief Assistant City Attorney
Senior Assistant City Attorney
City Attorney Exempt Employee

Controller's Office
Chief Deputy Controller
Principal Deputy Controller
Administrative Deputy Controller

City Council Offices
Council Aide VII
Council Aide VI

Other Offices
Board of Public Works Commissioner
General Manager
Department Chief Administrative Officer

# Revolving Door

## Example

**B**ruce recently left his position as a building inspector with the Department of Building and Safety. He has since started a consulting business in which he interacts with his former colleagues for the purpose of expediting his clients' building permits. Bruce has violated the one-year ban by being compensated to attempt to influence action at his former agency on behalf another person.

*Additional restrictions*

In addition to the City's revolving door restrictions, elected officials, the City Administrative Officer, and the 87200 filers identified on page 9 are also subject to state revolving door laws that, in some respects, are stricter than City law.

After you leave City service, state law may bar you (and possibly your new employer) from receiving any benefit from a contract that you participated in creating while with the City. Please consult the City Attorney's office if you have questions about how this provision applies to you.

*Exceptions*

Exceptions to the revolving door restrictions occur under limited circumstances, such as when you communicate on behalf of a city or other government agency.

You are not prohibited from attending social or other events at which City officials may be present. However, you are subject to the revolving door restrictions at those events, just as you would be at any other time.

# Violations

*To support the goals of the governmental ethics laws, the voters adopted a requirement that the Ethics Commission investigate and enforce against violations and, where appropriate, impose penalties.*

# Violations

**Penalties**

Late filing penalties apply to statements and reports that are not filed by their deadlines. The penalties are $10 per day (up to $100) for Form 700 and $25 per day (up to $520) for City forms, such as Form 44 or Form 60.

In addition to late filing penalties, a person who violates the GEO, the Municipal Lobbying Ordinance, the Campaign Finance Ordinance, or the related provisions of the Charter or the Administrative Code may be subject to an administrative enforcement action. Such an action can result in monetary penalties of up to the greater of $5,000 per violation or three times the amount of money that was improperly reported, contributed, spent, given, or received.

A person who knowingly, willfully, or negligently violates the law may also be subject to civil and criminal penalties. City officials and employees who violate the laws may also be subject to disciplinary action by their appointing authorities.

## Example

**A** former City employee was fined $5,000 for violating the City's post-employment laws. The former City employee admitted to receiving compensation from a client to attempt to influence his former City department within three months of leaving City service and regarding a matter in which he personally participated while employed by the department.

**Reporting wrong-doing**

If you have information about a possible violation of the governmental ethics laws, you may file a complaint. The complaint may be submitted online, in writing, in person, or by calling the toll-free, 24-hour whistleblower hotline at (800) 824-4825 or (213) 978-1999.

You may also call the Ethics Commission office to discuss the matter with an investigator. Please be sure to provide as much specific detail as possible.

Additional information about the whistleblower hotline is available on the Ethics Commission's web site.

Case 2:21-ap-00171-PS    Doc 33-4    Filed 01/27/22    Entered 01/27/22 10:15:04    Desc
Exhibit D Pt 1    Page 114 of 119

# Conclusion

*This handbook provides a general overview, to help you comply with City and state governmental ethics laws. It does not include all of the details specified in the law. Applying the law to your specific circumstances often requires analysis by the Ethics Commission or the City Attorney's office.*

**Ethics Commission advice**

Questions regarding the City's governmental ethics laws should be directed to the Ethics Commission. We are happy to help by answering general questions or providing situation-specific advice:

- **Informal advice** can be provided during regular business hours. Informal advice is kept confidential to the extent required by law but does not provide immunity in enforcement actions.

- **Formal advice** must be requested in writing, is based on specific facts about your circumstances, and must be requested *before* you take any action. The Ethics Commission has 21 days to respond after all required information has been provided. Formal advice letters are public records and are posted on the Ethics Commission's web site. If you receive formal advice and act in good faith on that advice, you are immune from administrative enforcement actions by the Ethics Commission. Immunity applies only to the person on whose behalf the advice was requested, the specific facts identified in the letter, and the law in effect at the time the letter was issued.

Contact information for the Ethics Commission is provided on page 2.

**City Attorney advice**

Questions regarding the following should be directed to the City Attorney's office:

- Conflicts of interests.
- Ralph M. Brown Act (California's "open meeting" law).
- Mass mailings at public expense.
- Misuse of public funds.

