Alan A. Meda (#009213)
BURCH & CRACCHIOLO, P.A.
702 East Osborn Road, Suite 200
Phoenix, Arizona 85014
Tel: 602.274.7611
ameda@bcattorneys.com

*Attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>PAUL OLIVA PARADIS,<br><br>Debtor. | Chapter 7<br><br>Case No.: 2:20-bk-06724-PS |
| CITY OF LOS ANGELES,<br><br>Plaintiff,<br><br>v.<br><br>PAUL OLIVA PARADIS,<br><br>Defendant. | **Adv. No.: 2:21-ap-00171-PS**<br><br>**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS** |

Defendant Paul Oliva Paradis ("Paradis"), through counsel, hereby submits this response in support of his *Motion to Dismiss* filed at Dkt. 67. This reply is supported by the following:

## I.    INTRODUCTION

On June 7, 2022, United States District Judge Stanley Blumenfeld sentenced the former Chief Cyber Risk Officer of the Los Angeles Department of Water and Power ("LADWP"), David Alexander, to serve a 48-month prison sentence for having lied to the Federal Bureau of Investigation (the "FBI"). In sentencing Mr. Alexander, Judge Blumenfeld spoke of "the culture of corruption at the DWP."

The "culture of corruption" that Judge Blumenfeld spoke of was first brought to the attention of the FBI and federal prosecutors by the debtor in this case, Paul Paradis ("Paradis" or "Debtor") in March 2019. Beginning in March 2019 and continuing for a

period of 15 months thereafter, Paradis volunteered to work covertly, as an undercover operative with the FBI to expose the widespread corruption and illegal activities routinely engaged in by senior ranking Los Angeles City officials employed in the Los Angeles City Attorney's Office, Mayor Eric Garcetti's Office and at the LADWP. The significance of Paradis' undercover role in the investigation has been demonstrated to this Court by the fact that federal prosecutors appeared before this Court on two separate occasions and made the unprecedented request that this personal bankruptcy proceeding be stayed in order to prevent possible interference with the U.S. Attorney's ongoing criminal probe.

In July 2019, acting on information provided by Paradis, the FBI executed federal search warrants at the Los Angeles City Attorney's office, LADWP's Executive offices, the LADWP Board of Commissioner's offices and a private Beverly Hills, California based law firm. During these raids, the FBI seized evidence that has - thus far - resulted in guilty pleas by three senior ranking Los Angeles city officials, including Thomas Peters, the third highest-ranking member of the City Attorney's Office.

Remarkably, Mr. Peters, who agreed to plead guilty to aiding and abetting a $1 million extortion scheme and is facing a possible 20-year jail sentence, was directed to engage in this criminal act by Los Angeles City Attorney Michael N. Feuer ("Feuer"), himself. Feuer directed Peters to engage in this criminal activity because Feuer was seeking to prevent public disclosure of documents that contain highly damaging information that would have been devastating to Feuer's own personal reputation and career, as well as the reputation of Feuer's office, if publicly released. As detailed in Peters' Plea Agreement, the City Attorney's Office became enmeshed in the $1 million extortion scheme in November and December of 2017 to prevent these highly damaging documents - concerning the "collusive litigation scheme" that secretly had been used to settle the *Jones v. City of Los Angeles* case - from becoming public. Preventing the public disclosure of these highly damaging documents was critical to Feuer because these documents make clear that the "collusive litigation scheme" was the brainchild of

Feuer's Chief Deputy, James P. Clark ("Clark") and demonstrate the intimate involvement of the City Attorney's Office in this scheme.

On April 11, 2022, the City Attorney's Office was forced to admit that it had spoliated evidence of criminal conduct by Feuer, among others, when it admitted that it could not produce the very documents that lie at the very heart of the $1 million extortion scheme – which were hand delivered to Chief Deputy Clark's office on October 20, 2017, and which were the subject of the extortion scheme meeting attended by Feuer, Peters, Feuer's Chief of Staff, Leela Kapur and LADWP General Counsel Joseph A. Brajevich on December 1, 2017 in Feuer's personal office on the 8th floor of Los Angeles City Hall - East.

Paradis has – and is continuing to – provide evidence of the criminal and unethical conduct engaged in by Feuer and other City officials to the FBI, federal prosecutors and the Office of Chief Trial Counsel for the State Bar of California and plans to file a motion to disqualify both the Los Angeles City Attorney's Office and its outside counsel, Brown George Ross O'Brien Annaguey & Ellis LLP, from serving as counsel for the City in the bankruptcy and any other matter involving Paradis due to irreconcilable conflicts arising from the involvement of these individuals in a number of criminal and unethical schemes that these individuals participated in that are currently under investigation.[1]

Paradis' anticipated motion to disqualify has been necessitated, in part, by the ongoing misconduct that both the City Attorney's Office and Brown George Ross O'Brien Annaguey & Ellis LLP continue to engage in, which includes, but is not limited

---

[1] The Office of Chief Trial Counsel of the State Bar of California has opened and is actively conducting Attorney Misconduct Investigations into the illegal and unethical activities engaged in by: (i) Michael N. Feuer – Case No. 22-O-00978; (ii) Leela Kapur – Case No. 22-O-00979; (iii) James P. Clark – Case No. 22-O-00980; (iv) Thomas H. Peters – Case No. 22-O-00981; (v) Joseph A. Brajevich – Case No. 22-O-00983; (vi) Meldon E. Levine – Case No. 22-O-00987; (vii) Richard Tom – Case No. 22-O-00985; (viii) Deborah Dorny – Case No. 22-O-00986; and (ix) Maribeth Annaguey – Case No. 22-O-00988.

to, knowingly filing false pleadings with this Court, including the Amended Adversary Complaint that is at issue by and through this instant motion to dismiss.

