Alan A. Meda, (009213)
**BURCH & CRACCHIOLO, P.A.**
1850 N. Central Ave., Suite 1700
Phoenix, AZ 85004
Tel: (602) 274-7611
ameda@bcattorneys.com

*Attorneys for Debtor/Defendant*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| PAUL OLIVA PARADIS, | Case No. 2:20-bk-06724-PS |
| Debtor, | |
| CITY OF LOS ANGELES, | **Adv. No. 2:21-ap-00171-PS** |
| Plaintiff, | **DEBTOR'S PETITION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 2679 (d)(3) OF THE WESTFALL ACT AND MOTION TO SUBSTITUTE THE UNITED STATES AS A PARTY WITH RESPECT TO CERTAIN CLAIMS** |
| v. | |
| PAUL OLIVA PARADIS, | |
| Defendant. | |

Defendant Paul Oliva Paradis ("**Paradis**") through counsel, petitions this Court, pursuant to 28 U.S.C. § 2679 (d)(3) (the "**Westfall Act**") and respectfully requests that the Court conduct an evidentiary hearing to permit the Court to determine whether Paradis was "acting within the scope of his office or employment" when Paradis engaged in the actions alleged in Paragraphs 51–78 of the City's Amended Adversary Complaint. The United States Attorney's Office for the Central District of California has admitted in Paragraph 12 of the criminal *Information* filed in *United States of America v. David Alexander*, CR No. 2:21-CR-00572-FMO in the United States District Court for the Central District of California on December 13, 2021 (the "**Alexander Information**") that, with respect to the conduct referenced in Paragraphs 51–78 of the City's Amended Adversary Complaint, "***Paradis was acting at the direction of the FBI.***" In particular, the United States Attorney's Office for the Central District of California has admitted that

"Paradis was acting at the direction of the FBI" when Paradis met with former LADWP Chief Cyber Risk Officer, David Alexander ("**Alexander**") on April 5, 2019 "*and in all subsequent interactions with defendant ALEXANDER referenced [in the Alexander Information]*." See Alexander Information at ¶ 12.

Additionally, Paradis respectfully requests that, should the Court determine, after conducting an evidentiary hearing, that Paradis was, in fact, "acting within the scope of his office or employment" when Paradis engaged in the actions alleged in Paragraphs 51–78 of the City's Amended Adversary Complaint, the Court substitute the United States as a defendant in this adversary action with respect to *only* those claims currently asserted against Paradis in Paragraphs 51–78 of the City's Amended Adversary Complaint pursuant to 28 U.S.C. § 2679 (d)(3) and (d)(4).

## I. STATEMENT OF FACTS

On June 3, 2020, Paradis filed a petition for bankruptcy (the "**Paradis Bankruptcy**"). Paradis Bank. Docket No. 1. Shortly thereafter, the City filed a false Proof of Claim in which the City alleges that Paradis purportedly owes the City a debt of over $20 million arising out of the award of two consulting contracts. Paradis Bank. Docket Proof of Claim No. 14. The City subsequently filed the Adversary Action seeking a judgment of non-dischargeability against Paradis for such debt pursuant to 11 U.S.C §§ 523(a)(2), (a)(4) and (a)(6). Paradis Bank. Docket No. 393.

On December 7, 2021, Paradis filed a motion to dismiss the Adversary Action, which the Court granted as to all but one claim. Adversary Docket No. 20.

On March 28, 2022, the City filed its Amended Adversary Complaint, in which the City continues to falsely allege that Paradis purportedly defrauded the City into awarding Aventador Utility Solutions ("**Aventador**") and Ardent Cyber Solutions ("**Ardent**") certain contracts (the "**Aventador Contract**," the "Ardent Contract," and, collectively, the "**Contracts**"). *See, generally*, Amended Adversary Cplt.

Because the City's Amended Adversary Complaint fails to inform the Court that the acts undertaken by Paradis that are detailed in Paragraphs 51–78 of the City's

Case 2:21-ap-00171-PS    Doc 128    Filed 01/06/23    Entered 01/06/23 15:31:56    Desc
Main Document    Page 2 of 8

Amended Adversary Complaint were undertaken by Paradis "***acting at the direction of the FBI***" and, instead, falsely alleges that these acts were undertaken by Paradis in furtherance of Paradis' effort to defraud the City into awarding the Ardent Contract[1], Paradis has filed this Petition and respectfully requests that the Court conduct an evidentiary hearing to determine whether the acts undertaken by Paradis as detailed in Paragraphs 51–78 of the City's Amended Adversary Complaint were, in fact, undertaken by Paradis "***acting at the direction of the FBI***" as the United States Department of Justice has previously admitted.