Contact information for the City Attorney's office is as follows:

James K. Hahn City Hall East
200 North Main Street, 8th Floor
Los Angeles, CA 90012

Tel: (213) 978-7100
Fax: (213) 978-8250
lacityattorney.org

# Appendix I: Gift Guide for City Officials



GIFT GUIDE FOR CITY OFFICIALS

This is a general overview of City and state laws that govern whether City officials may accept gifts from certain sources. Other restrictions or exceptions may apply, such as for travel or fundraisers. For additional guidance, please call the Ethics Commission at (213) 978-1960 or visit ethics.lacity.org.

**CAN I ACCEPT THIS GIFT?**

Start here.

**Is the gift giver a registered lobbyist or lobbying firm that lobbies your agency?**

Yes → **You may NOT accept a gift of any value from a lobbyist or lobbying firm.**

No ↓

**Is the gift giver a restricted source?**

A restricted source is a person who:
- Has entered into, performs under, or seeks a contract with your agency;
- Has attempted to influence you in the past year in a City matter that would have a direct financial effect on the gift giver; or
- Has had a license, permit, or other entitlement for use pending in the last year before you or a body of which you are a voting member.

Yes → **You may accept a gift or combination of gifts that are cumulatively valued at up to $100 per calendar year from that gift giver. However, you may never solicit a gift from a restricted source.**

Do you have to report the gifts? Yes, if the gift giver is a source of income described in your disclosure category in your agency's conflict of interests code, you must report the gift on your Form 700. If you are a Form 60 filer, you will have to report the gift on your next filing.

No ↓

**Is the gift giver a disclosable source (a person described in your agency's conflict of interests code as a source of income for your disclosure category)?**

Yes → **You may accept a gift or combination of gifts that are cumulatively valued at up to $500 per calendar year from that gift giver.**

Do you have to report the gifts? Yes.

No ↓

**You may accept the gift. Special rules may apply in certain situations. Please ask for advice.**

Do you have to report the gift? No.

Don't forget the fine print.

For elected officials, this applies to lobbyists or lobbying firm that lobbies any City agency.
For elected officials, the definition of restricted source applies to any City agency.
Gifts must be reported on your statement of economic interests if the total value of all the gifts you receive from a single disclosable source during the calendar year is at least $50. Exceptions may apply; please ask for advice.

# Appendix II: Citations

## The Public Trust

California Government Code § 87200
California Code of Regulations, Title II, §§ 18722–18740
Los Angeles Municipal Code §§ 49.5.9–49.5.10

## Financial Disclosure

California Government Code § 87200
California Code of Regulations, Title II, §§ 18722–18740
Los Angeles Municipal Code §§ 49.5.9–49.5.10

## Conflicts of Interests

California Government Code §§ 1090, 84308, 87100–87105
California Code of Regulations, Title II, §§ 18700–18720
Los Angeles City Charter §§ 222, 707
Los Angeles Municipal Code § 49.5.6

## Gifts and Travel

California Constitution Article XII § 7
California Government Code §§ 82028, 87207, 87210, 87460-87462, 89503-89505.5, 89506
California Code of Regulations, Title II, §§ 18940–18950.3
Los Angeles Municipal Code §§ 49.5.2, 49.5.8-9

## Political Activity

California Government Code §§ 3205, 3206, 84308
California Code of Regulations, Title II, §§ 18420.1, 18438.1–18438.8.
Los Angeles Municipal Code §§ 49.5.5, 49.7.11

## Lobbying

Los Angeles Municipal Code §§ 48.02, 49.5.13

## Revolving Door

California Government Code §§ 7508.5, 87406.3, 18746.3–18747
Los Angeles Municipal Code § 49.5.13

## Violations

California Code of Regulations, Title II, §§ 91000–91015
Los Angeles Municipal Code §§ 48.09, 49.5.16–49.5.18, 49.7.38, 49.7.39

# EXHIBIT 7

# City of Los Angeles
## CODE OF ETHICS
### STATEMENT OF APPROVED PRINCIPLES FOR PUBLIC SERVICE
### IN THE GOVERNMENT OF THE CITY OF LOS ANGELES
#### Adopted by Council Resolution, July 21, 1959 and Amended August 23, 1979 by Council resolution

### I
#### General Rule with Respect to Conflicts of Interest

Persons in the public service shall not engage in nor shall they have any interest, direct or indirect, in any business or transaction, nor incur obligation which is in substantial conflict with the proper discharge of their official duties in the public interest or which impairs their independence of judgment in the discharge of such duties.