Given the ongoing nature of both the criminal investigation and the California State Bar investigation and the misconduct engaged in by senior ranking City officials, it should not surprise this Court to learn that, as recently as May 24, 2022, the LADWP Board of Commissioners retained white collar criminal counsel, Paul Hastings LLP, to "***represent and advise the Board as needed with respect to the ongoing federal investigation in the matters pertaining to the class action settlement in the Antwon Jones v. City of Los Angeles and related matters*** …." *See* Exhibit 1 hereto. (Emphasis added). Of particular concern to former LADWP Board President Mel Levine and current LADWP Board President Cynthia McClain-Hill is the role that each of them played in illegally bid rigging the Ardent Cyber Security Solutions, LLC contract in March and April 2019, while falsely stating publicly that the Ardent contract had been "competitively awarded."

It is against this backdrop that Debtor has moved to dismiss the City's Amended Adversary Complaint. As explained in Debtor's opening brief, the Amended Adversary Action should be dismissed for several reasons, including, but not limited to:

1. the City has failed to state a claim for fraud under Section 523(a)(2);

2. Debtor is not a fiduciary for purposes of Section 523(a)(4); and

3. the City has failed to plead "willfulness," a requirement for a Section 523(a)(6) claim.

Furthermore, the City should be sanctioned pursuant to this Court's inherent powers for spoliating documents and for knowingly asserting patently false claims in the Amended Adversary Complaint.

Based on the foregoing, Debtor respectfully requests that this Court dismiss the Amended Adversary Action, in its entirety, and impose sanctions as the Court finds appropriate.

## II. ARGUMENT

### A. THE CITY'S FIRST CLAIM FOR RELIEF (FRAUD) MUST BE DISMISSED

#### 1. The City Has Failed to Allege Any Misrepresentation of Material Fact

A party alleging non-dischargeability of debt for fraud, as the City is attempting to do, here, must allege all of elements of actual fraud incident to creation of a debt including the making of a false representation of material fact. *Urban v. BSC West, LLC (In re Urban)*, 2014 Bankr. LEXIS 1669, *43 (9th Cir. 2014). It is axiomatic - "true representations are not actionable as fraud." *Thompson v. Walz*, 1989 Minn. App. LEXIS 363, *7 (1989) (citing *Davis v. Re-Trac Manufacturing Corp.*, 276 Minn. 116, 117 (Sup. Ct. 1967)). Additionally, "materiality" of statements cannot be demonstrated when the purported misrepresentation (or omitted information) is already disclosed to the public, at large. *See*, *e.g.*, *White v. H & R Block, Inc.*, Civ. 02-8965 MBM, 2004 U.S. Dist. LEXIS 14522, 2004 WL 1698628, *12 (S.D.N.Y. July 28, 2004) (dismissing claims because the allegedly omitted fact was disclosed in the press).

As explained in Debtor's opening papers, the City cannot allege fraud because the City has failed to allege even a single representation purportedly made by Debtor that is false. Numerous documents that are part of the public record, four of which were authored by the City, itself, make clear that, by at least as early as 2009, the City had been informed of and openly admitted that it lacked critical IT project management capabilities and necessary IT resources. *See* Exhibits A-F to Debtor's Second Request for Judicial Notice.

For example, *the City, itself*, once again openly admitted recently – that the City lacks critical IT project management capabilities and necessary IT resources – the very information that the City claims Debtor misrepresented to induce the City to award the Contract to Aventador.

During a September 14, 2021 LADWP Board meeting, LADWP Board President McClain Hill addressed the state of the City's IT hiring situation, referring to it as

"mission critical." In particular, President McClain-Hill noted, that, as of September 14, 2021, hiring necessary IT resources "continues to be a struggle" that has "persist[ed]," citing the fact that, out of 610 fully funded positions in the City's IT department, 108 remain open and unfilled, an amount equal to almost 20%. http://ladwp.granicus.com/MediaPlayer.php?view_id=2&clip_id=1814 (RJN Ex. F) at 1:19 – 1:35.

Statements such as those made by President McClain Hill concerning the City's lack of IT personnel demonstrate that the City has failed to allege that Debtor made any misrepresentations.

The City's fraud claim further fails because all of the information that the City claims was misrepresented by Debtor concerning the City's IT personnel was already disclosed to the public, years earlier. Accordingly, the City has failed to allege materiality.

The City raises several arguments in response to the foregoing. *First*, the City argues that Debtor improperly attacks facts asserted in the complaint. Opp. at 7. *Second*, the City contends materiality cannot be determined as a matter of law at this motion to dismiss stage. Opp. at 10. *Third*, the City claims that publicly available information does not render the alleged misrepresentations immaterial. Opp. at 11. *Fourth,* the City falsely claims that it has alleged reliance. As demonstrated below, each of these arguments fails.