In connection with such evidentiary hearing, Paradis anticipates calling the following individuals as witnesses because they are the current and former United States government officials who personally directed and supervised Paradis' activities while Paradis was working in a covert and undercover capacity as a cooperator involving the actions alleged in Paragraphs 51–78 of the City's Amended Adversary Complaint: (i) FBI Special Agent Andrew Civetti; (ii) FBI Special Agent Anthony Logan; and (iii) former Assistant United States Attorney Melissa Mills.

## II. ARGUMENT

### A. 28 U.S.C. § 2679(d)(3) of the Westfall Act

Section 2679(d)(3) of the Westfall Act provides in relevant part:

> In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment.

#### 1. The Westfall Act Applies to "Undercover Cooperators" Such As Paradis

Courts have routinely held that the Westfall Act applies to undercover cooperators such as Paradis, who were working at the direction and under the authority of the government. For example, in *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, the Fourth Circuit held that an undercover cooperator qualified as an "'employee of

---

[1] *See e.g.,* Amended Adversary Complaint at ¶ 14.

the government' for purposes of the Westfall Act" because the definition includes "'officers or employees of any federal agency' and 'persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.'" 899 F.3d 236, 248 (4th Cir. 2018). In so ruling, the court noted that "an 'employee' for purposes of the Act need not have formal employee status" and "even private individuals who are not on the Government's payroll may be considered employees for purposes of" the Westfall Act. *Id*.; see *Patterson & Wilder Const. Co. v. United States*, 226 F.3d 1269, 1274 (11th Cir. 2000) ("private individuals who are not on the Government's payroll may be considered employees" under 28 U.S.C. § 2671).

Other courts have reached similar conclusions. Particularly relevant is *Wang v. Horio*, in which the Northern District of California found that that an undercover cooperator qualified for certification under the Westfall Act. 741 F. Supp. 1373 (N.D. Cal. 1989). Specifically, the cooperator (Horio) assisted the IRS with an investigation of Horio's clients (the Wangs). The IRS and Horio spoke several times each week and the IRS wired Horio with concealed devices to tape his conversations with the Wangs. The IRS secured an indictment against the Wangs, but it was dismissed. Thereafter, the Wangs sued Horio, asserting a number of state tort claims. As in the present case, the Wang's claims were "based upon Horio's activities in informing upon the Wangs." *Id*. at 1375. After he was served, Horio requested a Westfall certification from the government. *Id*.

"After initially indicating a willingness to do so" the government "ultimately declined to make the certification." *Id*. Horio then petitioned the district court for relief. *Id*. The court noted that in *Leaf v. United States*, 661 F.2d 740 (9th Cir. 1981) the Ninth Circuit "determined that an informant was an agent of the United States" because "the control exercised by the government over the informant was sufficient." *Id*. The Northern District found that the government's denial of a Westfall certification was improper because "with respect to gathering information about the plaintiffs, Horio was acting under the detailed control of [the IRS]." *Id*. at 1378. The court noted that the IRS gave

"orders to Horio and Horio did only what he was asked or told to do. Horio reported all of his information to [the IRS]." *Id*. Ultimately, "the IRS received the benefit of Horio's work and Horio's information was used by the United States in obtaining the indictment against plaintiffs." *Id*. The court also pointed to the fact the IRS "'wired' Horio to record certain conversations," "supplied the equipment and gave Horio instructions on how to use it. *Id*. The government also gave instructions "on what to record and what not to record, what to say, how to discuss documents, how to identify persons present, and what to ask and not ask." *Id*. Accordingly, the court found that the government should have issued the Westfall certification because under the Westfall Act, Horio "was an employee of the United States … and was an employee acting within the scope of his office or employment." *Id*. at 1379

      Here, as in the Wang case, the evidence will show that Paradis, like Horio, was acting under the detailed control of the FBI. Annexed as Exhibits 1 – 15 hereto are examples of text messages between the FBI/USAO and Paradis regarding the undercover operations the government directed Paradis to conduct. The Exhibits are but a few of the hundreds of such communications and were selected as examples because they occur in April 2019 (the time period of the actions described in paragraphs 51-78 of the City's Amended Adversary Complaint) and/or Paradis' work on behalf of the government in operations involving David Alexander or the Ardent Contract related thereto. These Exhibits provide direct evidence that, at all times described in paragraphs 51-78 of the City's Amended Adversary Complaint, Paradis was acting as an agent of the government, as further confirmed by the government's *Alexander Information* and *Alexander Plea Agreement - Factual Basis* (which the City copied word for word, while intentionally omitting only that Paradis' actions described in ¶¶ 51-78 of the City's Amended Adversary Complaint were undertaken at the direction of the FBI). The *Alexander Information* expressly provides in relevant part, "***[o]n April 5, 2019, Defendant ALEXANDER met with Paradis at a restaurant in Los Angeles. During this meeting and in all subsequent interactions with Defendant ALEXANDER referenced herein,***

*Paradis was acting at the direction of the FBI*." *See* Alexander Information at ¶ 12. (Emphasis added).