### II
#### Actions and Conduct Designed to build Public Confidence

Persons in the public service shall not only be ever conscious that public service is a public trust but also shall be impartial and devoted to the best interests of the City, and shall so act and conduct themselves, both inside and outside the City's service, as not to give occasion for distrust of their impartiality or of their devotion to the city's best interests.

### III
#### Acceptance of Favors and Gratuities

Persons in the public service shall not accept money or other consideration or favors from anyone other than the City for the performance of an act which they would be required or expected to perform in the regular course of their duties; nor shall such persons accept any gifts, gratuities or favors of any kind which might reasonably be interpreted as an attempt to influence their actions with respect to City business.

### IV
#### Use of Confidential Information

Persons in the public service shall not disclose confidential information acquired by or available to them in the course of their employment with the City, or use such information for speculation or personal gain.

### V
#### Use of City Employment and Facilities for Private Gain

Persons in the public service shall not use, for private gain or advantage, their City time or the City's facilities, equipment or supplies, nor shall they use or attempt to use their position to secure unwarranted privileges or exemptions for themselves or others.

### VI
#### Contracts With the City

Persons in the public service shall not exercise any discretionary powers for, or make any recommendations on behalf of or to the City or any department or officer thereof with respect to any contract or sale to which the City or any department thereof is a party and in which such persons shall knowingly be directly or indirectly financially interested.

### VII
#### Outside Employment Impairing Service to the City

Persons in the public service shall not engage in outside employment or business activity which involves such hours of work or physical effort that it would or could be reasonably expected to substantially reduce the quality or quantity of work or interfere with such persons' giving a full day's labor for a full day's pay.

### VIII
#### Outside Employment Incompatible With Official Duties

Persons in the public service shall not engage in any outside employment which involves the performance by them of any work which will come before them as officers or employees of the City, or under their supervision, for approval or inspection; provided that nothing in this paragraph shall be taken to limit in any manner the outside employment of such persons where the interests of the City are protected under Section 222 of the Charter and ordinances adopted thereunder.

### IX
#### Personal Investments

Persons in the public service shall not make personal investments in enterprises which they have reason to believe may be involved in decisions or recommendations to be made by them, or under their supervision, or which will otherwise create a substantial conflict between their private interests and the public interest. If, however, persons in the public service have financial interests in matters coming before them, or before the department in which they are employed, they shall disqualify themselves from any participation therein.

### X
#### Discussion of Future Employment

Persons in the public service shall not negotiate for future employment outside the City service with any person, firm, or organization known by such persons to be dealing with the City concerning matters within such persons' areas of responsibility or upon which they must act or make a recommendation.

### XI
#### Conduct with Respect to Performance on the Job

Persons in the public service shall perform their duties earnestly, economically and efficiently.

### XII
#### Activities Incompatible With Official Duties and the Reporting of Improper Government Activities

Persons in the public service shall not engage in any improper governmental activity or in any actions or practices which should interfere with the proper performance of the duties of others. Persons in the City service are strongly encouraged to fulfill their own moral obligations to the City by disclosing to the extent not expressly prohibited by law, improper governmental activities within their knowledge. No officer or employee of the City shall directly or indirectly use or attempt to use the authority or influence of such officer or employee for the purpose of intimidating, threatening, coercing, commanding, or influencing any person with the intent of interfering with that person's duty to disclose such improper activity.

### XIII
#### Loyalty

Persons in the public service shall uphold the Federal and California State Constitutions, laws and legal regulations of the United States, the State of California, the City of Los Angeles, and all other applicable governmental entities therein.

### XIV
#### Equal Employment Opportunity

Persons in the public service shall not, in the performance of their service responsibilities, discriminate against any person on the basis of race, color, national origin, ancestry, sex (including sexual harassment and gender identity or expression, which includes actual or perceived transgender status), sexual orientation, age, religion, creed, marital status, disability, medical condition (cancer or genetic characteristics), HIV/AIDS (acquitted or perceived) or retaliation for having filed a discrimination complaint or participating in a protected activity; and they shall cooperate in achieving the equal employment opportunity goals and objectives of the City.

(Updated 7/05)