**B.     The Motion to Dismiss Does Not Improperly Attack The Veracity Of the Complaint**

The City seeks to sidestep Debtor's argument that the City has failed to plead any misrepresentations by claiming that Debtor is inappropriately attacking the factual veracity of the Complaint's allegations, not the sufficiency of the pleading. Opp. at 7. This argument, however, fails, because, even on a motion to dismiss, the Court is not "required to accept as true allegations that are merely conclusory, **unwarranted**

deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (emphasis added).

The City's allegations that Debtor had misrepresented the City's IT vulnerabilities, while, at the same time, the City, itself, was publicly admitting the existence of these very same IT vulnerabilities, is both an "unwarranted deduction of fact" and an "unreasonable inference." Simply stated, it is not plausible for the City to state a claim for fraud based on allegations that Debtor's statements somehow constituted "misrepresentations," while the City was, at the very same time, making these same statements[2] to the public at large.[3]

## C. Materiality Can Be Determined At This Pleading Stage

The City does not dispute Debtor's argument that the City has failed to plead materiality. Rather, the City only argues that materiality can never be decided on a motion to dismiss. Court's, however, can and do make determinations regarding materiality at the motion to dismiss stage.

---

[2] The City claims that Debtor has not moved to dismiss its "false pretense" claim, and that Debtor only moves to dismiss its "false representation" claim. *See* Opp. at 5. This statement is untrue, as the very same deficient allegations that underlie its claim for false representations underlie the City's purported claim for false pretenses, which is precisely why the City has sought to plead such claims in the alternative. The City's false pretense claim, therefore, fails for the very same reasons that its false representation claim fails.

[3] The City attempts to walk away from its "misrepresentation" claims by pointing to omissions concerning David Wright's prospective economic interest in the Aventador Contract. Opp. at 9. Significantly, the City argues that it was David Wright who failed to disclose to the Board Wright's prospective economic interests, not Debtor. As explained in Debtor's opening brief (a point that was not refuted by the City in its Opposition), LADWP's bidding rules strictly prohibit vendors, such as Aventador and Debtor, and Board members from communicating with each other prior to the execution of an awarded contract. LADWP's Rules state:

> *Any verbal or written communications between any Proposer (potential or actual), or its representatives and any LADWP [Board] Commissioner, employee, or contracted consultant regarding this procurement are strictly prohibited from the date of RFP advertisement through the date of the execution of the contract*

*See, e.g.*, RFP 90530 (release date June 17, 2019) at I-5.

Accordingly, any duty relating to this omission was that of David Wright's, not Paradis', as even the City admits. Amd, Cplt. ¶ 31.

For example, in *Gbelia v. Nationstar Mortgage, LLC*, the District of Arizona found that, given the contradictory nature of the allegations asserted in plaintiff's complaint regarding the purported misrepresentations, "plaintiff's allegations of materiality are implausible." 2016 U.S. Dist. LEXIS 36231, *14 (D. Az. March 18, 2016). Accordingly, the *Gbelia* court granted defendant's motion to dismiss because plaintiff had failed to allege materiality, and, therefore, failed to state a claim.

Similarly, in *In re Apple Inc. Device Performance Litig.*, the Northern District of California dismissed plaintiff's CLRA/fraudulent omissions claim because, even at the pleading stage, "both common sense and Plaintiff's own allegations here undercut the materiality element." 347 F. Supp. 3d 434, 460-461 (N.D. Ca. 2018).

Here, as in *Gbelia* and *Apple*, the fact that the City, itself, publicly admitted, as fact, the very same information that the City now alleges that Debtor misrepresented, "undercuts the materiality element," thereby rendering the "the City's allegations of materiality [] implausible," a determination that this Court can readily decide on a motion to dismiss. *Gbelia*, 2016 U.S. Dist. LEXIS 36231, *14; *Apple*, 347 F. Supp. 3d 434, 460-461. *See also U.S. ex rel. Ling v. City of L.A.*, 2018 U.S. Dist. LEXIS 136589, *51 (C.D. Ca. July 25, 2018) ("We reject the assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment") (internal citations omitted); *U.S. ex rel. Martinez v. Orange Cty. Global Med. Ctr., Inc.*, 2017 U.S. Dist. LEXIS 221085, *7-9 (C.D. Ca. Sept. 14, 2017) (granting motion to dismiss FCA claim for failure to plead materiality); Kester v. CitiMortgage, Inc., 177 F. Supp. 3d 1150, 1159-1160 (D. Az. 2016)(granting motion to dismiss claim under Ariz. Rev. Stat 33-420(A) for failure to plead materiality); *Berenblat v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 80734, *23 (N.D. Ca. Aug. 21, 2009) (granting motion to dismiss CLRA claim for failure to plead materiality).

The foregoing cases demonstrate the falsity of the City's claim that materiality cannot be determined on a motion to dismiss.

The City further attempts to refute Debtor's argument concerning materiality by claiming that the cases cited by Debtor in Debtor's opening papers only involve securities fraud, and that the U.S. Securities laws require a different pleading standard for materiality. None of the cases cited above, however, involve securities fraud; further demonstrating the fallacy of the City's argument.