The evidence will further show that, like Horio, the FBI gave "orders to [Paradis] and [Paradis] did only what he was asked or told to do. [Paradis] reported all of his information to [the FBI]." *Id*. Ultimately, "the [FBI] received the benefit of [Paradis'] work and [Paradis'] information was used by the United States in obtaining [the Plea Agreement from former LADWP Chief Cyber Risk Officer David F. Alexander]." *Id*. As the Wang court also pointed out, the IRS "'wired' Horio to record certain conversations," "supplied the equipment and gave Horio instructions on how to use it. *Id*. Here, the evidence will also show that the FBI "wired" Paradis to video and audio record all conversations Paradis had while working as an undercover operative, the FBI supplied the recording equipment to Paradis, and showed Paradis how to use it. Similar to Horio in the Wang case, here the government also gave Paradis instructions "on what to record and what not to record, what to say, how to discuss documents, how to identify persons present, and what to ask and not ask." *Id*. Accordingly, the Wang court's finding that the government should have issued the Westfall certification because under the Westfall Act, Horio "was an employee of the United States … and was an employee acting within the scope of his office or employment" is highly instructive to this Court concerning the merits of Paradis' Petition for the requested Westfall Certification.

Finally, Paradis wishes to make clear that, in this situation, the Attorney General has not refused to certify Paradis' scope of office or employment. Rather, despite Paradis' repeated requests that the Attorney General and Department of Justice provide the requested Westfall Certification with respect to the acts undertaken by Paradis as alleged in ¶¶ 51-78 of the City's Amended Adversary Complaint, the Attorney General and Department of Justice have simply failed to provide the requested Westfall Certification despite having initially indicated, on December 5, 2022, that the Government would prepare the requested Certification for execution.

In light of the Government's prior public admission, contained at ¶ 12 of the Alexander Information, wherein the Government plainly admits that the "Paradis was acting at the direction of the FBI" when Paradis met with former LADWP Chief Cyber Risk Officer, David Alexander ("**Alexander**") on April 5, 2019 "and in all subsequent interactions with defendant ALEXANDER referenced [in the Alexander Information]," it would be grossly unfair and inequitable to require Paradis to defend against the City's patently false allegations set forth in ¶¶ 51-78 of the City's Amended Adversary Complaint.

### 2. The Significance of the Requested Westfall Certification

The Westfall Certification is important because it helps shields undercover operatives, such as Paradis, from liability for actions taken under the authority/direction of the government, which serves the important federal interest of having cooperators participate in investigations.

As *U.S. Tobacco Coop., Inc. v. Big South Wholesale of Va., LLC*, 365 F. Supp. 3d 604, 616 (E.D. N.C. 2019) explains:

> The liability of private defendants for actions taken at the direction of [federal] agents acting within their authority is a unique federal interest. Private businesses and individuals provide invaluable assistance as informants who provide evidence against law violators …. If private businesses were not eligible for immunity from state law claims arising from assisting undercover operations, this would provide a major disincentive to assisting law enforcement and would undermine the needs and interests of the federal government.

To avoid the extreme prejudice that Paradis would face by having to defend against the City's multi-million-dollar false fraud claim involving actions undertaken by Paradis at the direction of the FBI as alleged in Paragraphs 51-78 of the City's Amended Adversary Complaint, Paradis is forced to seek the requested evidentiary hearing and Westfall Certification from this Court. Based on the scorched earth litigation tactics employed by the City which involve, among other things, the willful and knowing assertion of a materially false fraud claim against Paradis as detailed herein, Debtor respectfully requests that the Court: (i) promptly set an evidentiary hearing on calendar;

(ii) provide the requested Westfall Certification based on the evidence adduced by Petitioner following such hearing; and (iii) substitute the United States as a party with respect to the claims asserted against Debtor by the City arising out of the allegations set forth in Paragraphs 51 – 78 of the City's Amended Adversary Complaint

## III. CONCLUSION

Based on the foregoing, Paradis respectfully requests that the Court grant the requested Westfall Certification and substitute the United States as a defendant in this adversary action with respect to those claims currently asserted against Paradis in ¶¶ 51 – 78 of the City's Amended Adversary Complaint pursuant to 28 U.S.C. § 2679 (d)(3) and (d)(4).

DATED this 6th day of January 2023.

                                BURCH & CRACCHIOLO, P.A.

                                By:   /s/ Alan A. Meda (009213)
                                        Alan A. Meda
                                        *Attorney for Defendant*

COPY served via ECF on CM/ECF users this 6th day of January 2023, which constitutes service pursuant to L.R. Bankr. P. 9076-1:

  /s/ Tracy Dunham