Because the City cannot plausibly plead materiality and materiality most certainly can be decided at the pleading stage, the City has failed to state a claim for fraud.

### D. Publicly Available Information Negates The Purported Materiality of The Alleged Misrepresentations

As explained in Debtor's opening papers and above, the sheer existence of the many statements made by the City, itself, concerning the City's IT resources and needs demonstrates that the City cannot plausibly plead materiality. The City argues, however, that public disclosures can only negate the element of materiality in *omission* cases, not *misrepresentation* cases. Opp. at 11. This is not a true statement of law. Despite the City's protestations to the contrary, "the Ninth Circuit has held that [] *disclosures negate any claimed misrepresentation*." *Roley v. Google*, 2020 U.S. Dist. LEXIS 250987 (N.D. Ca. July 20, 2020) (emphasis added) (denying class certification, citing *Mazza v. Am. Honda Motor Co*., 666 F.3d 581 (9th Cir. 2012) and *Berger v. Home Depot USA, Inc*., 741 F.3d 1061, 1068 (9th Cir. 2014).

In *Berger*, the Ninth Circuit very specifically held that "explicit signs or explicit verbal advice" given by Home Depot would, in fact, "negate the claimed misrepresentation" asserted by plaintiff. Significantly, the *Berger* court did not limit its holding to "omissions," as the City suggests would be the case.

Accordingly, the City's representations, like those in *Berger*, negate the City's claimed misrepresentations purportedly made by Debtor.

**E.     The City Has Failed to Allege Reasonable Reliance**

Furthermore, in light of the fact that the City has failed to plead any material misrepresentation, the City cannot, therefore, plead reasonable reliance. "Without a misrepresentation, there can be no evidence of reasonable reliance on it, and ultimately, no actionable fraud or negligent misrepresentation." *United Tv Broad. Sys. v. Rancho*, 2008 Cal. App. Unpub. LEXIS 7590, *35 (2008) (*citing City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 481-482 (1998)).

In response to this argument, the City, in line with its usual approach, merely states that it has, indeed, alleged reliance and points to its boilerplate allegation stating, the City "reasonably and justifiably relied on Paradis." Opp. at 13 (citing Amd. Cplt. ¶¶ 16, 100). The City, however, fails to provide any support for its conclusory statement. Further, the City does not address Debtor's argument that, as a matter of law, without a material misrepresentation, there can be no reliance. *United Tv Broad. Sys. v. Rancho*, 2008 Cal. App. Unpub. LEXIS 7590, *35.

Accordingly, the City has failed to state a claim for fraud under Section 523(A)(2)(a) based upon the allegations asserted in Subpart A.

**F.     Subpart B (of the First Claim for Relief) Must Be Dismissed Because It Is Based On False Allegations That Are Intended To Mislead The Court**

As explained previously, Subpart B of the City's First Claim For Relief, is brought on grounds of fraud pursuant to Section 523(A)(2)(a), and is primarily based on allegations concerning the award of the Ardent Contract. The City alleges that conduct purportedly engaged in by Paradis, beginning in April of 2019, ***after Paradis began working undercover for and at the direction of the FBI***, caused the City to award the Ardent Contract to Ardent.[4] Simply stated, because Paradis was working at the direction

---

[4]  Specifically, the City alleges that, in April 2019, Paradis, along with the LADWP's then Chief Cyber Risk Officer, David Alexander, purportedly began manipulating the LADWP and SCPPA's process for awarding the Ardent Contract to ensure that Ardent would be selected to receive the Ardent Contract. Amd. Cplt. ¶ 50-78. The City alleges that Paradis purportedly

of the FBI, as a confidential informant and government agent, in connection with the award of the Ardent Contract, Paradis is immune from any purported liability arising out of those acts.

The City's opposition makes two points crystal clear regarding these allegations:

*First*, the City asserted these allegations with direct knowledge that such allegations were false and could not serve as the basis of any fraud claim, thereby violating 18 U.S.C. § 157 (bankruptcy fraud), Rule 11 of the Federal Rules of Civil Procedure, and a host of ethical rules governing attorney conduct.

*Second*, the City continues its blatant effort to defraud this Court by knowingly misrepresenting the law concerning the City's ability to assert these claims. The Court must see the City's illegal acts for what they are and, at the very least, dismiss the allegations set forth in Subpart B in its entirety.

In Debtor's opening brief, Debtor explained that actions undertaken at the direction of the government cannot form the basis of a claim for fraud asserted by the City. The City responded by falsely characterizing Debtor's argument as "bizarre" and then by simply stating, without any legal justification, whatsoever, that Debtor is incorrect. Contrary to the City's assertions, Debtor's argument is neither "bizarre" nor incorrect. In fact, Debtor's position is codified by statute, *i.e.*, the Westfall Act (governmental immunity under 28 U.S.C. §§ 2671, 2674, 2679), and is well recognized by courts.

For example, in *U.S. Tobacco Coop., Inc. v. Big South Wholesale of Va., LLC ("U.S. Tobacco")*, corporate defendant and government informant, Big Sky Co., moved for summary judgement on plaintiff's various state law claims including fraud and breach of contract. Specifically, Big Sky moved on the grounds that the complained of

---

bribed Alexander by offering him a future position at Ardent, in exchange Alexander's efforts to secure the Ardent Contract for Ardent. *Id.* Finally, the City alleges that had it been aware of Paradis' participation in the purported scheme with Alexander, the City would have never awarded the Ardent Contract to Ardent. *Id.*

acts were all undertaken by Big Sky at the direction of the government during a covert operation, and, therefore, could not serve as the basis for civil liability. The *U.S. Tobacco* court granted summary judgment in favor of Big Sky reasoning that, as an agent of the government, governmental immunity prohibited plaintiff's state law claims against Big Sky. In granting summary judgment, the *U.S. Tobacco* court stated in relevant part:

> ***The liability of private defendants for actions taken at the direction of [federal] agents acting within their authority is a unique federal interest. Private businesses and individuals provide invaluable assistance as informants who provide evidence against law violators or, as in this instance, lend credibility to [ATF] undercover operations. If private businesses were not eligible for immunity from state law claims arising from assisting undercover federal operations, this would provide a major disincentive to assisting law enforcement and would undermine the needs and interests of the federal government.***

*U.S. Tobacco*, 365 F. Supp. 3d 604, 616 (E.D. N.C. 2019)(emphasis added).

In light of the fact that all the acts alleged to have been undertaken by Big Sky were undertaken at the direction of the federal government, Big Sky was acting as a government agent, and, therefore, was entitled to immunity from prosecution for such acts. Accordingly, the *U.S. Tobacco* court dismissed all of the claims asserted against Big Sky. *Id*.

In a separate and related decision, the Fourth Circuit explained the genesis of this immunity – the Westfall Act (28 U.S.C. §§ 2671, 2674, 2679), which immunizes federal agents from actions taken during the scope of their employment. *U.S. Tobacco Coop., Inc. v. Big South Wholesale of Va., LLC,* 899 F.3d 236 (4th Cir. 2018). The Fourth Circuit explained that because confidential informants are actually agents of the government, confidential informants, such as Paradis, are entitled to governmental immunity. *Id.* at 248. In such cases, the proper procedure is for the plaintiff, here, the City, to substitute the United States as a defendant for all claims arising out of actions taken by Paradis while he was working as a confidential informant. *Id.* at 260. Of course, the City has failed to follow this procedure.

Regardless, because ***all*** of the actions undertaken by Debtor in connection with the Ardent Contract, as alleged by the City in Subpart B of the First Claim for Relief, were undertaken at the direction and under the supervision of the FBI – a fact confirmed by numerous government authored documents – such actions cannot serve as the basis for the City's fraud claim against Debtor. Accordingly, Debtor respectfully requests that this Court dismiss these allegations.

## III. THE CITY'S SECOND CLAIM FOR RELIEF (BREACH OF FIDUCIARY DUTY/DEFALCATION) MUST BE DISMISSED

### A. Debtor Was Not A "Fiduciary" To The City, As Defined By Ninth Circuit Bankruptcy Law

The City's Second Claim for Relief is brought for breach of fiduciary duty/defalcation under Section 532(a)(4). Section 523(a)(4) excepts from discharge a debt "for … defalcation while acting in a fiduciary capacity." A debt is non-dischargeable under § 523(a)(4) where "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." In re Niles, 106 F.3d 1456, 1459 (9th Cir. 1997).

As explained in Debtor's opening brief, the Ninth Circuit permits defalcation cases to proceed in only a very narrow, limited number of circumstances – where the debtor was a fiduciary of an express trust; which is absolutely not the case, here. *In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003). ***The City's opposition does not address this rule of law and instead cites to one extra-jurisdictional, non-binding case from Virginia.*** This Court is bound to follow Ninth Circuit law and dismiss the City's Section 532(a)(4) claim in its entirety.

As explained previously, the Ninth Circuit has "adopted a narrow definition of 'fiduciary' for purposes of § 523(a)(4)." *In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003). The broad general definition of fiduciary, *i.e.*, "a relationship involving confidence, trust and good faith--***is inapplicable in the dischargeability context***." *In re Short*, 818 F.2d 693, 695 (9th Cir.1987) (emphasis added). "This circuit requires that for the purposes of § 523(a)(4) the debtor must have been *a trustee in the strict or narrow*

*sense* through an expressed or technical trust." *Banks v. Gill Distrib. Centers, Inc.*, 263 F.3d 862, 871 (9th Cir. 2001) (emphasis added).

The elements of an express trust are: (i) sufficient words to create a trust; (ii) a definite subject; and (iii) a certain and ascertained object or res. "The intent to create a trust relationship rather than a contractual relationship is the key element in determining the existence of an express trust." *In re Thornton,* 544 F.2d 1005, 1007 (9th Cir. 1976).

Here, Debtor was not a "fiduciary" to the City, as defined by the Ninth Circuit's narrow interpretation of bankruptcy law, because Debtor was not a "trustee …through an expressed or technical trust." Rather, Paradis's company, Aventador, was only ever in a contractual relationship with the City. The City does not even attempt to plead that Debtor was a "trustee …through an expressed or technical trust," but instead argues "Paradis was temporarily performing a public function" thereby creating a "public trust." Opp. at 15-16. These allegations do not even begin to meet the Ninth Circuit standard that this Court is required to follow. *See, e.g., In re Chavez*, 430 B.R. 890, 893-94 (Bankr. D. Ariz. 2010) (granting summary judgment on defalcation claim against creditor and holding "***in the end, this court must of course follow the path laid out by the Ninth Circuit. And that path is a conservative one, requiring some sort of actual trust relationship, not just a generalized duty of loyalty***.") (Emphasis added).

Based on the foregoing, the City has not stated a claim for defalcation. Accordingly, the City's Second Claim for relief for fraud must be dismissed.

## IV. THE CITY'S THIRD CLAIM FOR RELIEF (WILLFUL/INTENTIONAL INJURY) MUST BE DISMISSED

### A. The City Has Failed To Plead That Debtor Had A Subjective Intent To Injure the City

Section 523(a)(6) excepts from discharge a debt for willful and malicious injury by the debtor to another. In this Circuit, Section 523(a)(6) has been interpreted to require that the court apply a two-pronged test in determining the dischargeability of a debt. The first prong requires a creditor to prove that a debtor's conduct in causing the claimant's injuries was willful. The second prong requires a creditor to prove the

debtor's conduct was malicious. *Carrillo v. Su (In re Su),* 290 F.3d 1140, 1146-47 (9th Cir. 2002).

To satisfy the willfulness prong, the creditor must allege that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the *consequences of his act, not just the act itself. See Kawaauhau v. Geiger,* 523 U.S. 57, 61-62 (1998) (emphasis added). The Ninth Circuit has further explained that a debtor must possess a subjective motive to inflict injury. *In re Su,* 290 F.3d at 1143. Thus, a creditor cannot prevail in an action brought under Section 523(a)(6) unless it is alleged that the debtor had actual intent to inflict the very harm of which the creditor complains.

The City cannot satisfy the element of willfulness because the City has failed to allege that Paradis subjectively intended to injure the City by taking $23 million for work that was not performed by Aventador. The City cites to the Paradis Plea Agreement claiming that the statements contained therein constitute admissions that Paradis intended to inflict injury upon the City. Amd. Cplt. ¶¶ 81-82. The statements contained in the Paradis Plea Agreement are not statements or admissions concerning the intentional "consequences" of any acts purportedly committed by Paradis. *Dominguez v. Elias (In re Elias)*, 302 B.R. 900, 906 (Bankr. D. Idaho 2003). Stated differently, these allegations do not demonstrate that Paradis intended to injure the City in any monetary amount – the injury of which the City complains.

**V.    THE CITY HAS ADMITTED THAT IT SPOLIATED CRITICAL EVIDENCE**

In his opening papers, Debtor demonstrated that the City spoliated critical evidence of the City's own illegal conduct and, therefore, requested that this Court sanction the City by terminating this action. In its Opposition, the City does not deny that it spoliated critical evidence and, instead, only disputes whether terminating sanctions are appropriate. The City's response must speak volumes to this Court – the City of Los Angeles has now impliedly admitted that it spoliated key evidence that the

City engaged in illegal conduct. This admission is a foregone conclusion, as Debtor's opening papers, which are briefly summarized below, clearly demonstrate that the City, in fact, engaged in spoliation.

The Amended Adversary Complaint is rife with false allegations. Specifically, the City has falsely alleged that it was defrauded into awarding both the Aventador and Ardent Contracts – two contracts that arose from work generated as a result of the *Jones Settlement*. Amd. Cplt. ¶¶ 14-18. The *Jones Settlement*, however, was, itself, the product of the collusive scheme that was conceived of, supervised and directed by Los Angeles Chief Deputy City Attorney James P. Clark. The City's long running knowledge of the collusion underlying the *Jones Settlement*, and therefore, underlying the Contracts, directly undercuts the City's allegations, here, that the Contracts were awarded as a result of some fraud purportedly committed by Debtor.

Although Debtor requested the production of critical documents that would demonstrate the City's knowledge of the collusion involved in the Jones Settlement, the City, on April 11, 2022, informed Debtor that it was no longer in possession of such documents, which constitutes spoliation. *See* Declaration of Alan Meda ("Meda Decl" at Dkt. 68 Ex. 7 (previously submitted).

To determine whether spoliation has occurred, courts employ a three-part test: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Medina v. Boeing Co.*, 2022 U.S. Dist. LEXIS 38408, *7 (C.D. Ca. Jan. 27, 2022).

Debtor's opening brief demonstrated that each of the foregoing elements is easily satisfied; a fact that the City does not – because it cannot -- deny.

Accordingly, based on the foregoing, the arguments made in Debtor's opening papers and the City's April 11, 2022 admission, that it did, in fact, spoliate the

documents, this Court must find that the City's conduct in destroying the documents that it once possessed, constitutes spoliation.

## VI. THIS COURT MUST SANCTION THE CITY BY TERMINATING ITS ADVERSARY PROCEEDING AGAINST DEBTOR

Courts retain broad discretion to control their dockets and "[i]n the exercise of that power they may impose sanctions, including where appropriate, default or dismissal." *Adams v. California Dep't of Health Servs*., 487 F.3d 684, 688 (9th Cir. 2007) (quoting *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986)). "[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."*Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (quoting *Wyle v. R.J. Reynolds Industries, Inc*., 709 F.2d 585, 589 (9th Cir. 1963))

Here, dismissal as a sanction is warranted for at least two reasons. First, as explained above, as well as in more detail in Debtor's opening brief, the City has spoliated critical evidence that demonstrates that its filing of this very Action is a sham. Second, the City continues to advance fallacious and patently false allegations before this Court. Debtor brought this illegal and unethical conduct to the attention of the Arizona State Bar, which has now determined that, given this Court's familiarity with this Action, this Court is better suited to address the City's fraudulent conduct. The City must be held accountable for flagrant and continuing misconduct and terminating the City's sham Adversary Action, is both a necessary and appropriate step in achieving such accountability.

### A. This Action Must Be Terminated Because The City Spoliated Relevant Documents

After determining that spoliation has occurred, as the City has admitted has occurred here, the Court must next determine whether terminating sanctions are appropriate. *Medina*, 2022 U.S. Dist. LEXIS 38408, *9. In making this determination, the Court must consider the following five factors: "(1) the existence of extraordinary

circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) whether lesser sanctions would be more appropriate, and (4) the relationship between the sanction, misconduct, and matters in controversy." *Id.*

Given the fact that the documents are not only highly relevant to demonstrating the bad faith and falsity of the City's allegations here, but that the spoliated documents also lie at the very heart of an extortion scheme directed by the City Attorney's office and Los Angeles City Attorney Michael Feuer, himself, which has been admitted to by Thomas Peters, the former Chief of the Civil Division of the Los Angeles City Attorney's Office in Peters Plea Agreement, all five of these factors are easily satisfied. Accordingly, terminating sanctions are appropriate, here.

The City offers no real response to Debtor's request that this action be terminated as a result of the City's spoliation. The City merely speculates that, if anyone, specifically, destroyed the documents sought by Paradis, it was likely attorney Thomas Peters, who no longer is employed by the City. Opp. at 19-20. Conveniently, the City ignores the fact that it was the City's obligation to preserve this critical evidence. Additionally, even if Mr. Peters did destroy the documents, he did so while acting on behalf of the City, as a City agent and employee. Such finger-pointing cannot exonerate the City from its actions of spoliation.

Accordingly, this Court must terminate this Action due to the fact that the City has engaged in spoliation.

## B. This Action Must Be Dismissed Because The City Has Knowingly Asserted False Allegations

This Action must also be terminated because the City has continued to assert false allegations against Debtor, namely allegations claiming that Debtor engaged in fraudulent conduct in connection with the Ardent Contract when, in fact, such acts were undertaken by Debtor at the direction of the FBI. *See* Section I. F. above. *See also Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)

(upholding dismissal where party engaged in deceptive practices that undermined the integrity of the proceedings).

On April 29, 2022, Debtor submitted to the State Bar of Arizona a complaint detailing the myriad false allegations that had been asserted by the City against Debtor in this Action (the "Bar Complaint"). Debtor provided a copy of the Bar Complaint to this Court in connection with Debtor's opening papers. *See* Meda Decl. at Ex. 4. On May 25, 2022, the State Bar informed Debtor that, given this Court's familiarity with this Action, this Court has the responsibility of determining whether the Action should be dismissed due to the City's egregious conduct of filing a document containing patently false allegations. *See* **Exhibit 2** hereto.

Dismissal is appropriate where a party has "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Fjelstad*, 762 F.2d 1334, 1338. See also *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1329-30 (9th Cir. 1981), (Ninth Circuit upheld the dismissal of a complaint where the plaintiff knew that material allegations of the complaint were false).

There is no question that the City has sought to "willfully deceive the court and engaged in conduct utterly inconsistent with the orderly administration of justice" by asserting false allegations which claim that Debtor engaged in fraudulent conduct in connection with the Ardent Contract when, in fact, such acts were undertaken by Debtor at the direction of the FBI. The false allegations contained in paragraphs 65 through 78 of the Amended Adversary Action allege that:

65.    On June 17, 2019, LADWP issued the LADWP RFP for the award of three-year, $82.5 million Cybersecurity Consulting Services contract. *See* Alexander Plea, Attachment A Factual Basis ¶ 14. State and local laws and regulations required the LADWP RFP process to be a fully competitive, neutral, and transparent process in order to ensure fair competition amongst the vendors and to ensure that LADWP acquired the services of a qualified vendor that satisfied its requisite criteria. *See id.*

66.    Alexander was one of seven members of the evaluation committee that was responsible for reviewing the proposals submitted in

response to the LADWP RFP, and he signed a sworn nondisclosure agreement that he would not discuss their scoring on the proposals with anyone. *See id.* ¶ 15.

67. In late May 2019, before the LADWP RFP was issued, Alexander began his efforts to also manipulate the LADWP RFP process to favor Ardent. *See id.* ¶ 16. Alexander shared drafts of the LADWP RFP with Paradis and solicited Paradis's edits to improve Ardent's odds of being awarded the contract. *See id.*

68. After the LADWP RFP was issued, in June and July 2019, Alexander worked closely with Paradis to help him improve Ardent's proposal for submission, including by reviewing and editing drafts of Ardent's proposal. *See id.* ¶ 17.

69. On July 10, 2019, Paradis caused Ardent to submit its proposal to the LADWP RFP. *See id.* ¶ 18.

70. Working in coordination with Paradis, Alexander undertook efforts to influence the other members of the evaluation committee to rate Ardent favorably regarding its proposal for the LADWP RFP. *See id.* ¶ 19.

71. Among other similar communications, on July 9, 2019, Paradis told Alexander, via text message, that after he submitted the Ardent proposal, "it will be up to you to 'manage' the evaluators the same way you did for the SCPAA [sic] process so that we get the correct result...[winking face emoji]." Alexander responded via text message, 'I know my job [crying-laughing emoji].'" *Id.* ¶ 20.

### i. Paradis' Bribery of Alexander in Exchange for Future Task Orders for Ardent

72. In July 2019, Alexander and Paradis discussed a proposed job for Alexander as Ardent's Chief Administrative Officer with "platinum-level health insurance benefits" and c a prospective start date of in October 2019 so that Alexander could continue to improperly influence the LADWP RFP Process in Ardent's favor. *See id.* ¶¶ 24-25. At Paradis's suggestion, Alexander agreed to create a written job description of Alexander's intended role at Ardent, along with his terms and conditions for the job. *See id.*

73. Upon discovering that retiring early from the LADWP would cause him to lose retirement income, Alexander and Paradis discussed that Paradis would guarantee additional compensation from Ardent to make up for Alexander's loss in LADWP retirement income. *See id.* ¶ 28.

74. In exchange for Alexander's additional compensation from Ardent, Alexander and Paradis discussed that while Alexander remained at LADWP, he would provide certain guarantees to Paradis and Ardent in the form of future task orders from LADWP that assigned work for

which Ardent could be compensated. *See id.* Alexander would also procure task orders for Ardent's cybersecurity work under the anticipated LADWP contract, and he would also guarantee Ardent task orders for cybersecurity training. *See id.*

75.     Specifically, Alexander told Paradis that he would "guarantee" Ardent a total of $10,500,000 to $11,500,000 in task orders in two specified sectors. *Id.* Additionally, Alexander stated that he would help to push work towards Ardent in a third sector, namely remediation. *See id.*

76.     Alexander and Paradis discussed the need for Alexander to stay on longer at LADWP to deliver on these guarantees. In exchange for Alexander's agreement to stay at LADWP to secure the promised task orders to Ardent, Paradis offered to pay a bonus for the period of time Alexander stayed on at LADWP "from our deal on." *Id.*

77.     Consistent with their bribery arrangement, Alexander continued his efforts to manipulate the LADWP RFP process in Ardent's favor. *See id.* ¶ 30.

78.     In July 2019, to further implement and conceal their bribery scheme, Paradis and Alexander agreed that Ardent would issue Alexander a laptop and a secret Ardent email address for Alexander's use.

The 167-page Bar Complaint (including exhibits A-W) makes clear that all of these acts alleged by the City in the foregoing paragraphs were undertaken by Debtor *at the direction of the FBI*. *See, e.g.*, Meda Decl. Ex. 4 (Bar Complaint) at 18, Ex. R (disproving the veracity of Amended Adversary Complaint Paragraph 67)); Meda Decl. Ex. 4 (Bar Complaint) at 21, Ex. U (disproving the veracity of Amended Adversary Complaint Paragraph 68)); Meda Decl. Ex. 4 (Bar Complaint) at 21-22, Ex. V (disproving the veracity of Amended Adversary Complaint Paragraph 71)); Meda Decl. Ex. 4 (Bar Complaint) at 22, Ex. V (disproving the veracity of Amended Adversary Complaint Paragraphs 72-76)); Meda Decl. Ex. 4 (Bar Complaint) at 22, Ex. V (disproving the veracity of Amended Adversary Complaint Paragraph 78)). The City cannot escape the fact that it knowingly filed a false pleading.

Given the fact that: (i) the City knowingly filed false allegations in this Court; (ii) the City was informed of the falsity of its allegations on multiple occasions by Debtor; (iii) the City was given multiple opportunities to withdraw such allegations, yet failed to

do so, and (iv) the Arizona State Bar has determined that this Court is best suited to rule on the City's illegal actions, this Court should sanction the City by dismissing this Action.

## VII. LEAVE TO AMEND SHOULD BE DENIED

Leave to amend should not be granted when such amendments would be "futile." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 215 (9th Cir. 1988). In light of the fact that the Court has already given the City leave to replead, and the City still has not stated a claim against Paradis, any planned amendment would, therefore, be futile. Accordingly, in the event that the Court grants this Motion to Dismiss, the Court should deny the City leave to amend the Complaint.

## VIII. CONCLUSION

Based on the foregoing, Debtor requests that the Court dismiss the Amended Adversary Complaint in its entirety.

DATED this 10th day of June 2022.

BURCH & CRACCHIOLO, P.A.


By /s/ Alan A. Meda (#009213)
Alan A. Meda
*Attorney for Debtor/Defendant*

Served via ECF on CM/ECF
users this 10th day of June 2022,
which constitutes service pursuant
to L.R. Bankr. P. 9076-1:

 /s/ Tracy Dunham
Tracy Dunham